**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **SAS INSTITUTE INC.,** § § **Plaintiff,** § § v. § **CIVIL ACTION NO. 2:18-CV-00295-JRG** § **WORLD PROGRAMMING LIMITED,** § **LUMINEX SOFTWARE, INC., YUM!** § **BRANDS, INC., PIZZA HUT, INC.,** § **SHAW INDUSTRIES GROUP, INC.,** § § **Defendants.** § | |

**ORDER**

Before the Court is Defendants World Programming Limited ("WPL"); Luminex Software, Inc. ("Luminex"); Yum! Brands, Inc. ("Yum"); Pizza Hut, Inc. ("Pizza Hut"); and Shaw Industries Group, Inc.'s ("Shaw") (collectively, "Defendants") Motion to Sever and Stay Reseller and Customer Claims (the "Motion"). (Dkt. No. 48.) The Motion asks the Court to sever and stay Plaintiff SAS Institute Inc.'s ("SAS") claims against Luminex, Yum, Pizza Hut, and Shaw (collectively, the "Reseller and Customer Defendants") (the "Reseller and Customer Claims") pending adjudication of the claims against WPL (the "WPL Claims"). (*Id.* at 2.) Having considered the parties' positions and for the reasons set forth herein, the Court finds that the Motion should be and hereby is **DENIED**.

I. **BACKGROUND**

SAS alleges that WPL, a company based in the United Kingdom, has created a clone of SAS's business analytics software (the "SAS System"). (Dkt. No. 1 ¶¶ 2, 7.) SAS also alleges that, in conjunction with certain resellers, such as Luminex, WPL sold its alleged clone (the "WPS

System") to customers in the United States, including Yum, Pizza Hut, and Shaw. (*Id.* ¶¶ 3, 12–15, 63–64, 70.) The licensing and use of the WPS System, SAS contends, infringes certain patents and copyrights owned by SAS. (*Id.* ¶¶ 6, 63.) For three of the five patent claims specified in the complaint, SAS alleges that WPL has indirectly infringed method claims whereas Pizza Hut and Yum are direct infringers.[1] (*Id.* ¶¶ 296–297, 303–304, 309–310.) WPL is accused of direct infringement of only two claims.[2] (*Id.* ¶¶ 298, 311.)

SAS and WPL are not strangers to one another. The two have been embroiled in lawsuits related to the claims at issue here since at least 2009. *See SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 376 (4th Cir. 2017). SAS sued WPL in the United Kingdom in 2009 for copyright infringement and breach of a license agreement. *Id.* In 2010, SAS filed suit in North Carolina, asserting the same claims along with claims for fraud, tortious interference, and violation of the North Carolina Unfair and Deceptive Trade Practices Act (the "North Carolina Suit"). *Id.* In 2017, in the North Carolina Suit, the Fourth Circuit affirmed a damages award against WPL in favor of SAS in the amount of $79,129,905 (the "North Carolina Judgment").[3] *Id.* at 377–78. The Supreme Court denied certiorari, and that judgment is now final. *World Programming Ltd. v. SAS Inst., Inc.*, 139 S. Ct. 67 (2018).

However, SAS contends, and WPL does not dispute, that WPL has not satisfied the North Carolina Judgment and has resisted efforts to collect the judgment via attachment proceedings

---

[1] Specifically, SAS alleges that WPL indirectly infringed at least Claim 1 of U.S. Patent No. 7, 170, 519 (the "'519 Patent"); Claim 1 of U.S. Patent No. 7,477,686 (the "'686 Patent"); and Claim 1 of U.S. Patent No. 8,498,996 (the "'996 Patent"), which the Court determines are method claims.

[2] Specifically, SAS alleges that WPL directly infringed at least Claim 34 of the '519 Patent and Claim 37 of the '996 Patent. The parties have not made the Court aware of any material differences between the allegations in the complaint and SAS's infringement contentions. *See* P.R. 3-1.

[3] Judgment in favor of SAS on its copyright claim was vacated as moot. *SAS*, 874 F.3d at 378.

brought in California and the United Kingdom. (Dkt. No. 59, at 9–10; Dkt No. 65, at 4–5.) Moreover, WPL's recent financial disclosures appear to raise serious questions about whether it has the financial ability to satisfy the North Carolina Judgment. (Dkt. No. 59-9, at 7–8.)

In this action, unlike in the prior North Carolina and United Kingdom lawsuits, SAS has included several Reseller and Customer Defendants who, along with WPL, SAS accuses of copyright and patent infringement. The Defendants now move for the claims against these Reseller and Customer Defendants to be severed and stayed pending resolution of the WPL Claims.

## II. LEGAL STANDARD

In deciding whether to sever and stay claims under Rule 21, the Court employs a three-factor test, only two of which are relevant here: "(1) whether the remaining claims are peripheral to the severed claims," and "(2) whether adjudication of the severed claims would potentially dispose of the remaining claims." *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010); *see also* Fed. R. Civ. P. 21.

## III. ANALYSIS

### A. SAS's copyright and patent claims should not be stayed under the Federal Circuit's customer-suit exception.

As a preliminary matter, the Court finds that the Federal Circuit's customer-suit exception is not applicable to this action. Though not invoking the exception by name, Defendants rely considerably on *In re Nintendo, Inc.*, which held that the customer-suit exception to the first-to-file rule applies to motions to sever and stay in patent suits. 756 F.3d 1363, 1365 (Fed. Cir. 2014). Under the customer-suit exception, claims by or against a manufacturer of allegedly infringing products "generally take precedence" over claims against the manufacturer's customers, "for it is

the manufacturer who is generally the 'true defendant' in the dispute." *Id.* However, Defendants have not identified any case applying the customer-suit exception to the copyright context.[4]

Moreover, even in the patent context, the customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical, such as when—as here—the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a method patent. *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *5 (E.D. Tex. Apr. 26, 2016). Furthermore, the Reseller and Customer Defendants are not being sued as mere purchasers. SAS alleges that their use of the WPS system itself infringes upon SAS's copyrights and patents. *See Mirror Worlds Techs., LLC v. Dell Inc.*, No. 6:13-CV-941, 2014 WL 11268268, at *2 (E.D. Tex. Sept. 29 2014) (finding that the customer-suit exception did not apply because the customer defendants "do not merely resell the [accused software] after receiving it, but instead implement the software on their products in ways that potentially infringe"). Defendants do not dispute this. Instead, they argue that while the customer-suit exception does not mandate a stay, the Court may still impose a stay as an exercise of its discretion. (Dkt. No. 65, at 3.)

For these reasons, the Court finds that neither Plaintiff's copyright claims nor its patent claims should be stayed under the customer-suit exception.[5]

---

[4] *Educational Impact, Inc. v. Danielson*, relied upon by Defendants (Dkt No. 48, at 8), noted the customer-suit exception with approval but enjoined the *later filed* customer claims under the first-to-file rule itself—not any exception thereto. No. 3:14-cv-00937, 2014 WL 12774873, at *1 (D.N.J. Nov. 10, 2014). The reasoning of *Danielson* is not applicable here. *See id.* at *3.

[5] It is possible that some portions of some claims may, viewed in isolation, fall within the customer-suit exception—namely, the patent claims that SAS accuses both WPL and the Reseller and Customer Defendants of direct infringement. However, no party has asked the Court to consider severing and staying individual claims or portions of claims against the Reseller and Customer Defendants. Nor does the Court find that such a stay would "facilitate just, convenient, efficient, and less expensive determination" of this action. *Nintendo*, 756 F.3d at 1365. Moreover, any efficiencies that might be realized by severing and staying these Reseller and Customer Claims are

### B. A stay of the Reseller and Customer Claims is not warranted.

The Court finds that the Reseller and Customer Claims are not peripheral to the WPL Claims and may not be disposed of by adjudication of the WPL Claims. Accordingly, the Court finds that a stay of the Reseller and Customer Defendant claims is not warranted.

#### 1. The Reseller and Customer Claims are not peripheral to the WPL Claims.

SAS's claims against the Reseller and Customer Defendants are not peripheral to its claims against WPL. SAS asserts several method claims charging WPL with indirect infringement and certain Reseller and Customer Defendants—namely, Pizza Hut and Yum—with direct infringement. Judge William Bryson, sitting by designation, denied a motion to sever and stay in similar circumstances. *Uropep*, 2016 WL 1659924, at *5. Severing such an action, "would require [the plaintiff] to proceed against [the manufacturer] on a theory of indirect infringement without charging any party as the direct infringer," thereby "impos[ing] a substantial burden on" the plaintiff. *Id.*

Defendants attempt to distinguish *Uropep* by arguing that Pizza Hut and Yum are accused of direct infringement "through the mere 'use of'" the WPS System. (Dkt. No. 65 at 3–4.) However, the court in *Mirror Worlds* found that customer claims were not peripheral where the customers were accused of loading the accused software in a manner that itself infringed the plaintiff's patents. 2014 WL 1126268, at *2. Similarly, SAS alleges that the use by WPL's customers of the WPS system itself infringes SAS's copyrights and patents. (Dkt. No. 1 ¶¶ 63, 296–297, 303–304, 309–310.)

SAS cannot prove indirect infringement by WPL without also proving that *someone* directly infringed the patents at issue. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572

---

outweighed by the inefficiencies and prejudice that would result from staying the remaining Reseller and Customer Claims.

U.S. 915, 921 (2014). Conversely, WPL's liability as an indirect infringer is not a "predicate to recovery from any of the" Reseller and Customer Defendants for direct infringement. *Nintendo*, 756 F.3d at 1363. Thus, SAS's patent claims against the Reseller and Customer Defendants are not merely peripheral.

Similarly, and as WPL separately argued in its motion to dismiss, much of WPL's own conduct relevant to SAS's copyright and patent claims, e.g., the development of the WPS System, may have occurred in the United Kingdom. (Dkt. No. 46, at 12.) Accordingly, the *sale* of the WPS System by both WPL and Luminex to customers like Pizza Hut, Yum, and Shaw may be crucial to prove actionable patent infringement. *See Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("Even if an infringing product is manufactured outside of the United States, a person infringes if he … uses, *offers to sell*, or *sells* it in the United States." (emphasis added)). This is similarly true for SAS's copyright claims. *See Geophysical Servs., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) ("[D]omestic conduct is a necessary element of a copyright infringement plaintiff's claim.") This only reinforces the conclusion that the Reseller and Customer Claims are not peripheral. *See DSS Tech. Mgmt., Inc. v. Intel Corp.*, No. 6:15-cv-130, 2015 WL 12806514, at *2–3 (E.D. Tex. Nov. 12, 2015) (finding customer claims were not peripheral where the manufacturer could not be held liable for conduct that occurred outside the United States).

### 2. Adjudication of the WPL Claims would not dispose of the Reseller and Customer Claims.

Further, resolution of the WPL Claims would not dispose of the Reseller and Customer Claims. SAS alleges that certain Reseller and Customer Defendants have themselves directly infringed certain method claims. Adjudication of the WPL Claims would not resolve these claims because SAS must still prove infringing acts by these Reseller and Customer Defendants. *See*

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015); *see also DSS Tech.*, 2015 WL 12806514, at *3 (finding that adjudication of manufacturer claims would not dispose of customer claims because "any subsequent litigation would nevertheless involve proof of infringing acts" by the customer defendants). Conversely, a finding that WPL did not indirectly infringe certain claims would not preclude a finding of direct infringement by the Reseller and Customer Defendants. *See Mirror Worlds*, 2014 WL 11268268, at *3.

Additionally, while WPL's satisfaction of a judgment against it on the WPL claims might limit SAS's ability to seek recovery from the Reseller and Customer Defendants, WPL's present financial position and prior litigation positions make it far from certain that complete satisfaction would (or could) actually be made. *See Cellular Commc'ns Equip., LLC. v. Apple*, No. 6:14-cv-251, 2016 WL 6884648, at *3 (E.D. Tex. Aug. 26, 2016) (noting that CCE would be barred from collecting from Apple's customers "if Apple is found liable *and CCE does collect damages from Apple*" (emphasis added)). Nor is it certain or clear that WPL's liability would overlap entirely with the liability of the Reseller and Customer Defendants, who have not been charged with identical acts of patent and copyright infringement.

## IV. CONCLUSION

For the reasons stated, the Court finds that Defendants' Motion to Sever and Stay Reseller and Customer Claims (Dkt. No. 48) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 4th day of April, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

7