REDACTED AND PUBLICLY FILED

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SAS INSTITUTE INC., <br><br> Plaintiff, <br><br> vs. <br><br> WORLD PROGRAMMING LIMITED *et al.*, <br><br> Defendants. | No. 2:18-cv-00295-JRG |

# PLAINTIFF SAS INSTITUTE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

    I.    WPL's Counterclaims Should All Be Dismissed Because They Arise from SAS's Litigation Activities ....................................................................................... 1

    II.   WPL Fails to Allege Facts Plausibly Supporting Its Conclusory Counterclaims ... 3

CONCLUSION ....................................................................................................................... 5

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Avaya Inc., RP v. Telecom Labs, Inc.*,
   838 F.3d 354 (3d Cir. 2016) ................................................................................................... 4

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004) ................................................................................................................ 5

*FTC v. Actavis, Inc.*,
   570 U.S. 136 (2013) ................................................................................................................ 4

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .................................................................................................................. 1

*SAS Inst., Inc. v. World Programming Ltd.*,
   874 F.3d 370 (4th Cir. 2017) ............................................................................................ 2, 3

*SAS Inst., Inc. v. World Programming Ltd.*,
   No. 5:10-cv-25 (E.D.N.C. Mar. 18, 2019) ........................................................................ 2, 5

The question here is whether a defendant in a copyright and patent infringement action can plead antitrust and unfair competition counterclaims based on its conclusory and subjective belief that the action is meritless. WPL filed five such counterclaims here to complicate this case and distract from its infringement. The Court should reject that effort to bog this case down.

## ARGUMENT

### I. WPL's Counterclaims Should All Be Dismissed Because They Arise from SAS's Litigation Activities

All of WPL's counterclaims at issue here depend on the Court accepting WPL's premise that SAS's pursuit of this litigation is somehow improper. WPL alleges that SAS is monopolizing a market for its own products by bringing ████████ infringement claims, that SAS's litigation activities are "false advertising," and that SAS is tortiously interfering with WPL's contracts and otherwise competing unfairly by asserting its intellectual property rights. The fundamental problem with these allegations is that SAS has a clear right to petition a court for orders preventing others from infringing its works and inventions.

Recognizing this obstacle, WPL argues that SAS's claims are just a "sham" that have already been "twice" rejected by other courts. WPL's Opp'n at 9, ECF No. 182. This argument is critical to WPL for two reasons: it has to plead anticompetitive or otherwise wrongful conduct to meet the elements of its counterclaims, *see* SAS's Mot. Dismiss at 4–5, 10, 12–13, 15, ECF No. 180; and it has to present a plausible theory of why litigation activities – which are presumptively protected by the First Amendment – could be the basis for counterclaims, *cf. Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993) ("We hold that litigation cannot be deprived of immunity as a sham unless the litigation is objectively baseless."). But WPL is wrong to represent to this Court that SAS "lost, twice," on these copyright claims. WPL's Opp'n at 1. And WPL never explains why, exactly, it believes SAS's claims are objectively baseless.

Only one court has considered the copyright claims that SAS brings here. The Eastern District of North Carolina initially ruled for WPL on those claims, but it later "VACATE[D]" that ruling, Am. Judgment at 1, ECF No. 721, *SAS Inst. Inc. v. World Programming Ltd.*, No. 5:10-cv-25 (E.D.N.C. Dec. 8, 2017) (attached as Exhibit A), and then dismissed SAS's copyright claims "WITHOUT PREJUDICE," Second Am. Judgment at 1, ECF No. 753 (E.D.N.C. May 3, 2018) (attached as Exhibit B). That vacated ruling is a legal nullity, and the Fourth Circuit did not review it because it affirmed the district court's $79 million judgment against WPL on a separate ground: that WPL committed fraud to obtain licenses to SAS's software to copy it. The Fourth Circuit did note, however, that SAS has a "close copyright claim" that presents "a difficult question of law." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017). The only other courts that WPL could be referring to when it claims that SAS lost twice are the courts that heard SAS's claims in the United Kingdom. Those courts concluded that WPL "reproduced only aspects of the program that are not protected by *U.K.* copyright law." *Id.* at 377 (emphasis added).

In short, WPL claims that SAS "twice" lost "identical copyright allegations," WPL's Opp'n at 1, based on (1) a *vacated* ruling that dismissed SAS's claims *without* prejudice; (2) a Fourth Circuit opinion that did not resolve SAS's copyright claims but characterized them as close and difficult; (3) and a series of rulings under U.K. law that the Fourth Circuit held were not entitled to comity because the United States is "more protective of intellectual property," 874 F.3d at 379. These rulings cannot be fairly characterized as "two prior copyright losses," WPL's Opp'n at 12, that would render this action under U.S. law objectively baseless.

Apart from SAS's supposed "two prior copyright losses," WPL argues that it "supports its allegation of 'sham' litigation by reference to . . . general copyright principles concerning the non-copyrightability of a language, and the importance of the SAS Language issue to WPL customers."

- 2 -

*Id*.  But WPL has not shown – or even tried to show – that SAS's claims are objectively baseless under "general copyright principles."  It cannot, as a matter of law, make that showing because the Fourth Circuit observed that SAS's claims are "close" and "difficult," *SAS Inst.*, 874 F.3d at 389, and this Court held "SAS has alleged facts sufficient to state its claims for copyright infringement," Apr. 4, 2019, Order at 6, ECF No. 84.  Rather than address this observation or holding, WPL simply asserts that SAS's copyright claims conflict with general "principles" and are therefore a sham.  That is not enough to state any counterclaim based on SAS's pursuit of its copyright claims.

In any event, WPL's sham-litigation argument cannot be squared with the allegations SAS actually makes here.  Consider a comparison between outputs in SAS's software and WPL's copy:

| SAS | WPS |
|---|---|
| Summary of Flower Sales by Month<br>15:34 Friday, April 23, 2010<br>------ Month=5 ------<br>The MEANS Procedure<br>Variable  N  Mean        Std Dev     Minimum     Maximum<br>Petunia    3  86.6666667  35.1188458  50.0000000  120.0000000<br>SnapDragon 3  113.3333333 41.6333200  80.0000000  160.0000000<br>Marigold   3  81.6666667  25.6580072  60.0000000  110.0000000<br>------ Month=6 ------<br>Variable  N  Mean        Std Dev     Minimum     Maximum<br>Petunia    4  81.2500000  16.5201897  60.0000000  100.0000000<br>SnapDragon 4  97.5000000  47.8713554  60.0000000  160.0000000<br>Marigold   4  83.7500000  19.7378655  60.0000000  100.0000000 | Summary of Flower Sales by Month<br>18:53 Sunday, April 25, 2010<br>------ Month=5 ------<br>The MEANS Procedure<br>Variable  N  Mean        Std Dev     Minimum     Maximum<br>Petunia    3  86.6666667  35.1188458  50.0000000  120.0000000<br>SnapDragon 3  113.3333333 41.6333200  80.0000000  160.0000000<br>Marigold   3  81.6666667  25.6580072  60.0000000  110.0000000<br>------ Month=6 ------<br>Variable  N  Mean        Std Dev     Minimum     Maximum<br>Petunia    4  81.2500000  16.5201897  60.0000000  100.0000000<br>SnapDragon 4  97.5000000  47.8713554  60.0000000  160.0000000<br>Marigold   4  83.7500000  19.7378655  60.0000000  100.0000000 |

SAS's Compl. ¶ 128, ECF No. 1; *accord* SAS's Am. Compl. ¶ 119, ECF No. 128.  WPL cannot seriously argue that a copyright claim based on this blatant copying is objectively baseless.

## II.   WPL Fails to Allege Facts Plausibly Supporting Its Conclusory Counterclaims

Even if WPL could pursue counterclaims against SAS based on its disagreement with SAS's copyright claims, WPL has for the reasons given in SAS's motion to dismiss failed to allege facts supporting the counterclaims it attempts to bring.  While nothing in WPL's response brief undermines the arguments SAS made in its motion (and the absence of a specific reply here should not be interpreted as agreement with WPL), a few points merit further emphasis here.

*First*, WPL's antitrust counterclaims are implausible because a plaintiff such as WPL "pursuing a *Kodak*-style claim must present evidence to support a plausible economic explanation

that competition in the primary market is dissociated from conditions in the aftermarket." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 404 (3d Cir. 2016) (alterations and quotation marks omitted).  The "prototypical *Kodak* claim" involves a "combination of price discrimination and post-sale surprise in the aftermarket" because, without the ability to charge only locked-in customers higher prices, competition in the primary market would prevent the seller from raising prices.  *Id*. at 406.  There is no allegation that SAS price discriminated by charging higher prices for renewals than initial licenses.  Nor is there any allegation that could support a different plausible economic explanation of how SAS could charge supracompetitive prices for "SAS Language compiler/interpreters" despite competition in the statistical analysis software market.

*Second*, WPL fails to allege facts suggesting that the ▆▆▆▆▆▆▆▆▆ between SAS and Angoss has the potential for genuine adverse effects on competition.  WPL relies on a case in which the Supreme Court allowed a Sherman Act claim to proceed where the patentee allegedly made a "large and unjustified" payment to the alleged infringer in exchange for the infringer's agreement not to produce the patented product.  *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013).  The Court explained that this reverse payment has the "potential for genuine adverse effects on competition" because it "in effect amounts to a purchase by the patentee of the exclusive right to sell its product."  *Id*. at 153 (internal quotation marks omitted).  The allegations here are unlike those in *Actavis*.  There is no suggestion that the ▆▆▆▆▆ contained anything like the "unexplained large reverse payment" at issue in *Actavis*. *Id*.  Rather, SAS and Angoss had a "bona fide dispute" and then ▆▆▆ that dispute with an ▆▆▆▆ that "is a reasonable accommodation and is not more anticompetitive than a likely outcome of the litigation": a permanent injunction against further infringement.  Areeda & Hovenkamp, *Antitrust Law* ¶ 2045a (3d ed. 2019).

*Third*, even if the SAS-Angoss ▮▮▮▮ had anticompetitive effects abroad (it does not), the Sherman Act does not prohibit "American exporters" or "firms doing business abroad" from entering anticompetitive arrangements that "adversely affect only foreign markets." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004).  And WPL's "timeframe" argument regarding the "▮▮▮▮▮," WPL's Opp'n at 7, ignores the copyright claims the parties ▮▮▮▮

*Fourth*, the ▮▮▮▮ between SAS and Angoss is not a "horizontal" ▮▮▮▮ WPL alleges that SAS harmed WPL by ▮▮▮▮ with a distributor so that WPL now has "fewer options in which to incorporate the World Programming System." WPL's Countercls. ¶ 80, ECF No. 168. This allegation shows an ▮▮▮▮ between firms at different levels of distribution.

*Fifth*, WPL cites no case supporting its novel theory that litigation activities can support a Lanham Act claim.  Instead, it relies on its allegation that "sales representatives are instructed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." WPL's Opp'n at 9.  But the instruction WPL cites is in internal SAS documents that are not alleged to have been disseminated to *anyone*.  Even if those internal documents were "advertising," they would not be actionable because WPL *is* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮. *See* SAS's Am. Compl. at 67 ¶ O (praying for permanent injunction). ▮▮▮▮▮▮▮▮▮▮ the Eastern District of North Carolina, which recently enjoined WPL "from licensing 'WPS' to any 'new customer' for use within the United States" because, among other reasons, WPL "acted in collateral [U.K.] proceedings to frustrate the orders and judgment of this court." *SAS Inst.*, No. 5:10-cv-25, 2019 WL 1447472, at *9, *18 (E.D.N.C. Mar. 18, 2019) (attached as Exhibit C). While that injunction is stayed pending appeal, it remains accurate to say that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

## CONCLUSION

The Court should grant SAS's Motion to Dismiss First Amended Counterclaims.

Dated: November 19, 2019

Respectfully submitted,

 /s/ Pressly M. Millen
Pressly M. Millen
*Pro Hac Vice*
Raymond M. Bennett
*Pro Hac Vice*
Samuel B. Hartzell
*Pro Hac Vice*
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
(919) 755-2135
press.millen@wbd-us.com
ray.bennett@wbd-us.com
sam.hartzell@wbd-us.com

Christian E. Mammen
*Pro Hac Vice*
Carrie Richey
WOMBLE BOND DICKINSON (US) LLP
1841 Page Mill Road, Suite 200
Palo Alto, California 94304
(408) 341-3067
chris.mammen@wbd-us.com
carrie.richey@wbd-us.com

Michael C. Smith
State Bar No. 18650410
SIEBMAN, FORREST, BURG & SMITH, LLP
113 East Austin Street
Marshall, Texas 75671
(903) 938-8900
michaelsmith@siebman.com

***Attorneys for Plaintiff SAS Institute Inc.***

- 7 -

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on counsel for Defendants via the Court's CM/ECF system and by email on November 19, 2019.

                                             /s/ Pressly M. Millen
                                             Pressly M. Millen