**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

SAS INSTITUTE INC.,

           Plaintiff,

    vs.

WORLD PROGRAMMING LIMITED;
LUMINEX SOFTWARE, INC.; YUM!
BRANDS, INC.; PIZZA HUT, INC.; and
SHAW INDUSTRIES GROUP, INC.,

           Defendants.

Civil Action No. 2:18-CV-00295-JRG

**Jury Trial Demanded**

~~**FILED UNDER SEAL**~~

**PUBLIC VERSION**

**WORLD PROGRAMMING LIMITED'S SUR-REPLY TO
SAS INSTITUTE INC.'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

I.    ARGUMENT IN SUR-REPLY...................................................................................... 1

   A.   WPL's Claims Plead Unlawful Actions Unprotected By the First Amendment
      and *Noerr-Pennington* Immunity........................................................................ 1

   B.   WPL's Claims Based on Protected Activity Plausibly Allege "Sham" Litigation. ............ 1

   C.   SII's Other Arguments Fail.................................................................................. 3

II.   CONCLUSION .......................................................................................................... 5

# TABLE OF AUTHORITIES

**Cases**

*Avaya Inc., RP v. Telecom Labs, Inc.*,
    838 F.3d 354 (3d Cir. 2016) ..................................................................................... 4

*Baker v. Selden*,
    101 U.S. 99 (1879) ................................................................................................. 2

*Construction Cost Data, LLc v. Gordian Grp, Inc.*,
    2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) .................................................... 1, 2

*FTC v. Actavis*,
    570 U.S. 136 (2013) ............................................................................................... 4

*Laitram Machinery, Inc. v. Carnitech*,
    901 F. Supp. 1155 (E.D. La. 1995) ...................................................................... 1

*Lotus Development Corp. v. Borland Int'l, Inc.*,
    49 F.3d 807 (1st Cir. 1995) .................................................................................. 2

*Luxpro Corp. v. Apple Inc.*,
    658 F. Supp. 2d 921 (W.D. Ark. 2009) ................................................................ 1

*Oracle Am., Inc. v. Google LLC*,
    886 F.3d 1179 (Fed. Cir. 2018) ........................................................................... 2

*SAS Inst., Inc. v. World Programming Ltd.*,
    874 F.3d 370 (4th Cir. 2017) ............................................................................ 3, 5

**Statutes**

17 U.S.C. § 102(b) ...................................................................................................... 2

## I.     ARGUMENT IN SUR-REPLY

### A.     WPL's Claims Plead Unlawful Actions Unprotected By the First Amendment and *Noerr-Pennington* Immunity.

SAS Institute, Inc.'s ("SII's") primary argument in reply depends on the false premise that World Programming Limited's ("WPL's") claims depend exclusively on claims reasonably connected to SII's petitioning the courts in this case.  That is simply not true.  In addition to SII's "sham" position that the SAS Language is subject to copyright protection, WPL's claims depend on, *inter alia*, a non-litigation reversal of policy concerning the public domain status of the SAS Language to monopolize the SAS Language compiler/interpreter market and numerous advertisements with "inherently suspect" exclusive source representations.  *See, e.g.*, *Luxpro Corp. v. Apple Inc.*, 658 F. Supp. 2d 921 (W.D. Ark. 2009) (holding that plaintiff's contact with defendants' customers after litigation initiated was unprotected activity); *Laitram Machinery, Inc. v. Carnitech*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) (letters to competitors alleging IP violations unprotected).  SII has not even attempted to meet its burden that the *Noerr Pennington* doctrine applies to these actions or established on the face of WPL's pleadings that such conduct is protected activity.  SII's primary reply argument is thus irrelevant to the vast majority of conduct at issue in WPL's counterclaims.

### B.     WPL's Claims Based on Protected Activity Plausibly Allege "Sham" Litigation.

Even for the limited sub-set of conduct for which *Noerr-Pennington* might apply, SII fails to provide any legitimate basis for dismissal.  SII complains mightily that WPL has not proven its allegations to be a "sham."  But SII ignores that WPL has *no* burden to plead around a immunity or any other potentially applicable affirmative defense.  *See Construction Cost Data, LLc v. Gordian Grp, Inc.*, 2017 WL 2266993, at *6 (S.D. Tex. Apr. 24, 2017).  Instead, SII can prevail based on its arguments here only if it shows that WPL "admits all the ingredients of an

1

impenetrable defense" of *Noerr* immunity.  *Id.* (quotation omitted).  SII does not even attempt to meet this burden, instead choosing to contest the sufficiency of allegations that WPL was not even required to set forth.

Even were WPL required to plausibly plead facts indicating that SII's litigation includes a sham element designed to monopolize, restrain trade, or mislead potential customers, WPL has done so.  While SII makes much of the fact that neither of its prior copyright losses led to a final judgment of no U.S. copyright infringement, the fact remains that two tribunals have considered identical arguments and rebuffed them, one via summary judgment under U.S. copyright standards.  Further, SII's "sham" arguments conflate a finding of ultimate copyright infringement with what WPL actually alleges to be the "sham" designed to threaten and monopolize: SII's position that the system of the SAS Language itself is protectable *in toto*, and that it is impossible to program functionality that can read and interpret the SAS Language without SII's permission. Yet the Copyright Act itself precludes copyright protection for any "system," 17 U.S.C. § 102(b), and the Supreme Court long ago held that a party does not infringe a copyright simply by using the system described in a copyrighted work.  *See Baker v. Selden*, 101 U.S. 99 (1879).  SII, meanwhile, cites no case in which a U.S. Court has *ever* concluded that the entirety of a language is subject to copyright protection.  *See Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1189 (Fed. Cir. 2018) (noting that Oracle-created programming language, Java, was "free and available for use without permission," and that Oracle stipulated that all the 62 API "classes" necessary to program in the Java language required no license "given that the Java programming language itself was free and open to use."); *Lotus Development Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 817-18 (1st Cir. 1995) (finding Lotus 1-2-3 command language non-protectable).

SII's reference to the alleged "close" copyright case language from the Fourth Circuit

does not conclusively disprove WPL's "sham" allegations either.  This is so for at least two reasons.  First, the Fourth Circuit recognized only that it was a "close" question as to whether SII could point to *any* copyright violation; the Fourth Circuit certainly did not pronounce any conflicted views about the possibility that a language could be copyrighted in its entirety, as SII contends as advertisement to potential WPL customers, and as SII contends in this lawsuit.  Second, SII neglects to acknowledge that the only reason its copyright allegations were not dismissed with prejudice was because SII indicated that "the only relief it seeks from the copyright claim that it has not already received is an injunction," to which Fourth Circuit concluded it was clearly not entitled—even if any infringement were found.  *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017).  Yet despite those assertions and the Fourth Circuit's express understanding, SII here seeks both damages (that it had previously disclaimed) and an injunction (which the Fourth Circuit found difficult to fathom), and it presently uses those requests pervasively in the marketplace to sell against WPL.  This is vexatious conduct, and these facts plausibly allege sham litigation.[1]

### C.  SII's Other Arguments Fail.

Beyond SII's say-so that all of its conduct is protected as a matter of law, SII makes four primary additional arguments.  None of these provide a basis for dismissal either.

*First*, SII contends that WPL's monopolization claim must be dismissed because WPL has not expressly alleged SII's price discrimination amongst SII's customers.  But while price discrimination in the aftermarket is one way to prove that the primary and secondary markets

---

[1] SII's reliance on citations to evidence from its own complaint cannot establish the defense of objective merit as a matter of law.  Yet those same screenshots were presented to the North Carolina Court, who found no copyright infringement as a matter of law.  *See* Ex. A at 18 (citing identical screenshot comparison).  In any event, arguments concerning the output screens do not address SII's objectively baseless assertions that it is entitled to copyright protection in the SAS language as a whole.

have become disassociated, it is not the only way.  *See Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 406-07 (3d Cir. 2016) (finding that "terminating dealings with [plaintiff business partner], sending 'fear, doubt, and uncertainty' letters to [plaintiff's] customers, and trespassing and spying on [plaintiff's] customers" could support verdict of attempted monopolization).  In any event, WPL here pleads that at least some customers choose SII over WPL even where WPL is both substantially cheaper and fully capable of performing all required functions and that SII customers are choosing the higher priced alternative for reasons related to SII's new SAS Language policy.  Dkt. 168 ¶¶ 112-13.  This gives rise to the plausible inference of monopoly power and conduct in the aftermarket of SAS Language compiler/interpreters.

*Second*, SII contends WPL's Section 1 claim fails because WPL's claim is not identical to the Supreme Court decision in *FTC v. Actavis*, 570 U.S. 136, 158 (2013).  WPL never claimed it was.  SII made the obviously incorrect assertion that settlements are *per se* antitrust immune; *Actavis* confirms they are not.  The point, as WPL made clear, is that settlement agreements that extend the reach of the U.S. right beyond any legitimate scope are subject to scrutiny.  The agreement, which contains no limitation in time, geographic scope, or even infringing aspect, is plainly outside of the legitimate bounds of any SII owned IP right.  *See* Dkt. 182 at 7.[2]

*Third*, SII contends that its ███████ with Angoss is not a ██████████ because WPL has "fewer options in which to incorporate the World Programming System."  Dkt. 186 at 5.  This argument simply reiterates the logical flaw in SII's original motion.  Regardless of

---

[2] SII contends that the ████████████████████████████████████████████████
████████████████████████████████████.  However, U.S. copyright also has its own time limitation.  Moreover, it is hard to believe ████████████████████████.  As to ██████████████
████████████, WPL fully addressed that in its original response, arguments which SII simply ignores.  *See* Dkt. 182 at 7 n.7.

whether WPL is a vertical provider of functionality to Angoss, ██████████████████████

████████████████.  *See* Dkt. 182 at 8.

*Finally*, SII contends WPL cannot plead its Lanham Act claim because SII apparently

contends that it is an implausible inference that SII's sales representatives advertised to

customers as ████████████████████████.  Dkt. 186 at 5 (arguing that WPL's claims

should be dismissed because "the instruction WPL cites are in internal SAS documents that are

not alleged to have been disseminated to *anyone*" (emphasis in original)).  This argument is

obviously meritless.  SII also contests WPL's pleading on the merits by simply stating that █████

████████████████████████████████████ is true.  But, as the Fourth Circuit

previously stated, an injunction on the entirety of WPS in this case was "hard to conceive," *SAS*

*Inst., Inc. v. World Programming Limited*, 874 F.3d 370, 389 (4th Cir. 2017).  WPL has also

plausibly pleaded that the broadest scope of SII's copyright assertions are a sham; moreover, any

injunction directed to the patents, even if infringement were found, almost certainly would be

directed to the functionality claimed in the patents, not WPS as a whole.  And SII's reference to

ongoing equitable proceedings in North Carolina also does not disprove a false and misleading

campaign.  The sales instructions indicate competing ███████████████████████████

███████████████████████," Dkt 180-3 (emphasis added), not from licensing to "new"

customers as long as a judgment remains unsatisfied.  The plain edict of this directive is ████████

████████████████████████████████████████████.  The North

Carolina injunction will never reach that situation.

## II.    CONCLUSION

For the reasons stated above and in WPL's Response, the Court should deny SII's

motion.

Dated: November 26 2019.                       _/s/ Bradley W. Caldwell_

**CALDWELL CASSADY CURRY, P.C.**

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
Caldwell Cassady Curry P.C.
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849


**WARD, SMITH & HILL, PLLC**

T. John "Johnny" Ward Jr.
Texas Bar No. 00794818
jw@wsfirm.com
Claire Henry
Texas Bar No.  24053063
claire@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
P.O. Box 1231
Longview, TX 75606
903-757-6400
903-757-2323 (Facsimile)


ATTORNEYS FOR DEFENDANT WORLD
PROGRAMMING LIMITED

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was

served on counsel of record via email on November 26, 2019, to the extent allowed by the

Protective Order.

/s/ *Bradley W. Caldwell*
Bradley W. Caldwell


## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed

under seal pursuant to the Protective Order in this case.

/s/ *Bradley W. Caldwell*
Bradley W. Caldwell