FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| SAS INSTITUTE INC., <br>      Plaintiff, <br> v. <br> WORLD PROGRAMMING LIMITED, <br> LUMINEX SOFTWARE, INC., YUM! <br> BRANDS, INC., PIZZA HUT, INC., <br> SHAW INDUSTRIES GROUP, INC., <br>      Defendants. | Civil Action No. 2:18-CV-00295-JRG <br><br> **Jury Trial Demanded** <br><br> ~~FILED UNDER SEAL~~ <br> PUBLIC VERSION |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## AGAINST PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS
## [COPYRIGHTABILITY]

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    ISSUES TO BE DECIDED .................................................................................... 1

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS .................................... 1

IV.    APPLICABLE LAW .............................................................................................. 2

    A.  Summary judgment .......................................................................................... 2

    B.  Copyright law generally .................................................................................. 2

    C.  Copyright law as to computer programs .......................................................... 3

V.     ARGUMENT .......................................................................................................... 4

    A.  SASI is improperly trying to extend its copyrights to the operation of its
    software and the SAS programming language, which is free for anyone to
    use—SASI has previously lost on this issue in North Carolina ....................... 4

    B.  SASI cannot raise an issue of material fact as to whether its asserted
    copyright works are copyrightable ................................................................... 7

        1.  SASI cannot meet its burden to complete the necessary *Altai* analysis
        because it did not conduct a proper filtration step—unprotectable
        elements were not filtered out. ............................................................... 7

        2.  SASI has not set forth sufficient evidence to establish that the
        asserted "collection of output designs", as asserted, are fixed in a
        tangible medium of expression and has also failed to show that
        SAS software does the lion's share of the work to generate the
        asserted output results with no more than a marginal contribution
        from user. .............................................................................................. 12

    C.  If the Court grants WPL's Motion to Exclude Dr. Storer's copyright report
    and testimony, there is an additional basis for summary judgment—SASI
    lacks evidence to carry its burden on its copyright infringement claims
    at trial. ............................................................................................................. 14

VI.    CONCLUSION ..................................................................................................... 15

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*
 477 U.S. 317 (1986)........................................................................................... 2

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*
 982 F.2d 693 (2d Cir. 1992)......................................................................... 4, 7, 9, 14

*Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*
 220 F.3d 396 (5th Cir. 2000) ............................................................................ 11

*Design Data Corp. v. Unigate Enter., Inc.*
 847 F.3d 1169 (9th Cir. 2017) .......................................................................... 13

*Digital Drilling Data Sys. LLC v. Petrolink Servs. Inc.*
 No. 4:15-CV-02172, 2018 WL 2267139 (S.D. Tex. May 16, 2018)...................... 13

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*
 26 F.3d 1335 (5th Cir. 1994) ..................................................................... passim

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*
 499 U.S. 340 (1991)......................................................................... 3, 5, 10, 11

*Gates Rubber Co. v. Bando Chemical Indus.*
 9 F.3d 823 (10th Cir. 1993) ..................................................................... 4, 8, 12, 14

*General Universal Systems, Inc. v. Lee*
 379 F.3d 131 (5th Cir. 2004) ...................................................................... passim

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*
 12 F.3d 527 (5th Cir. 1994) .............................................................................. 3

*Matsushita Elec. Indus. Co. v. Zenith Radio*
 475 U.S. 574 (1986)......................................................................................... 2

*Moss v. BMC Software, Inc.*
 610 F.3d 917, 922 (5th Cir. 2010) .................................................................... 2

*Oracle Am., Inc. v. Google Inc.*
 750 F.3d 1339 (Fed. Cir. 2014)........................................................................ 7

*Pepper v. Int'l Gaming Sys., LLC.*
 312 F. Supp. 2d 853 (N.D. Miss. 2004) ..................................................... 14, 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Rearden LLC v. Walt Disney Co.*
  293 F. Supp. 3d 963 (N.D. Cal. 2018) ................................................................. 13

*S & H Computer Sys., Inc. v. SAS Inst., Inc.*
  568 F. Supp. 416 (M.D. Tenn. 1983) ..................................................................... 1

*SAS Inst. Inc. v. World Programming Ltd.*
  64 F. Supp. 3d 755 (E.D.N.C. 2014)
  *aff'd in part, vacated in part,* 874 F.3d 370 (4th Cir. 2017) ............................. 5, 6, 7

*Skotak v. Tenneco Resins, Inc.*
  953 F.2d 909 (5th Cir. 1992) ................................................................................. 2

*Taylor v. IBM*
  54 F. App'x 794 (5th Cir. 2002) ...................................................................... 3, 10

*Torah Soft Ltd. v. Drosnin*
  136 F. Supp. 2d 276 (S.D.N.Y. 2001) ................................................................. 13

*Virtual Chart Sols. I, Inc. v. Meredith*
  No. 4:17-CV-546-ALM-CMC, 2019 WL 3927318 (E.D. Tex. Aug. 20, 2019) ...................... 14

## Statutes

17 U.S.C. § 101 ..................................................................................................... 12
17 U.S.C. § 102(a) ........................................................................................... 2, 12
17 U.S.C. § 102(b) ............................................................................................. 3, 5
17 U.S.C. § 103(b) ........................................................................................... 3, 10
37 C.F.R. § 202.1(a)(2001) ..................................................................................... 3

## Rules

Fed. R. Civ. P. 26(a)(2) ........................................................................................ 15
Fed. R. Civ. P. 56(c) .............................................................................................. 2

## Other Authorities

4 Nimmer on Copyright § 13.03[F] ...................................................................... 13
Scott on Info. Tech. L. § 2.51 ................................................................................. 7
Scott on Info. Tech. L. § 2.51 (3d Ed. 2020-1 Supplement) .................................. 4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.      INTRODUCTION

Defendants respectfully request that the Court enter judgment against Plaintiff SAS

Institute Inc.'s ("Plaintiff" or "SASI") copyright infringement claims because SASI cannot

present sufficient evidence to raise a genuine issue of material fact as to copyrightability.

## II.     ISSUES TO BE DECIDED

1.      Did SASI fail to present sufficient evidence that it is not claiming copyrights over

the unprotectable idea and functionality of the SAS language, as a prior district court found?

2.      Did SASI fail to present sufficient evidence that its expert filtered out

unprotectable elements from each asserted layer of abstraction as required by the Fifth Circuit's

abstraction-filtration-comparison analysis?

3.      Did SASI fail to present sufficient evidence that SAS software does the lion's

share of the work in generating output and that users' roles are not more than marginal?

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   Anyone can write a SAS language program in the SAS language without a license.[1]

2.   SAS 76 is in the public domain.[2]

3.   SAS 76 contains identically named PROCs to those presented in Dr. Storer's report.[3]

4.   Dr. Storer's report does not perform the abstraction-filtration-comparison (or *Altai*)

analysis as to any particular registered copyright work.[4]

5.   Dr. Storer's report did not filter out anything from his "collection of input formats" layer,

---

[1] *See* Hamad Decl., Ex. A (Rubendall 2/19/2020 & 2/26/2020 Dep. Tr.) at 266:15-267:1.

[2] *See S & H Computer Sys., Inc. v. SAS Inst., Inc.*, 568 F. Supp. 416, 419 (M.D. Tenn. 1983); Hamad Decl., Ex. B (Goodnight 3/5/2020 Dep. Tr.) at 63:13-15.

[3] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.1, ¶¶ 115-17.

[4] *See* Hamad Decl., Ex. D (Storer 4/19/2020 Dep. Tr.) at 103:19-24; *id*, Ex. E. (Storer 4/21/2020 Dep. Tr.) at 421:22-422:14, 428:7-429:12.

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

his "collection of output designs" layer, or his "numbering or syntax" layer.[5]

6. Output from SAS software is dictated by a customer's SAS program.[6]

## IV.   APPLICABLE LAW

### A.  Summary judgment

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Where the nonmovant bears the burden of proof, the movant is only required to point out the absence of evidence supporting the nonmovant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992), *cert denied*, 506 U.S. 832 (1992).  If the moving party initially shows that there is no evidence to support the nonmoving party's case, the nonmoving party must assert competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986).

### B.  Copyright law generally

"Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). "The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348

---

[5] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 153:23-164:18.

[6] *See* Hamad Decl., Ex. B (Goodnight Dep. Tr.) at 60:8-10, 60:23-61:4.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
~~XXXXXXXXX XXXX XXXXXXXXX XX XXXXXXXXXX XXXXX~~

(1991) (citations omitted).[7] In fact, there are a variety of constraints on the copyrightability of expressions.

Protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . ." 17 U.S.C. § 102(b). Nor does it reach "facts, information in the public domain, [or] scenes a faire." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994) (citation omitted). It also does not reach expressions of an idea that can be expressed in only a very few ways, *i.e.*, merger of idea and expression. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994). Relatedly, the "Copyright Act does not protect fragmentary words or short phrases.'" *Taylor v. IBM*, 54 F. App'x 794 (5th Cir. 2002) (citing 37 C.F.R. § 202.1(a)(2001)).

"To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are copyrightable. Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Eng'g Dynamics*, 26 F.3d at 1340 (citations and footnote omitted).

### C.  Copyright law as to computer programs

"[C]omputer programs are in principle entitled to copyright protection." *Eng'g Dynamics*, 26 F.3d at 1341 (footnote omitted). "This protection extends not only to the 'literal' elements of computer software—the source code and object code—but also to a program's nonliteral elements, including its structure, sequence, organization, user interface, screen displays, and menu structures." *Gen. Universal Sys.*, 379 F.3d at 142 (footnotes omitted).  However, "[t]he law

---

[7] *See also Feist*, 499 U.S. at 349 ("No matter how original the format, however, the facts themselves do not become original through association.... This inevitably means that the copyright in a factual compilation is thin."); 17 U.S.C. § 103(b).

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

is more protective of highly original and highly expressive works than it is of functional and nonfiction works." *Eng'g Dynamics*, 26 F.3d at 1348.  Thus, where a computer program is "highly functional . . . [or] contain[s] highly standardized information" it will approach the line of uncopyrightability.  *Id.*

In this Circuit, courts apply the abstraction-filtration-comparison test.  *See Gen. Universal Sys.*, 379 F.3d at 142 (footnote omitted). The test is summarized as follows:

> First, in order to provide a framework for analysis, we conclude that a court should dissect the program according to its varying levels of generality as provided in the abstractions test. Second, poised with this framework, the court should examine each level of abstraction in order to filter out those elements of the program which are unprotectable. Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular facts of the program under examination. Third, the court should then compare the remaining protectable elements with the allegedly infringing program to determine whether the defendants have misappropriated substantial elements of the plaintiff's program.

*Eng'g Dynamics*, 26 F.3d at 1342-43 (quoting *Gates Rubber Co. v. Bando Chemical Indus.*, 9 F.3d 823, 834 (10th Cir. 1993)).[8]

"Absent a valid *Altai* analysis to establish unlawful copying of the non-literal aspects of the computer programs, Defendants are entitled to summary judgment." *Gen. Universal Sys.*, 379 F.3d at 143 (internal quotation marks and footnote omitted); *see also* SCOTT ON INFO. TECH. L. § 2.51 (3d Ed. 2020-1 Supplement) ("The burden is on the plaintiff to provide a complete *Altai* analysis.") (citing *Gen. Universal Sys.*, 379 F.3d at 144).

## V.    ARGUMENT

### A.  SASI is improperly trying to extend its copyrights to the operation of its software and the SAS programming language, which is free for anyone to use— SASI has previously lost on this issue in North Carolina.

---

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

SASI brought essentially these same software copyright infringement claims—that WPL infringes copyrights by processing elements of the SAS language—in a prior litigation in North Carolina and lost on summary judgment. *See SAS Inst. Inc. v. World Programming Ltd.*, 64 F. Supp. 3d 755, 775-78 (E.D.N.C. 2014), *aff'd in part, vacated in part,* 874 F.3d 370 (4th Cir. 2017).[9] The court in North Carolina explained that "by asking the court to find that defendant's software infringes its copyright through its processing of elements [of] the SAS Language, plaintiff seeks to copyright the idea of a program which interprets and compiles the SAS Language—a language anyone may use without a license. However, copyright law provides no protection to ideas." *See id.* at 776 (citing 17 U.S.C. § 102(b); *Feist* 499 U.S. at 344–45). Likewise, Mr. Anthony Barr, who conceived of SAS, has previously testified that he never intended or thought that the SAS language could be owned or copyrighted.[10]

Even now, SASI acknowledges that 
"[11] SASI also acknowledges that
"[12] SASI also acknowledges that a
and that a                              that is the result of running its program in the SAS software.[13] SASI also recognizes that
"[14] SASI recognized or did not dispute materially the same things in the North Carolina litigation. *SAS Inst.*, 64 F. Supp. 3d at 775-76.

---

[9] The copyright infringement claims were vacated and ultimately dismissed as moot based on SASI's representations to the district court and Fourth Circuit that SASI recovered all of the same damages from its breach of contract claims that it could have from its copyright claims.

[10] *See* Hamad Decl., Ex. G (Barr Affidavit) at ¶¶ 16-18.

[11] *See* Hamad Decl., Ex. A (Rubendall Feb. 19 & 26, 2020 Dep. Tr.) at 108:12-19.

[12] *See* Hamad Decl., Ex. A (Rubendall Feb. 19 & 26, 2020 Dep. Tr.) at 266:15-267:1.

[13] *See* Hamad Decl., Ex. A (Rubendall Feb. 19 & 26, 2020 Dep. Tr.) at 262:18-263:5.

[14] *See* Hamad Decl., Ex. A (Rubendall 2/19/2020 & 2/26/2020 Dep. Tr.) at 110:7-10.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Attempting to avoid the same result here, SASI has changed the way it frames its claims, asserting now a "collection of input formats" and a "collection of output designs"—an attempt to recast its same copyright allegations to better fit the mold of the Fifth Circuit's decision in *Engineering Dynamics.* But the core of SASI's allegations are the same. SASI is trying to extend its copyrights on software to cover the idea and functionality of the SAS language.

For example, Mr. Craig Rubendall, SASI's corporate representative on copyright issues, testified that the ████████████████████████" and that users compiling their own SAS language program ███████████████████████████████████████

███████████████"[15] Similarly, SASI's CEO, Dr. James Goodnight, testified that SASI ██████████ ████████████ to the SAS language that he believed SASI ████████████████" and that the language█████████████."[16] Dr. Goodnight further testified that "████████████████████ █████████████████████████████████" would be a █████████████████████████ ████████████████████████████"[17] Dr. Goodnight also went on to testify that he believed that SASI's ██████████████████████████████" and "████████████ ██████████████████"[18] He also testified that he believed SASI had ██████████████ ██████████████████" and ████████████████."[19] These things are uncopyrightable. SASI also makes much of the "collection" of SAS "keywords" and "syntax," claiming that any compiling or execution of programs with the same keywords and syntax would require a license. Yet, these are the same things SASI says customers can use to write their own SAS language

---

[15] *See* Hamad Decl., Ex. A (Rubendall 2/19/2020 & 2/26/2020 Dep. Tr.) at 264:5-15.

[16] *See* Hamad Decl., Ex. B (Goodnight 3/5/2020 Dep. Tr.) at 51:3-15, 77:25-78:6.

[17] *See* Hamad Decl., Ex. B (Goodnight 3/5/2020 Dep. Tr.) at 146:9-23.

[18] *See* Hamad Decl., Ex. B (Goodnight 3/5/2020 Dep. Tr.) at 94:4-18 (emphasis added).

[19] *See* Hamad Decl., Ex. B (Goodnight 3/5/2020 Dep. Tr.) at 97:3-11.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

programs without a license—they are the same "collections" and the same words. The district

court in North Carolina recognized this: "Thus, where anyone may use these terms, defendant's

use thereof does not constitute infringement." *See SAS Inst.*, 64 F. Supp. 3d at 776 (citing *Oracle*

*Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1353, 1368 (Fed. Cir. 2014)). The same still holds true

in this case—the SAS language is free for anyone to use. The Court should reject SASI's

assertion of its copyrights over the idea and functionality of the SAS language or SAS software.

Section 102(b) prohibits this.

**B. SASI cannot raise an issue of material fact as to whether its asserted copyright works are copyrightable.**

For each asserted copyright work, SASI has the burden to establish copyrightability in the

work as a whole. *See Eng'g Dynamics*, 26 F.3d at 1340 ("To establish copyright infringement, a

plaintiff must prove ownership of a valid copyright and copying of constituent elements of the

work that are copyrightable. Copyright ownership is shown by proof of originality and

***copyrightability in the work as a whole*** and by compliance with applicable statutory

formalities.") (emphasis added and citations and footnote omitted). SASI cannot adduce

sufficient, competent evidence to establish a genuine issue of material fact as to copyrightability.

1. SASI cannot meet its burden to complete the necessary *Altai* analysis because it did not conduct a proper filtration step—unprotectable elements were not filtered out.

As noted above, it is SASI's burden to complete the *Altai* analysis. *See Gen. Universal*

*Sys.*, 379 F.3d at 144; Scott on Info. Tech. L. § 2.51. "The filtration component of the analysis

seeks to isolate noncopyrightable elements from ***each*** particular level of a program." *Eng'g*

*Dynamics*, 26 F.3d at 1344 (emphasis added). "Filtration should eliminate from comparison the

unprotectable elements of ideas, processes, facts, public domain information, merger material,

scenes a faire material, and other unprotectable elements suggested by the particular facts of the

program under examination." *Id.* at 1343 (quoting *Gates Rubber*, 9 F.3d at 834).

7

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

A party must determine protectability of elements and filter out unprotectable ones *before* proceeding to the comparison step to determine substantial similarity and copyright infringement. *See Gates Rubber*, 9 F.3d at 842 (finding error where court "failed to determine the protectability of many of the elements of [the copyrighted work] which it found to have been copied by the defendants.").  It is error to proceed otherwise, as SASI has done.

Dr. Storer did not filter out unprotectable elements at each level as required. *See Eng'g Dynamics*, 26 F.3d at 1344.[20] Dr. Storer comes up with these five "levels of abstraction": (1) main purpose of the program; (2) interface mechanism; (3) collection of input formats; (4) collection of output designs; and (5) naming and syntax.[21] Dr. Storer's report states that he "applied the Filtration step at each level of abstraction."[22] But while he filters out the "main purpose" and "interface mechanism" levels, Dr. Storer does not filter out unprotectable elements from the remaining three levels.[23] In his deposition, Dr. Storer confirmed this.[24] With respect to the "collection of input formats," Dr. Storer testified that "this section does not try to pull out or segment or somehow pull apart this collection….I'm not filtering out some portion of the collection in this section."[25] Regarding the "collection of output designs," Dr. Storer similarly testified that "this section is not excluding, you know, something, portions of the collection or

---

[20] *See also* Hamad Decl., Ex. I (Storer Copyright Report) at 30-40.  Under FRCP 56(c)(2), WPL objects to the admissibility of Dr. Storer's testimony on copyright infringement for the reasons stated in WPL's concurrently filed Motion to Exclude Dr. Storer's testimony.

[21] *See* Hamad Decl., Ex. I (Storer Copyright Report) at 26-30; *id.*, Ex. F (Storer 4/20/2020 Dep. Tr.) at 152:13-19. These are not even higher or lower levels of abstractions of the program. For example, Dr. Storer testified that the interface mechanism is not a higher level of abstraction than the collections of inputs and outputs, or a more specific level than the main purpose. *See id.*, Ex. F (Storer 4/20/2020 Dep. Tr.) at 277:25-278:15.

[22] *See* Hamad Decl., Ex. I (Storer Copyright Report) at 30.

[23] *See* Hamad Decl., Ex. I (Storer Copyright Report) at 30.

[24] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 153:23-164:18.

[25] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 157:15-25 (Q&A at 156:22-157:25).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

something of that nature."[26] When asked about the "naming and syntax" level, rather than confirming that he did not filter anything out of this level, Dr. Storer basically testified that he thought it was too much work to try to filter things out of this level.[27]

During his deposition, Dr. Storer tried to justify why he did not filter anything out of these levels by claiming that he determined that there was creativity and effort evident and that there were protectable elements at these levels.[28] But this vitiates the filtration step. It is not enough to simply determine that there is some protectable element at a given level and move on. Rather, unprotectable elements need to be filtered out so that there remains an identified "core of protectable expression" that is then used to compare the works at issue. *See Gen. Universal Sys.*, 379 F.3d at 143 (citation omitted). SASI's failure to do so was legally improper.

Moreover, while it is not WPL's burden to complete the *Altai* analysis, WPL has advanced ample evidence that Dr. Storer's levels of abstraction contain numerous unprotectable elements.[29] For example, it is not disputed that a version of SAS software called SAS 76 is in the public domain.[30] The SAS 76 manual includes various identically named or nearly identically named PROCs as those identified by SASI and Dr. Storer, such as ANOVA, CORR, GLM, NESTED, NLIN, TTEST, and VARCOMP.[31] Also, SAS 76 included many of the same

---

[26] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 159:6-8 (Q&A at 158:16-159:24).

[27] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 160:19-164:18 ("...so it would be a huge project to go through and try to see whether there are particular ones you might -- you might want to filter out...I don't specifically try to go through the 10,000 plus keywords in this report...There are literally, not hundreds, thousands, thousands of individual keywords and so on in the system. The report does not attempt to enumerate and go through all the thousands...").

[28] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 153:23-164:18.

[29] *See generally* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2., ¶ 107

[30] *See S & H*, 568 F. Supp. at 419; *see also* Hamad Decl., Ex. B (Goodnight 3/5/2020 Dep. Tr.) at 63:13-15 (acknowledging SAS 76 is public domain).

[31] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.1, ¶¶ 115-17.

syntactical, structural, and organizational elements and conventions that are identified by SASI and Dr. Storer including "DATA steps, PROC steps, statements, general-purpose statements, options, parameters, informats, and formats."[32] Likewise, SAS 76 also had formatted output for information generated when SAS language programs are executed by the SAS software.[33] Dr. Storer actually alludes to SAS 76 and the public domain issue in his report.[34] However, rather than filtering those elements out to ensure that only protectable elements were being compared, Dr. Storer contends that the "decision to continue" to use unprotectable elements is protectable. This is wrong—even if an unprotectable element is "selected" to be used in a compilation, any copyright in such a compilation does not extend to "the preexisting material employed in the work." *See* 17 U.S.C. § 103(b); *Feist*, 499 U.S. at 349.

        As another example, almost all of the types of terms that Dr. Storer mentions are conventional names, abbreviations, shorthand for statistical and mathematical concepts, procedures, calculations, variables, and measurements or otherwise dictated by standards in the relevant fields.[35] *See Taylor*, 54 F. App'x 794 ("Copyright Act does not protect fragmentary words or short phrases"); *Eng'g Dynamics*, 26 F.3d at 1345 ("Likewise, abbreviations for terms, dictated by necessity or industry standard, are uncopyrightable by themselves."). These terms are also often simply reflective of the functionality assigned to them. For example, PROC MEANS calculates a mean value. PROC PRINT prints a dataset. PROC GLM performs a **g**eneral **l**inear **m**odel regression analysis. PROC ANOVA performs **an**alysis **of** a **va**riance. PROC TTEST performs a *t*-test analysis. Similarly, other terms like "print," "header," "method," "info", "data,"

---

[32] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.1, ¶ 118.

[33] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.1, ¶ 120.

[34] *See* Hamad Decl., Ex. I (Storer Copyright Report) at 33.

[35] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.12, ¶¶ 205-210, § 8.2.2.13 ¶¶ 211-214.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

"order," and "label" are similar shorthand reflecting their functionality or standard practice.[36] *See Computer Mgmt.*, 220 F.3d at 401 (describing the type of standards that should be filtered out in context of computer programs). Even the term "PROC" is an abbreviation for a "procedure," which is a common term in computing industry.[37] In fact, "PROC" was a term that SASI took from IBM's PL/1 language,[38] meaning it is also not protectable because it is not original to SAS. *See Feist*, 499 U.S. at 348; *Eng'g Dynamics*, 26 F.3d at 1347.

As another example, output generated by a SAS language program includes unprotectable mathematical and statistical variables and constants, graphs, charts, tables, plots, user data, and calculated values.[39] *See Eng'g Dynamics*, 26 F.3d at 1343. The outputs also include certain colors and other visual elements like column width, fonts, and the like. But these elements are not original to SAS.[40] Similarly, the vast majority of SAS output is dictated or provided by the user program. Mr. Rubendall described output generated by a program invoking PROC SURVEYSELECT. The highlighting below reflects elements dictated by the user program:[41]

---

[36] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.13, ¶ 214.

[37] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2.13, ¶ 213.

[38] *See* Hamad Decl., Ex. B (Goodnight Dep. Tr.) at 143:19-144:25. Moreover, Mr. Anthony Barr testified during the 1983 *S&H* litigation that he took a number of lexical features from PL/1 as well as features that were in SPSS and that he used algorithms and procedures from other sources like textbooks, manuals, and programs. *See* Hamad Decl., Ex. H (Barr Dep. Tr.) at 15:13-16:24, 17:21-19:9; 26:3-18, 54:21-55:21.

[39] *See* Hamad Decl., Ex. C (Jones Copyright Report) at §§ 8.2.2.3, ¶¶ 134-138; 8.2.2.5, ¶¶ 146-150; 8.2.2.7, ¶¶ 173-179; 8.2.2.9, ¶¶ 185-191; 8.2.3, ¶¶ 215-229.

[40] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 250:2-251:3, 288:3-9; *id.*, Ex. A (Rubendall Dep. Tr.) at 222:20-223:11; *id.*, Ex. H (Barr Dep. Tr.) at 101:2-10; *id.*, Ex. B (Goodnight Dep. Tr.) at 62:15-23, 71:21-72:3.

[41] *See* Hamad Decl., Ex. A (Rubendall Dep. Tr.) at Exs. 43 & 44; and 197:2-198:25.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dr. Jones outlined additional examples of elements that should have been filtered out from each asserted level.[42] It was SASI's burden to complete this analysis, and the failure to filter out unprotectable elements is legal error. *See Gen. Universal Sys.*, 379 F.3d at 143-44; *Gates Rubber*, 9 F.3d at 842-43. Summary judgment is warranted.

2.   <u>SASI has not set forth sufficient evidence to establish that the asserted "collection of output designs", as asserted, are fixed in a tangible medium of expression and has also failed to show that SAS software does the lion's share of the work to generate the asserted output results with no more than a marginal contribution from user.</u>

Works must be "original" and "fixed in any tangible medium of expression" to be copyrightable. *See* 17 U.S.C. § 102(a). By definition, a work is "fixed" when "its embodiment in a copy…is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *See* 17 U.S.C. § 101 (definition of "fixed"). When a user's SAS language program is executed by SAS software, results are generated. SASI and Dr. Storer assert copyright infringement of these results as "output designs" or "output formats."[43] But these output results are not generated by the SAS software alone. Rather, they owe their existence and form to the user's SAS language program. Stated

---

[42] *See generally* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.2, ¶ 107.

[43] *See generally* Hamad Decl., Ex. I (Storer Copyright Report) at 36-39 and at Exs. 7-9.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

differently, absent a SAS language program, the outputs asserted by SASI and featured in Dr.

Storer's report exhibits are not fixed in any tangible medium of expression—they do not exist.

Numerous courts recognize that copyright issues arising from outputs generated by user

involvement require a unique analysis. *See, e.g.*, *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276,

283 (S.D.N.Y. 2001); *Digital Drilling Data Sys. LLC v. Petrolink Servs. Inc*., No. 4:15-CV-

02172, 2018 WL 2267139, at \*9 (S.D. Tex. May 16, 2018); *Rearden LLC v. Walt Disney Co.*,

293 F. Supp. 3d 963, 970–71 (N.D. Cal. 2018); *Design Data Corp. v. Unigate Enter., Inc.*, 847

F.3d 1169, 1173 (9th Cir. 2017); *see also* 4 NIMMER ON COPYRIGHT § 13.03[F] (reciting test and

quoting *Torah Soft*). Under this analysis, courts find that copyright extends to output generated

by a program only if the program "does the lion's share of the work" and the user's role or

contribution was not more than "marginal." *See id.*

In *Digital Drilling*, for example, the court found that a copyright over a computer

program extended to a database schema output by a computer because the schema itself was

already pre-formulated and existed in the source code independently of user input. *See* 2018 WL

2267139, at \*9. The user merely performed marginal role of filling in the blanks. *See id.* In

contrast, in *Rearden*, the court found that a copyright over a computer program for generating 3d

models did not extend to the program's 3D outputs, even when the "program does a significant

amount of work." *See* 293 F. Supp. 3d at 970–71. The court explained that the program did not

do "the lion's share of the creativity" in creating the outputs, and also, the users' role was more

than marginal such that the output did not reflect the program's contents. *See id.*

Here, SASI has not presented evidence establishing that SAS software does the lion's

share of the work in generating outputs or that the user's input is not more than marginal. Rather,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the evidence shows the opposite.[44] For example, referring to the above SURVEYSELECT

example, Mr. Rubendall testified that ██████████████████████████████████████

████████████████.[45] More directly, Dr. Goodnight testified that ███████████████

████████████████████████████████"[46] Even Dr. Storer testified that output is ██████████

████████████████████████████████████████████████████████████████████████

███████████████████████"[47] SASI cannot raise a genuine issue of material fact that

SAS software does the lion's share of the work to generate outputs or that users' role is marginal.

For this additional reason, summary judgment is appropriate.

**C. If the Court grants WPL's Motion to Exclude Dr. Storer's copyright report and testimony, there is an additional basis for summary judgment—SASI lacks evidence to carry its burden on its copyright infringement claims at trial.**

"Computer software cases are different from traditional copyright cases because of their

complicated and technical subject matter." *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17-CV-

546-ALM-CMC, 2019 WL 3927318, at *7 (E.D. Tex. Aug. 20, 2019) (citation omitted). As a

result, expert testimony is appropriate and often necessary to properly apply the *Altai* analysis in

these cases. *See Gates Rubber*, 9 F.3d at 834–35 ("Indeed, in most cases we foresee that the use

of experts will provide substantial guidance to the court in applying an abstractions test."). In

*Pepper v. Int'l Gaming Sys., LLC*, the district court concluded "that application of the

abstraction/filtration/comparison test in the instant case requires expert knowledge in the area of

computer programming—a level of knowledge that the Court believes requires a fundamental

understanding of computer programming." 312 F. Supp. 2d 853, 861 (N.D. Miss. 2004)

---

[44] *See* Hamad Decl., Ex. C (Jones Copyright Report) at § 8.2.3, ¶¶ 215-229.

[45] *See* Hamad Decl., Ex. A (Rubendall Dep. Tr.) at 210:14-211:13.

[46] *See* Hamad Decl., Ex. B (Goodnight Dep. Tr.) at 60:8-10, 60:23-61:4.

[47] *See* Hamad Decl., Ex. F (Storer 4/20/2020 Dep. Tr.) at 282:16-22.

14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

(discussing *Eng'g Dynamics*, 26 F.3d at 1343, n.10).

The present case similarly requires expert knowledge in computer science and computer programming. If the Court grants WPL's concurrently filed Motion to Exclude Dr. Storer's report and testimony, SASI will have "no expert to help explain to the court and the jury how to apply the abstraction/filtration/comparison test to the computer programs in the instant case—or anything other technical aspect of the plaintiff's case." *Pepper*, 312 F. Supp. 2d at 861 (having previously stricken expert for failure to file signed expert report conforming to Rule 26(a)(2)). At that point, SASI would be "incapable of sustaining [its] burden of proving [its] copyright infringement claim." *See id.* This would be an additional basis for summary judgment.

## VI.    CONCLUSION

For the reasons above, summary judgment should be granted against SASI's copyright infringement claim.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated: April 27, 2020.                    */s/ Bradley W. Caldwell*

**CALDWELL CASSADY CURRY, P.C.**

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
Hamad M. Hamad
Texas State Bar No. 24061268
Email: hhamad@caldwellcc.com
Caldwell Cassady Curry P.C.
2121 North Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

ATTORNEYS FOR DEFENDANTS
WORLD PROGRAMMING LIMITED,
LUMINEX SOFTWARE, INC., YUM!
BRANDS, INC., AND PIZZA HUT, INC.


**WARD, SMITH & HILL, PLLC**

T. John "Johnny" Ward Jr.
Texas Bar No. 00794818
jw@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
P.O. Box 1231
Longview, TX 75606
903-757-6400
903-757-2323 (Facsimile)

ATTORNEYS FOR DEFENDANT WORLD
PROGRAMMING LIMITED

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I certify that on April 27, 2020, this document was served on counsel of record by email.

*/s/ Hamad M. Hamad*
Hamad M. Hamad

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that this document is authorized to be filed under seal pursuant to this case's

Protective Order.

*/s/ Hamad M. Hamad*
Hamad M. Hamad