FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| SAS INSTITUTE INC., <br>     Plaintiff, <br> v. <br> WORLD PROGRAMMING LIMITED, <br> LUMINEX SOFTWARE, INC., YUM! <br> BRANDS, INC., PIZZA HUT, INC., <br> SHAW INDUSTRIES GROUP, INC., <br>     Defendants. | Civil Action No. 2:18-CV-00295-JRG <br><br> **Jury Trial Demanded** <br><br> **FILED UNDER SEAL** <br> PUBLIC VERSION |

## DEFENDANTS' CORRECTED MOTION TO EXCLUDE TESTIMONY OF DR. JAMES STORER ON ISSUES RELATED TO COPYRIGHT INFRINGEMENT

FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  APPLICABLE LAW ..................................................................................................... 1

   A.   FRE 702 and *Daubert* ......................................................................................... 1

   B.   Copyright law ......................................................................................................... 2

III. ARGUMENT ................................................................................................................. 4

   A.   Dr. Storer's testimony related to the "abstraction-filtration-comparison"
analysis and Exhibits 4, 5, and 6 should be excluded because he does not
present an analysis completed with respect to any particular copyright work. ............ 4

   B.   Dr. Storer's testimony related to Exhibits 4-9, and the exhibits themselves,
should be excluded because they were not the product of reliable principles
and methods being reliably applied to the facts of the case. ......................................... 5

   C.   Dr. Storer's testimony related to the "abstraction-filtration-comparison"
analysis and Exhibits 4-9 should be excluded because he fails to filter
unprotectable elements at each layer of abstraction. .................................................... 8

   D.   Dr. Storer's testimony related to the "abstraction-filtration-comparison"
analysis and Exhibits 4-9 should be excluded because he fails to present
side-by-side comparisons of the protectable elements of the asserted works ............. 11

   E.   Dr. Storer's testimony related to Exhibits 4-9, and the exhibits themselves,
should be excluded under FRE 403 because their probative weight is
outweighed by the risk of unfair prejudice, confusion of the issues, and
misleading the jury ....................................................................................................... 13

   F.   Dr. Storer's testimony should be excluded under FRCP 26 and 37 because
SASI repeatedly failed to disclose basic information about is copyright
infringement theories and contentions—it has yet to do so. ....................................... 14

IV.  CONCLUSION ............................................................................................................. 15

i

~~FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~
~~XXXXXXXXX XXXX XXXXXXXXX XX XXXXXXXXXX XXXXX~~

## TABLE OF AUTHORITIES

**Cases**

*Bridgmon v. Array Sys. Corp.*
    325 F.3d 572 (5th Cir. 2003) ............................................................................. 3, 11

*Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*
    220 F.3d 396 (5th Cir. 2000) ................................................................................. 3

*Concentro Labs., L.L.C. v. Practice Wealth, Ltd.*
    623 F. App'x 251 (5th Cir. 2015) .......................................................................... 3

*Curtis v. M & S Petroleum, Inc.*
    174 F.3d 661 (5th Cir. 1999) ................................................................................. 3

*Daubert v. Merrell Dow Pharms. Inc.*
    509 U.S. 579 (1993)................................................................................... passim

*Design Data Corp. v. Unigate Enter., Inc.*
    847 F.3d 1169 (9th Cir. 2017) ............................................................................ 13

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*
    26 F.3d 1335 (5th Cir. 1994) ..................................................................... 3, 4, 5, 8

*Engenium Sols., Inc. v. Symphonic Techs., Inc.*
    924 F. Supp. 2d 757 (S.D. Tex. 2013) ................................................................... 8

*FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*
    695 F. Supp. 2d 216 (W.D. Pa. 2010).......................................................... 8, 11, 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*
    499 U.S. 340 (1991).......................................................................................... 10

*Gates Rubber Co. v. Bando Chemical Indus.*
    9 F.3d 823 (10th Cir. 1993) .......................................................................... 4, 8, 9

*Gen. Universal Sys., Inc. v. Lee*
    379 F.3d 131 (5th Cir. 2004) ..................................................................... 3, 4, 10, 11

*Johnson v. Arkema, Inc.*
    685 F.3d 452 (5th Cir. 2012) ................................................................................. 2

*King v. Ames*
    179 F.3d 370 (5th Cir. 1999) ................................................................................. 3

~~FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

*Kumho Tire Co., Ltd. v. Carmichael*
   526 U.S. 137 (1999) ................................................................................................ 2

*Rearden LLC v. Walt Disney Co.*
   293 F. Supp. 3d 963 (N.D. Cal. 2018) ................................................................. 13

*S & H Computer Sys., Inc. v. SAS Inst., Inc.*
   568 F. Supp. 416 (M.D. Tenn. 1983) .................................................................... 10

*Spear Mktg., Inc. v. BancorpSouth Bank*
   791 F.3d 586 (5th Cir. 2015) ................................................................................ 11

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*
   2018 WL 4620634 (E.D. Tex. Apr. 27, 2018) ...................................................... 15

**Statutes**

17 U.S.C. § 103(b) ...................................................................................................... 10

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................... 15
Fed. R. Civ. P. 26(a)(2)(B) .......................................................................................... 8
Fed. R. Civ. P. 37 ....................................................................................................... 15
Fed. R. Civ. P. 702 ....................................................................................................... 1
Fed. R. Evid. 403 .................................................................................................. 13, 14
Fed. R. Evid. 702 ......................................................................................................... 2
Fed. R. Evid. 702(a) ......................................................................................... 5, 11. 13
Fed. R. Evid. 702(c) .................................................................................... 6, 8, 11, 13
Fed. R. Evid. 702(d) ................................................................................... 6, 8, 11, 13

FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER
XXXXXXXXX XXXXXXXXXXXX XXXXXXXXX XXXX XXXXXXXXXXX XXXXX

## I.   INTRODUCTION

Defendants respectfully request that the Court exclude Dr. James Storer's expert report and testimony on Plaintiff SAS Institute Inc.'s ("SASI") copyright infringement claims.

WPL acknowledges that, in many circumstances, problems with expert reports go to the weight of the evidence, not admissibility. And WPL acknowledges that it has filed a number of motions on the dispositive motions and *Daubert* deadline—more than this busy Court desires to review or resolve. But WPL has not requested relief from the Court in these instances lightly. And in a different case with a different opposing litigant, WPL suspects it would have ended up filing far fewer motions. But SASI's tactics here are transparent.

They have no desire to litigate this case in a tailored way based on operative legal guideposts. They had no desire to disclose any contention on the expression/idea dichotomy, no desire to evaluate whether their copyrights contain unprotectable elements, no desire to explain how this case differs from just a re-do of its prior North Carolina copyright loss—indeed, no desire to even educate their expert, Dr. Storer, on what "his" opinions are. Instead, they seek to disclose as little as possible, show up to trial armed with the word "clone," and hope to achieve millions of dollars (and serious commercial harm to WPL) as a result. WPL wishes it could have presented requests in a more streamlined fashion. But a streamlined case requires an opposing litigant that at least tries to play by the rules. SASI has not done so. And therefore, WPL is left no choice but to bring this motion—and unfortunately, a large number of others.

## II.   APPLICABLE LAW

### A.  FRE 702 and *Daubert*

Rule 702 provides that an expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the testimony is the product of reliable principles and methods; and (d) the expert has reliably

applied the principles and methods to the facts of the case. *See* FED. R. EVID. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but the Supreme Court held

that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both

rests on a reliable foundation and is relevant to the task at hand." *See Daubert v. Merrell Dow

Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the

proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology

can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th

Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The

reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and

procedures of science and . . . be more than unsupported speculation or subjective belief.'"

*Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the reliability of an expert's opinion, the trial court may consider a list of

factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the

theory or technique has been subjected to peer review and publication," "the known or potential

rate of error," "the existence and maintenance of standards," and "general acceptance" of a

theory in the "relevant scientific community." *Daubert*, 509 U.S. at 591-95; *see also Kumho Tire

Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it

mentions do not constitute a 'definitive checklist or test.'"). The proponent of the challenged

testimony must prove that the testimony is reliable. *See Johnson*, 685 F.3d at 459.

**B.  Copyright law**

"To establish copyright infringement, a plaintiff must prove ownership of a valid

copyright and copying of constituent elements of the work that are copyrightable. Copyright

ownership is shown by proof of originality and copyrightability in the work as a whole and by

~~FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~
~~XXXXXXXXX XXXX XX XXXXXXXX XX XXXXXXXXX XXXX XXXXX~~

compliance with applicable statutory formalities." *Eng'g Dynamics*, 26 F.3d at 1340 (citations and footnote omitted).[1] "Not all copying by a defendant is actionable as copyright infringement. A copy is legally actionable if (1) the alleged infringer actually used the copyrighted material to create his own work, and (2) substantial similarity exists between the two works." *Computer Mgmt.*, 220 F.3d at 400 (internal citations and quotation marks omitted).

"If the plaintiff demonstrates factual copying, he must next demonstrate that the copying is legally actionable by showing that the allegedly infringing work is substantially similar to protectable elements of the infringed work." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004). To do this, "a side-by-side comparison must be made between the original and the copy to assess whether the two works are substantially similar." *King v. Ames*, 179 F.3d 370, 76 (5th Cir. 1999).[2] In fact, Fifth Circuit law "prohibits finding copyright infringement without a side-by-side comparison of the two works." *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (affirming summary judgment for failure to "produce evidence of substantial similarity between the copyrighted software and the software used by [the defendant]").

To assess copyright infringement claims for software programs, the Fifth Circuit has adopted the abstraction-filtration-comparison test:

> First, in order to provide a framework for analysis, we conclude that a court should dissect the program according to its varying levels of generality as provided in the abstractions test. Second, poised with this framework, the court should examine each level of abstraction in order to filter out those elements of the program which are unprotectable. Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular

---

[1] *See also Concentro Labs., L.L.C. v. Practice Wealth, Ltd.*, 623 F. App'x 251, 252 (5th Cir. 2015) ("First, for a copyright to be 'owned' it must exist. And, for a copyright to exist in a work, such work must be subject to copyright protection, *i.e.*, it must be 'copyrightable.'").

[2] *See also id*. ("The party bringing the copyright claim must prove substantial similarity.").

~~FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~
~~XXXXXXXXXX XXXX XXXXXXXXXX XX XXXXXXXXXX XXXXX~~

facts of the program under examination. Third, the court should then compare the remaining protectable elements with the allegedly infringing program to determine whether the defendants have misappropriated substantial elements of the plaintiff's program.

*Eng'g Dynamics*, 26 F.3d at 1342-43 (quoting *Gates Rubber Co. v. Bando Chemical Indus.*, 9 F.3d 823, 834 (10th Cir. 1993)); *see also Gen. Universal Sys.*, 379 F.3d at 142.

## III.    ARGUMENT

### A. Dr. Storer's testimony related to the "abstraction-filtration-comparison" analysis and Exhibits 4, 5, and 6 should be excluded because he does not present an analysis completed with respect to any particular copyright work.

To prove copyright infringement, the Fifth Circuit requires a comparison to the copyrighted work. *See Eng'g Dynamics,* 26 F.3d at 1347; *Gen. Universal Sys.*, 379 F.3d at 142; *see also Virtual Chart*, 2019 WL 3927318, at *7. Thus, Dr. Storer's analysis should have been made with respect to the copyright works at issue. But it was not. Dr. Storer confirmed that he did not present in his report any analysis on a per-copyright work basis for each asserted copyright work at any step of the analysis.[3] Additionally, Dr. Storer confirmed that for Exhibits 4, 5, and 6 to his report, which purport to relate to "keywords" and structure of works, his report did not identify the asserted copyrighted works to which the material in these exhibits was supposedly compared.[4] Dr. Storer also confirmed that his report does not identify the asserted the layers that he identifies as the "collection of input formats" or "collection of output designs" for any particular copyright work.[5] Dr. Storer also refused to answer questions directed toward the

---

[3] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 103:19-24; *id.*, Ex. C (Storer 4/21/2020 Dep. Tr.) at 421:22-422:14, 428:7-429:12.

[4] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 417:18-419:23.

[5] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 428:7-429:12.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

fact that his report does not identify the individual elements of an asserted collection by name.[6]

Similarly, Dr. Storer did not do an analysis for SAS manuals for any particular registration. He

did not know which registrations for which versions of SAS user manuals were at issue.[7]

An expert's scientific, technical, or other specialized knowledge must help the trier of

fact understand the evidence or determine a fact in issue. *See* FED. R. EVID. 702(a); *Daubert*, 509

U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and,

ergo, non-helpful.") (citations and quotation marks omitted). Establishing a copyright

infringement claim includes showing: (1) the copyrightability of the copyright work; and (2)

actionable copying of the protectable elements of the copyright work. *See Eng'g Dynamics*, 26

F.3d at 1340. Both of those elements require consideration of the copyright work at issue.

Likewise, every step of the abstraction-filtration-comparison step requires consideration of a

copyright work. *See Eng'g Dynamics*, 26 F.3d at 1342-43; *see also id.* at 1347 ("After the district

court completes the "filtration" of the user interface as described, it must then decide whether

[the defendant's] work is substantially similar ***to the copyrighted works***.") (emphasis added). Dr.

Storer's analysis and exhibits, which were not done or made with respect to any particular

copyright work at issue, do not help the trier of fact determine any of these issues. They do not

otherwise relate to an actual issue for trial. Accordingly, Dr. Storer's testimony related to the

"abstraction-filtration-comparison" analysis and Exhibits 4, 5, and 6 should be stricken for

failure to comply with FRE 702(a) and *Daubert*.

**B.  Dr. Storer's testimony related to Exhibits 4-9, and the exhibits themselves, should**

---

[6] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 432:10-437:19.

[7] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 291:1-10.

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

**be excluded because they were not the product of reliable principles and methods being reliably applied to the facts of the case.**

Expert testimony must be the product of reliable principles and methods being reliably applied to the facts of the case. *See* FED. R. EVID. 702(c)-(d); *Daubert*, 509 U.S. at 589-95. In assessing the reliability of an expert's opinion, the trial court may consider, among other factors, whether a theory or technique can be and has been tested, whether the theory or technique has been subjected to peer review and publication, and whether the theory or technique was conducted pursuant to any known or existing standards. *See Daubert*, 509 U.S. at 591-95.

Despite Dr. Storer's assurances that the data used in his exhibits was gathered in "a very well-established, very rigorous and well-understood and you know, totally good way,"[8] Dr. Storer testified that his report does not disclose any methodology or process used to generate the data underlying Exhibits 4, 5, and 6.[9] Dr. Storer confirmed that his report does not disclose that his Exhibits 4 and 6 were made by a methodology that was subject to peer-review, were made according to known standards, or were tested by others in the computer science community.[10]

Dr. Storer also could not verify basic information about his exhibits. For example, Dr. Storer did not know who made the exhibits.[11] Dr. Storer also testified that another SASI expert, Dr. Seed, made and used a script to generate the information in Exhibit 6 (from which Exhibits 4

---

[8] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 131:21-132:2 (full Q&A at 131:11-132:7).

[9] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 129:22-130:6.

[10] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 411:3-9, 412:24-415:6, 415:15-22.

[11] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 124:9-125:6 (Exhibit 4), 125:7-127:4 (Exhibit 6), 127:8-129:3 (Exhibits 4, 5, 6); *id.*, Ex. B (Storer 4/20/2020 Dep. Tr.) at 192:5-17 (Exhibit 4); *id.*, Ex. C (Storer 4/21/2020 Dep. Tr.) at 439:25-441:17 (Exhibit 8), 447:11-449:9 (Exhibit 7), 450:8-18 (Exhibit 9).

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

and 5 were derived) but that Dr. Storer's report does not disclose a program or script, does not otherwise describe the script, and does not disclose how the script was used to search WPS code.[12] Dr. Storer speculated about what Dr. Seed might have used as a tool, but none of that was disclosed in his report.[13] Dr. Storer's report also did not disclose the search strings or expressions that were actually used by Dr. Seed's script to search the WPS code.[14] Dr. Storer also had not personally run Dr. Seed's undisclosed script on the WPS code.[15] Dr. Seed had performed his review, come up with pattern matching (that was not disclosed in Dr. Storer's repot), and generated Exhibits 4-6's underlying data of his own volition—Dr. Storer did not direct him to perform that review or pattern matching.[16] Similarly, Dr. Storer could not identify who wrote the SAS language programs that resulted in the outputs in his Exhibits 7, 8, and 9.[17]

Because the exhibits were made by an unknown someone according to an unknown process using unknown scripts or programs, it is impossible to reproduce or test Dr. Storer's methodology or analysis or challenge the validity of his conclusions. This is not a hallmark of a reliable analysis or methodology. *See Daubert*, 509 U.S. at 589-95. Furthermore, Dr. Storer's

---

[12] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 129:4-130:24, 132:10-133:2; *id.*, Ex. B (Storer 4/20/2020 Dep. Tr.) at 206:8-212:9.

[13] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 130:7-24 ("Unix grep", "might have been a different tool," "something similar to grep but not grep"); *id.*, Ex. B (Storer 4/20/2020 Dep. Tr.) at 203:4-206:17 ("Microsoft Visual Studio", "something equivalent to grep", "search facility in Microsoft Visual Studio").

[14] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 192:18-193:2, 193:8-195:3.

[15] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 206:18-24.

[16] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 127:8-129:3.

[17] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 449:17-450:7 (Exhibit 7), 441:18-443:6 (Exhibit 8), 450:19-451:16 (Exhibit 9).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

failure to disclose his methodologies and principles also violates Rule 26's requirements for written expert reports. Rule 26 requires an expert's written report to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." FED. R. CIV. PROC. 26(a)(2)(B). Dr. Storer did not do that in his report. Dr. Storer also did not do that in his deposition.

Accordingly, Dr. Storer's Exhibits 4-9 and his testimony and opinions related to those exhibits should be excluded for failure to comply with FRE 702(c)-(d), *Daubert*, and FRCP 26(a)(2)(B). *See Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 770–72 (S.D. Tex. 2013) (excluding experts' reports and testimony on copyright issues as unreliable where experts' reports failed to disclose methodologies or procedures used, including failing to disclose how an expert decided which components to compare and which versions of software were compared); *FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp. 2d 216, 223-24 (W.D. Pa. 2010) (excluding expert on copyright issues in part for failure "to support his conclusions with any evidence, technical principles, or methodology, leaving [other party] with no means by which to test and/or challenge the validity of those conclusions").

### C. Dr. Storer's testimony related to the "abstraction-filtration-comparison" analysis and Exhibits 4-9 should be excluded because he fails to filter unprotectable elements at each layer of abstraction.

The Fifth Circuit uses the abstraction-filtration-comparison test for evaluating software copyright cases. *See Eng'g Dynamics*, 26 F.3d at 1342-43. "The filtration component of the analysis seeks to isolate noncopyrightable elements from *each* particular level of a program." *Eng'g Dynamics*, 26 F.3d at 1344 (emphasis added). "Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular facts of the program under examination." *Id.* at 1343 (quoting *Gates Rubber*, 9 F.3d at

8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

834). It is error to not determine the protectability of elements and not filter out unprotectable elements **before** proceeding to the comparison step to determine substantial similarity and copyright infringement. *See Gates Rubber*, 9 F.3d at 842-843.

In his report Dr. Storer asserts five "levels of abstraction": (1) main purpose of the program; (2) interface mechanism; (3) collection of input formats; (4) collection of output designs; and (5) naming and syntax.[18] Dr. Storer's report states that he "applied the Filtration step at each level of abstraction."[19] But while he filters out the "main purpose" and "interface mechanism" levels, Dr. Storer does not filter out unprotectable elements from the remaining three levels.[20] In his deposition, Dr. Storer confirmed this.[21] With respect to the "collection of input formats," Dr. Storer testified that "this section does not try to pull out or segment or somehow pull apart this collection….I'm not filtering out some portion of the collection in this section."[22] Regarding the "collection of output designs," Dr. Storer similarly testified that "this section is not excluding, you know, something, portions of the collection or something of that nature."[23] When asked about the "naming and syntax" level, Dr. Storer basically testified that he thought it was too much work to try to filter things out of this level.[24]

---

[18] *See* Hamad Decl., Ex. D (Storer Copyright Report) at 26-30; *id.*, Ex. B (Storer 4/20/2020 Dep. Tr.) at 152:13-19.

[19] *See* Hamad Decl., Ex. D (Storer Copyright Report) at 30.

[20] *See* Hamad Decl., Ex. D (Storer Copyright Report) at 30-40.

[21] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 153:22-164:18.

[22] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 157:15-25 (Q&A at 156:22-157:25).

[23] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 159:6-8 (Q&A at 158:16-159:24).

[24] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 160:19-164:18 ("…so it would be a huge project to go through and try to see whether there are particular ones you might -- you

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dr. Storer tried to excuse his failure to filter at each level by claiming that he determined that there were some protectable elements at these levels.[25] But it is not enough to simply determine that there is some protectable element at a given level and move on. Rather, unprotectable elements need to be filtered out so that there remains an identified "core of protectable expression" that is then used to compare the works at issue. *See Gen. Universal Sys.*, 379 F.3d at 143 (citation omitted). There are numerous unprotectable elements as outlined in WPL's Partial Motion for Summary Judgment as to Copyrightability. But at minimum, Dr. Storer should have filtered out elements of a version of SAS called SAS 76. It is not disputed that a SAS 76 is in the public domain.[26] And Dr. Storer himself alludes to SAS 76 and the public domain issue in his report.[27] However, rather than filtering those elements out to ensure that only protectable elements were being compared, Dr. Storer contends that the "decision to continue" to use unprotectable elements is protectable. This is wrong—even if an unprotectable element is "selected" to be used in a compilation, any copyright in such a compilation does not extend to "the preexisting material employed in the work," and it should be filtered out. *See* 17 U.S.C. § 103(b); *Feist*, 499 U.S. at 349; *see Eng'g Dynamics*, 26 F.3d at 1342-43.

Because Dr. Storer's failed to filter out unprotectable elements at each layer, his

---

might want to filter out…I don't specifically try to go through the 10,000 plus keywords in this report…There are literally, not hundreds, thousands, thousands of individual keywords and so on in the system. The report does not attempt to enumerate and go through all the thousands…").

[25] *See* Hamad Decl., Ex. B (Storer 4/20/2020 Dep. Tr.) at 153:23-164:18.

[26] *See S & H Computer Sys., Inc. v. SAS Inst., Inc.*, 568 F. Supp. 416, 419 (M.D. Tenn. 1983); *see also* Hamad Decl., Ex. E (Goodnight Mar. 5, 2020 Dep. Tr.) at 63:13-15 (acknowledging SAS 76 is public domain).

[27] *See* Hamad Decl., Ex. D (Storer Copyright Report) at 33.

10

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

comparison improperly compared unprotectable elements. As such, his testimony and opinions on the abstraction-filtration-comparison analysis will not help the trier of fact understand the evidence or determine a fact in issue. *See* FED. R. EVID. 702(a); *Daubert*, 509 U.S. at 591. The trier of fact needs to determine the question of substantial similarity based on a comparison of the protectable elements of the copyright work. *See Gen. Universal Sys.*, 379 F.3d at 142 (explaining that actionable copying is demonstrated "by showing that the allegedly infringing work is substantially similar to protectable elements *of the infringed work*.") (emphasis added).

Additionally, Dr. Storer's testimony in this regard is not the product of reliable principles and methods being reliably applied to the facts of the case. *See* FED. R. EVID. 702(c)-(d); *Daubert*, 509 U.S. at 589-95. The failure to filter unprotectable elements at each layer is an analytical flaw that compromises Dr. Storer's opinions and testimony. Accordingly, Dr. Storer's Exhibits 4-9 and his testimony and opinions related to those exhibits should be excluded for failure to comply with FRE 702(a), (c)-(d), and *Daubert*. *See, e.g.*, *See Engenium*, 924 F. Supp. 2d at 770–72; *FedEx Ground Package*, 695 F. Supp. 2d at 223-24.

### D. Dr. Storer's testimony related to the "abstraction-filtration-comparison" analysis and Exhibits 4-9 should be excluded because he fails to present side-by-side comparisons of the protectable elements of the asserted works.

Fifth Circuit law "prohibits finding copyright infringement without a side-by-side comparison of the two works." *See Bridgmon*, 325 F.3d at 577. The failure to perform "a side-by-side comparison of the two programs" is "a failure fatal to the substantial similarity prong of the test." *See Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598, n.62 (5th Cir. 2015). Dr. Storer committed this fatal failure. Dr. Storer confirmed that in his report he did not present

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

side-by-side comparisons of SAS and WPS manuals, source code, or user interfaces.[28]

Additionally, Dr. Storer's Exhibits 4, 5, and 6 do not feature any side-by-side comparison of the

information they purport to convey. *See FedEx Ground Package*, 695 F. Supp. 2d 216, 223-24

(excluding expert in part because he failed to compare source code or display screens at issue).

Exhibit 6 purports to be a listing of "keywords" in WPS code that were supposedly

copied from SAS.[29] But Exhibit 6 does not contain a comparison to a similar list of "keywords"

in SAS code. Similarly, Dr. Storer's Exhibit 4 purports to compare a SAS manual on the one

hand with "keywords" that was derived from the document in Exhibit 6.[30] But again, there is not

a comparison to a list of "keywords" in SAS code. Additionally, neither Exhibit 4 or 6 include in

them actual WPS source code—they include lists compiled by an undisclosed script written by

Dr. Seed.[31] Additionally, Dr. Storer confirmed that he did not prepare something like Exhibits 4

and 6, which purport to identify supported "keywords" in WPS, for each copyrighted work (and

as noted, he did not identify what works those works were made for in the first place).[32]

Similarly, Dr. Storer confirmed that his Exhibit 4 was exemplary and that he did not prepare

something like it for each PROC.[33] Exhibit 5 purports to be an illustration or diagram of the WPS

---

[28] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 427:19-428:1 (manuals); *id.*, Ex. A (Storer 4/19/2020 Dep. Tr.) at 117:24-119:19 (source code and user interfaces).

[29] *See* Hamad Decl., Ex. D (Storer Copyright Report) at Ex. 6.

[30] *See* Hamad Decl., Ex. D (Storer Copyright Report) at Ex. 4.

[31] *See* Hamad Decl., Ex. A (Storer 4/19/2020 Dep. Tr.) at 129:24-128:13, 132:10-133:2 (Dr. Seed created lists programmatically, and Dr. Storer reviewed later); *id.*, Ex. B (Storer 4/20/2020 Dep. Tr.) at 197:25-198:23 (output created by Dr. Seed), 211:20-212:9 (script not disclosed).

[32] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 419:24-420:8.

[33] *See* Hamad Decl., Ex. C (Storer 4/21/2020 Dep. Tr.) at 420:19-421:2.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

code base directory and file structure.[34] But the exhibit does not include a similar illustration of the SAS software code base directory and file structure to do a side-by-side comparison.

Exhibits 7, 8, and 9 include output from SAS language user programs executed by users using SAS software and WPS software.[35] They purport to be side-by-side comparisons of the outputs. But on their face, they include unprotectable elements, including numerical data and facts, mathematical or statistical calculations, data points, variables, and constants, and materials dictated by user programs. Even putting aside the copyrightability issues, these exhibits are not prepared for each asserted work, each accused work, or each PROC in any one asserted work.

As with the filtration flaw noted above, Dr. Storer's testimony is unhelpful in that it does not help a trier of fact determine an issue for trial—namely, substantial similarity under Fifth Circuit law. Similarly, his testimony is also unreliable for failing to adhere to the proper analytical framework. Accordingly, Dr. Storer's Exhibits 4-9 and his testimony related to those exhibits should be excluded for failure to comply with FRE 702(a), (c)-(d), and *Daubert*.

### E. Dr. Storer's testimony related to Exhibits 4-9, and the exhibits themselves, should be excluded under FRE 403 because their probative weight is outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury.

"Finally, Rule 403 permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....' …'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against

---

[34] *See* Hamad Decl., Ex. D (Storer Copyright Report) at Ex. 5.

[35] The copyright on SAS software does not extend to this output. The SAS software does not do the lion's share of the work to generate the outputs, and the role of the user's program is greater than marginal. *See, e.g., Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 970–71 (N.D. Cal. 2018); *Design Data Corp. v. Unigate Enter., Inc.*, 847 F.3d 1169, 1173 (9th Cir. 2017).

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" *Daubert*, 509 U.S. at 595 (citation omitted); *see also* FED. R. EVID. 403.

The nature of Exhibits 4-9 lends itself to simple, visual presentations that obscure the actual relevant material and also leaves misleading and prejudicial impressions with the jury. For example, Exhibit 4 is misleading at least in that the "keywords" do not appear in the same sequence in the WPS code as they do in the SAS manual. Similarly, Exhibit 6 gives a misleading impression to the jury that there is copying of "keywords" based on Dr. Storer's say-so and without any substantive comparison to anything in a SAS copyrighted work. And moreover, the "keywords" list in both is not even WPS code but is passed off as something actually existing in WPS software. Exhibit 5 gives a misleading impression to the jury that there is a copied file directory structure without any substantive comparison to anything in a SAS copyrighted work. Exhibits 7-9 are misleading because they encompass and compare unprotectable elements, including things such as data or values provided by a user program, variables and titles provided by a user program, and results of mathematical or statistical calculations performed on data or values provided by the user. Moreover, Exhibits 7-9 are additionally prejudicial because they are highly visual and purport to be the material at issue or generated by the software itself. This ignores that this type of output from SAS software is dictated by a user's program.[36] These exhibits and related testimony should be excluded under Rule 403 as the risks of unfair prejudice, confusion of issues, or misleading the jury substantially outweigh any probative value.

**F. Dr. Storer's testimony should be excluded under FRCP 26 and 37 because SASI repeatedly failed to disclose basic information about is copyright infringement theories and contentions—it has yet to do so.**

---

[36] *See* Hamad Decl., Ex. E (Goodnight Dep. Tr.) at 60:8-10, 60:23-61:4.

~~FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

WPL to this day does not know the full bases for SASI's copyright infringement theories and contentions. Which copyright works are asserted? Which asserted copyright work is infringed by which accused work? What of each asserted copyright work is protectable? What is not? Starting with interrogatories served in June 2019, and throughout discovery WPL diligently sought this type of basic, foundational information to answer these questions. SASI did not provide the requested information. Instead, it resorted to things like listing over 2,000 registrations without their works. Or it dabbled in tautology: "SAS does not claim copyright protection for subject matter that is not entitled to copyright protection."

This Court has recognized that "a major purpose of discovery" is "narrowing and sharpening the issues," which is "of the utmost importance in promoting the efficiency of our justice system." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 WL 4620634, at *3 (E.D. Tex. Apr. 27, 2018) (internal quotations omitted). SASI's refusal to engage in basic copyright discovery frustrated these aims. SASI forced Defendants to file two motions to compel to try to get fundamental answers about SASI's copyright case. *See* Dkt. Nos. 129 and 219. SASI waited until the final day of discovery to dump hundreds of pages of copyright material on Defendants. Even then, it still did not provide the information. Also, this untimely disclosure prevented WPL from being able to test any of the late-disclosed information during discovery. And now, SASI served a copyright report that does not even conduct an analysis with respect to any particular copyright work. Striking Dr. Storer's copyright testimony under Rules 26 and 37 is appropriate in light of the repeated flouting of discovery obligations.

## IV.    CONCLUSION

For the reasons above, Dr. Storer's copyright report and testimony should be excluded.

~~FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

Dated: April 28, 2020.

*/s/ Bradley W. Caldwell*

**CALDWELL CASSADY CURRY, P.C.**

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
Hamad M. Hamad
Texas State Bar No. 24061268
Email: hhamad@caldwellcc.com
Caldwell Cassady Curry P.C.
2121 North Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

ATTORNEYS FOR DEFENDANTS
WORLD PROGRAMMING LIMITED,
LUMINEX SOFTWARE, INC., YUM!
BRANDS, INC., AND PIZZA HUT, INC.

**WARD, SMITH & HILL, PLLC**

T. John "Johnny" Ward Jr.
Texas Bar No. 00794818
jw@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
P.O. Box 1231
Longview, TX 75606
903-757-6400
903-757-2323 (Facsimile)

ATTORNEYS FOR DEFENDANT WORLD
PROGRAMMING LIMITED

FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Defendants conferred with counsel for

Plaintiff on April 27, 2020, and that the relief requested herein is opposed.

*/s/ Hamad M. Hamad*
Hamad M. Hamad

## CERTIFICATE OF SERVICE

I certify that on April 28, 2020, this document was served on counsel of record by email.

*/s/ Hamad M. Hamad*
Hamad M. Hamad

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that this document is authorized to be filed under seal pursuant to this case's

Protective Order.

*/s/ Hamad M. Hamad*
Hamad M. Hamad