FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SAS INSTITUTE INC.,<br><br>  Plaintiff,<br><br>v.<br><br>WORLD PROGRAMMING LIMITED; LUMINEX SOFTWARE, INC.; YUM! BRANDS, INC.; PIZZA HUT, INC.; and SHAW INDUSTRIES GROUP, INC.,<br><br>  Defendants. | Civil Action No. 2:18-CV-00295-JRG<br><br>**Jury Trial Demanded**<br><br>REDACTED PUBLIC VERSION |

## OPPOSITION TO PATENT DEFENDANTS' MOTION TO STRIKE SAS' FOURTH INFRINGEMENT CONTENTIONS

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL BACKGROUND | 1 |
| III. | RELEVANT FACTS | 2 |
| | A. WPL Has Expanded WPS's Graphing Procedures Throughout the Litigation—And After the Close of Discovery | 2 |
| | B. SAS's P.R. 3-1 Infringement Contentions Accused All of WPS's Graphing Capabilities--"G" and "SG" Procedures | 3 |
| | C. SAS's Paragraph 3(a)(i) Infringement Contentions Accuse All of WPS's Graphing Capabilities | 4 |
| | D. SAS Served Amended Charts on August 29, 2019 at WPL's Request | 5 |
| | E. WPS Did Not Support SGRENDER Until Late in the Discovery Period | 6 |
| |    1. WPL's 30(b)(6) Witness Testified SGRENDER Was Not Supported in WPS | 6 |
| |    2. [REDACTED] | |
| |    4. When SAS Inspected WPS in January 2020, SGRENDER Resulted in Error; SAS Found SGRENDER Operable for the First Time On or Around February 11, 2020 | 8 |
| |    5. SAS Supplemented Its Infringement Charts To Include SGRENDER as Soon as Practicable | 8 |
| IV. | ARGUMENT | 9 |
| | A. Because SAS Accused All of WPS's Graphing Capabilities of Infringement, WPL's Motion Should Be Denied | 9 |
| | B. WPL Mischaracterizes Facts to Argue SAS Limited its Infringement Contentions to "G" PROCS | 11 |
| |    1. Cover Pleading Does Not Limit the Accused Functionality | 11 |
| |    2. SAS's Response to WPL's Motion to Compel Was Not an Inventory of WPL's Accused Graphing Capabilities | 12 |
| |    3. Narrowing SAS's Infringement Case to Focus on the SG Graphing Procedures Instead of the G Procedures Is Inconsequential | 12 |
| |    4. SAS's Identification of SAS's Products Embodying the Patent Is Irrelevant | 13 |
| | C. PROC SGRENDER Falls Within the Scope of SAS's P.R. 3-1 Disclosures | 14 |
| | D. Alternatively, Supplementation to Include PROC SGRENDER Is Proper Under Paragraph 3(a)(i) | 14 |
| | E. Further Alternatively, Good Cause Exists to Allow WPS's PROC SGRENDER Functionality In This Case | 14 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Cases

*Intellectual Ventures II, LLC v. Fedex Corp*. 2:16-cv-00980-JRG, at 8 n.2 (Oct. 25, 2017) ....... 15

*Packet Intelligence LLC v. NetScout Sys.*, No. 2:16-cv-230,
　2017 U.S. Dist. LEXIS 92090, at *4 (E.D. Tex. Apr. 27, 2017) .............................................. 14

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
　No. 2:13CV213-JRG-RSP, 2015 WL 1848524 n.4 (E.D. Tex. Jan. 23, 2015) .......................... 9

*Tivo Inc. v. Samsung Elecs*. Co.,
　No. 2:15-CV-1503-JRG, 2016 WL 5172008 (E.D. Tex. 2016) ................................................. 9

I.     **INTRODUCTION**

WPL markets WPS, the accused product, as a "clone" for the SAS System, capable of producing the same outputs as SAS. WPL made no independent decisions in naming procedures to evoke in WPS (*e.g.*, SAS System's "GPLOT" and "SGPLOT" procedures), and as discovery has proven, no independent thought as to how those procedures would perform.

The present motion is WPL's newest attempt to confine SAS's infringement case for the '519 patent (preceded by a denied motion to compel and a currently pending opposition to SAS's motion to amend infringement contentions), and it is not the last (WPL filed four post-discovery motions concerning the '519 patent). The present dispute revolves around two categories of WPS's graphing procedures, referred to as "G" procedures (or "PROCs") and "SG" PROCs. G refers to "graphing" and S refers to "statistical." In a supplemental infringement chart, SAS provided detailed infringement contentions concerning a particular "SG" PROC, called SGRENDER, which WPL included in Version 4.2 of WPS released on March 31, 2020.

WPL's motion should be denied for three independent reasons: First, via SAS's prior operative infringement contentions, SAS placed WPL on notice that "SG" PROCs were accused of infringement, such that the SGRENDER infringement analysis, submitted with Dr. Storer's expert report, did not need to be re-served as infringement contentions. Second, assuming supplementation was necessary, under a proper reading of the rules, SAS's supplemental SGRENDER claim chart was timely and procedurally proper. Third, if the Court determines that good cause is required to bring SGRENDER into this case, that threshold has been met.

II.    **PROCEDURAL BACKGROUND**

Before the further supplementation that is at issue in the present motion, SAS had already twice supplemented its P.R. 3-1 infringement contentions, on May 16, 2019 ("Supplemental

Contentions"), pursuant to Paragraph 3(a)(i) of the Discovery Order, and August 29, 2019 ("third contentions"), in response to WPL's request. On September 20, 2019, WPL moved to compel SAS to provide further details in the third contentions. (D.N. 165.) In that motion, WPL specifically challenged the sufficiency of SAS's disclosure for the '519 patent. (D.N. 165 at pp. 3-5.) On January 2, 2020, to resolve any uncertainty in the parties' positions concerning the operative status of the third contentions, which had been prepared and served in response to WPL's request for additional detail in the contentions, SAS filed a motion for leave to amend infringement contentions. (D.N. 196.) On January 15, 2020, the Court denied WPL's motion to compel (D.N. 165), holding, "The Court finds that Plaintiff had adequately specified the components of the accused product that it contends meet these limitations." (D.N. 202.)

## III. RELEVANT FACTS

Below are the relevant facts the Court should consider in denying WPL's Motion to Strike.

### A. WPL Has Expanded WPS's Graphing Procedures Throughout the Litigation—And After the Close of Discovery

On July 18, 2018, SAS filed this lawsuit against WPL asserting infringement of the '519 patent. At that time, users of WPS could use certain SAS procedures for producing graphs such as SGSCATTER, GPLOT, GCHART. On March 21, 2019, four days before SAS served its initial infringement contentions under P.R. 3-1, WPL released Version 4.1 of WPS. Version 4.1.1 supported additional "SG" procedures, SGPANEL and SGPLOT.

On March 31, 2020, WPL publicly began to support the SAS procedure SGRENDER. SGRENDER allows users to create custom graphs by defining their own graph template, a statgraph. To create a custom graph, the user must define the statgraph for the system. To define the statgraph, the user must use SAS statements WPS recognizes, give the template a name, and indicate when the template "begins" and "ends." Because WPS does not allow users to save their

graph templates and run them later, the template must be defined prior to, and along with, running PROC SGRENDER. SGRENDER associates the template with the data to be graphed. SGRENDER is not mentioned in any of WPS Reference guides.

### B. SAS's P.R. 3-1 Infringement Contentions Accused <u>All</u> of WPS's Graphing Capabilities--"G" and "SG" Procedures

On March 25, 2019, SAS initially served its P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions for the '519 patent ("Initial Contentions"), based on publicly available information, accusing all of WPS's graphing capabilities of infringement. The Initial Contentions were based on Version 4.0 which, at the time, supported "G" PROCs and one "SG" PROC—SGSCATTER. The Initial Contentions provided that each version of WPS though "the present containing the infringing functionality … should be considered to be included in these contentions." *See* Richey Declaration (filed concurrently herewith), Exhibit A at 1.

Specifically, the Initial Contentions stated, "WPS runs various programs containing a "procedure" (PROC). **One set of PROCs includes graphing procedures**, which create pie, horizontal and vertical displays (**e.g., graphical displays**). …This **includes various PROCs**, such as PROC GANNO, **which creates graphical output from instructions**." *Id*. All of WPL's graphing capabilities fall into this category, including the "SG" graphing procedures. The Contentions began with "PROC GANNO" specifically *because it appears first on the list of graphing procedures* in the WPS Reference Guide, cited in the contentions. *See* Exhibit B. SAS did not list every single graphing procedure in claim 1[pre] of the Contentions, but stated "[f]urther evidence can be found at www.worldprogramming.com/us/information/sas-language/modules/language/graphing." Ex. A at 2. SAS included a screenshot from this webpage, listing the types of graphs (histograms, box plots, bar charts, <u>scatter plots</u>, heat-maps, series plots, etc.) WPS is capable of producing. At the link, the graphical procedures used to produce these

3

types of graphics are listed, including the "SG" plots for SGPANEL, SGPLOT, and SGSCATTER:

> The following graphics procedures are supported:
> - GANNO
> - GBARLINE
> - GCHART
> - GDEVICE
> - DFONT
> - GINSIDE
> - GMAP
> - GOPTIONS
> - GPLOT
> - GPROJECT
> - GREDUCE
> - GREMOVE
> - GREPLAY
> - GSLIDE
> - MAPIMPORT
> - SGPANEL
> - SGPLOT
> - SGSCATTER

*See* Exhibit C.[1] In fact, SGSCATTER is explicitly referenced throughout the Contentions. At claim 1[c], the Contentions list numerous graphing procedures, and includes a "*see also id*." for page 2082 which is the WPS Reference Manual's guide to "SGSCATTER." Ex. A at 1, *see also e.g.*, 1[d], 1[e], 1[f], 5[a], 21, 22 ("GSCATTER" [sic]), 23, 24, 25[a], 25[b], 26.

### C. SAS's Paragraph 3(a)(i) Infringement Contentions Accuse <u>All</u> of WPS's Graphing Capabilities

On May 16, 2019, pursuant to Paragraph 3(a)(1) of the Court's April 2, 2019 Discovery Order (Dkt. No. 81), SAS timely served the Supplemental Contentions incorporating source code citations. The Supplemental Contentions were based on Version 4.0, source code of version 4.1.1.0 which, at the time, supported "G" PROCs and "SG" plots including SGSCATTER, SGPLOT, and SGPANEL. The Supplemental Contentions provided that each version of WPS

---

[1] This list included SGPANEL, SGPLOT, and SGSCATTER on WPL's website. *See* https://web.archive.org/web/20190410145015/https://www.worldprogramming.com/information/sas-language/modules/language/graphing/ (snapshot from April 10, 2019).

though "the present containing the infringing functionality … should be considered to be included in these contentions." *See* Exhibit D.

The Supplemental Contentions relied on the same disclosures as the Initial Disclosures; thus, accusing all of WPS's graphing capabilities of infringement. Ex. D ("**One set of PROCs includes graphing procedures**, which create pie, horizontal and vertical displays (**e.g., graphical displays**). …This **includes various PROCs**, such as PROC GANNO, **which creates graphical output from instructions**."). Ex. D at 1. Again, SAS referred to WPL's website that describes WPS's graphing capabilities, stating "[f]urther evidence can be found at www.worldprogramming.com/us/information/sas-language/modules/language/graphing." At that link, WPL lists the types of graphs (histograms, box plots, bar charts, scatter plots, heat-maps, series plots, regression plots etc.) that WPS can output, and the various procedures used to output those graphs, including reference to the "SG" plots for SGPANEL, SGPLOT, and SGSCATTER. *See* Ex. C. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### D.  SAS Served Amended Charts on August 29, 2019 at WPL's Request

As detailed in SAS's pending Motion for Leave to Amend Infringement Contentions, which is pending before the Court (D.N. 196), WPL requested that SAS amend its Supplemental Contentions "without having to seek leave from the Court." *Id*. at 2. As requested, SAS amended its charts on August 29, 2019, and later moved for permission to amend to resolve any doubt about

the authorization for these amendments.  After receiving the amended contentions, Defendants wrote three meet and confer letters to SAS concerning the various asserted patents, but never complained that SAS advanced new theories in relation to the '519 patent.  (D.N. 206 at 1-2.)  Instead, Defendants argued that SAS failed to comply with P.R. 3-1, and filed a motion to compel on that basis.  The Court denied Defendants' motion.  (D.N. 202.)  Only after SAS moved for leave to amend based on these third contentions, did Defendants argue in its response that SAS made new arguments in the '519 chart.  However, SAS had already included contentions about SG PROCs in its May 2019 Supplemental Contentions.

    **E.**    **WPS Did Not Support SGRENDER Until Late in the Discovery Period**

        **1.**    **WPL's 30(b)(6) Witness Testified SGRENDER Was Not Supported in WPS**

On February 6, 2020, SAS took the 30(b)(6) Deposition of WPL regarding "WPL's development of Version 4.2 of WPS…" which, at the time, had not been released.  Exhibit E at 9:21-10:1. ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

█   █████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

████████████████████████████████████



Thus, the first time that SGRENDER was made available in a functional, operative state, was in February 2020. SAS's expert, Dr. Storer, included an infringement analysis of SGRENDER in his March 2, 2020 opening patent infringement expert report.

### 5. SAS Supplemented Its Infringement Charts To Include SGRENDER as Soon as Practicable

On March 5, 2020, in an abundance of caution, SAS served contentions asserting the graphical procedure included another means of infringement, essentially adopting Dr. Storer's Exhibit 10A as a further supplement to its infringement contentions for the '519 patent. SAS explained its reasoning for the timing:

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ It was not until a functioning executable version of software that supported PROC SGRENDER was made available, on or after February 11, 2020, that SGRENDER was clearly part of WPS. Thus, as SAS noted in the letter accompanying this supplementation, the charts fell under Paragraph 3(a)(i) of the Court's Discovery Order (D.N. 81.) SAS's expert had also relied on SGRENDER as an infringing functionality in his expert report which was served on March 2, 2020, three days prior and included identical claim charts.

## IV. ARGUMENT

WPL's motion should be denied for three reasons. First, the SG PROCs were included in SAS's operative P.R. 3-1 disclosures, and WPL's mischaracterization of the facts do not establish otherwise. Second, the March 5, 2020 supplementation was proper and timely under P.R. 3-1. Third, in the alternative, good cause exists to permit this supplementation.

### A. Because SAS Accused All of WPS's Graphing Capabilities of Infringement, WPL's Motion Should Be Denied

WPL's motion rests on the false premise that SAS never accused WPS's "SG" graphing capabilities. This is belied by the P.R 3-1 and Paragraph 3(a)(i) Disclosures. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13CV213-JRG-RSP, 2015 WL 1848524, at *3 n.4 (E.D. Tex. Jan. 23, 2015) (noting that the movant bears the burden on a motion to strike). "Local Patent Rule 3-1 requires a party claiming infringement to identify each accused product in its infringement contentions." *Tivo Inc. v. Samsung Elecs*. Co., No. 2:15-CV-1503-JRG, 2016 WL 5172008, at *1 (E.D. Tex. 2016). Here, the components of WPS at issue are its graphing capabilities. Without limitation, in its Contentions and Supplemental Contentions, SAS accused

9

all of WPS's graphing capabilities. The Court has previously ruled that these contentions were sufficient to place WPL on notice. (D.N. 202.)

The Contentions stated, "WPS runs various programs containing a "procedure" (PROC). **One set of PROCs includes graphing procedures**, which create pie, horizontal and vertical displays (**e.g., graphical displays**). …This **includes various PROCs**, such as PROC GANNO, **which creates graphical output from instructions**." Ex. A at 1. All of WPL's graphing capabilities fall into this category, including the "SG" graphing procedures. SAS's Contentions identified a specific link on WPL's website which identified its graphing capabilities, and listed types of graphs. *Id*. at 2-3. At the link, the graphical procedures that are used to produce graphics are listed, including the "SG" plots for SGPANEL, SGPLOT, and SGSCATTER. *See* Exhibit C. In fact, SGSCATTER graphing procedure is cited to numerous times throughout the Contentions. *See also,* Ex. A at 1[d], 1[e], 1[f], 5[a], 21, 22 (citing p. 2082 of WPS Reference Manual 4.0 where SGSCATTER is referenced (*see* Ex. B at 2082)).

Moreover, as to specific claim elements that control the graphical appearance, such as graph style data items and graph style metadata (*e.g.*, cl. 1[d]), the accused instrumentalities are practiced when WPS runs the "SG" procedures. For WPL to assume such procedures would somehow be excluded is feigned ignorance. To be sure, Defendants' motion to compel under P.R. 3-1 for the '519 patent concerned these limitations was denied. (D.N. 202.) The Court found SAS adequately disclosed the accused instrumentalities. Ultimately, these claim litigations are key to how the graphing capabilities display the statistical roles on the graph.

WPL omits key facts regarding SAS's Initial Contentions—that WPL released Version 4.1.1. *four* days prior to SAS serving its Initial Contentions. As part of Version 4.1.1., WPL added two "SG" procedures—SGPANEL and SGPLOT. WPL's brief suggests that SAS had "eight

10

months" to include reference to these newly added "SG" procedures. Not so. When SAS served its contentions four days later, it referenced all graphing capabilities, including the SGSCATTER, which had been released prior to the filing of the litigation. There is no bright line of "G" procedures vs no "SG" procedures that can be drawn from the Initial Contentions, as WPL has attempted to do. Instead, the Initial Contentions accuse all of WPL's graphing procedures that are used to create graphical displays, including the "SG" procedures. Ex. A at 15, 17, 18, 64-67. Moreover, SAS's Initial Contentions and Supplemental Contentions cite to WPL's webpage detailing its graphing capabilities, which lists all of its supported graphing procedures, and the types of graphs WPL can produce, and the "SG" procedures used to produce them. Ex. B. While WPL argues SAS's paragraph 3(a)(i) charts remained unchanged, based on its mischaracterization of SAS's initial infringement contentions, they remained unchanged because they accused all of WPS's graphing capabilities of infringement. *See, e.g.*, Ex. A at 1 (accusing all graphing procedures), Exs. C & B (webpage cited in SAS's infringement contentions, listing "SGPLOT," "SGPANEL," and "SGSCATTER").

Because SAS's Initial and Supplemental Contentions accused all of WPS's graphing capabilities, the entire premise of WPL's motion fails and should therefore be denied.

B. **WPL Mischaracterizes Facts to Argue SAS Limited its Infringement Contentions to "G" PROCS**

WPL's "Background" Facts are revisionist history.

1. **Cover Pleading Does Not Limit the Accused Functionality**

WPL points to SAS's Cover Pleading to its Initial Contentions quoting WPL's admissions that it copied outputs from SAS's "G" procedures many years ago, as the key evidence limiting SAS's infringement claims. What WPL fails to identify for the Court is that on page 10 of the same document, SAS identified the accused instrumentalities "[a]ll versions of WPS that

11

implement the functions cited in Exhibit A infringe all asserted claims" and "all reasonably similar variants or improvements." (D.N. 259, Ex. B at 10.) As explained above, Exhibit A included all of WPS's graphing capabilities, including the "SG" procedures.

### 2. SAS's Response to WPL's Motion to Compel Was Not an Inventory of WPL's Accused Graphing Capabilities

Specifically, SAS's response states ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ WPS includes citations to the Reference Manual that includes a page citation to SGSCATTER. That motion was not about identifying every single graphing procedure of WPL that uses these style elements, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### 3. Narrowing SAS's Infringement Case to Focus on the SG Graphing Procedures Instead of the G Procedures Is Inconsequential

Prior to SAS filing this litigation, WPL promoted its system as a clone of SAS, capable of producing the same graphical layouts. When the Complaint was filed, WPL supported "G" procedures such as GPLOT and GMAP and the "SG" procedure "SGSCATTER," leading to the possibility that WPL had built in the functionality of other SG procedures into the G procedures. Like one WPL customer asked to WPL, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ultimately, as discovery in this case has revealed, WPL did not. WPL intended to and did copy SAS down to a "t" and released additional "SG" functionality after SAS filed this litigation ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is certainly further evidence of SAS's copyright claim, but in no way changes the fact that

SAS asserted infringement against all of WPL's graphing functionality and its reasonable inquiry into how WPS functions in relation to the use of those procedures. *See*, *supra*, Sect. II.A.

### 4. SAS's Identification of SAS's Products Embodying the Patent Is Irrelevant

SAS's inventor that WPL identified has never used WPS. The fact that he testified in February 2020 as to how **SAS**'s PROC GCHART, GMAP, or GANNO function is not evidence of how **WPS** necessarily responds to those SAS inputs—unless one assumes that WPL programed WPS to function the same in response to those procedures. WPL claims that, because SAS knew about its own procedures, it should have known (without having to check) that WPL's cloned procedures were implemented the same way. That irony is not lost on SAS, given WPL's repeated protests that its implementations of SAS's procedures are somehow meaningfully different than SAS's. In any event, SAS is decades older than WPL, and implementation decisions by WPL occur years or sometimes decades after SAS's initial decisions on the same procedures. ▬

▬▬▬▬▬▬

What WPL leaves out is that during this time, in late January and February, 2020, SAS's technical expert and other consultants had their first opportunity to use WPS software to run programs and observe how WPS responded. Based on this information, SAS chose to narrow its

---

[2] Throughout WPL's motion, WPL attempts to draw similar inferences from SAS's disclosures regarding which versions of SAS practice the '519 patent to argue what SAS accused of infringement in WPL's product. For the same reasons, such inferences have no bearing on WPS's accused instrumentalities.

infringement allegations which is reflected in SAS's expert report served on March 2, 2020, asserting only the "SG" graphing capabilities as infringing.

### C. PROC SGRENDER Falls Within the Scope of SAS's P.R. 3-1 Disclosures

SGRENDER chart does not advance new theories, but is a recently-added graphing procedure that uses the same style sheets for controlling the graphical display as "SG" procedures already in this case.

### D. Alternatively, Supplementation to Include PROC SGRENDER Is Proper Under Paragraph 3(a)(i)

Pursuant to Paragraph 3(a)(i) of the Court's Discovery Order (D.N. 81), a party "need not comply with P.R. 3-1" as to the accused instrumentalities for which source code was late-produced (here, either literally in the case of the operable executable, or constructively, in view of the pre-existing notation that any such source code was non-functional) "until 30 days after" such source code production.

### E. Further Alternatively, Good Cause Exists to Allow WPS's PROC SGRENDER Functionality in This Case

If the Court finds that SGRENDER does not fall under P.R. 3-1 Disclosures that provided notice of SAS's infringement theories, and Paragraph 3(a)(1) does not permit SAS to assert this late-added feature, good cause exists to permit supplementation of the infringement contentions to include SGRENDER. *See Packet Intelligence LLC v. NetScout Sys.*, No. 2:16-cv-230, 2017 U.S. Dist. LEXIS 92090, at *4 (E.D. Tex. Apr. 27, 2017) (four-factored good cause standard).

First, as soon as SAS acquired sufficient information to accuse SGRENDER, SAS diligently supplemented its charts within less than 30 days. *See*, *supra*, Sect. III.E.1-5. Second,

14

these charts are important. WPS's graphing capabilities added throughout this litigation would remain un-litigated. After 10 years of litigation, SAS wants nothing but to litigate these claims against WPL, which are teed up and ready for trial. Finally, WPL's motion fails to articulate any prejudice because there is none. Dr. Jones fully responded to Dr. Storer's expert report which included substantively identical exhibits to the charts in question here and was served three-days prior. Exhibit I at 70–71. This Court already found that SAS satisfactorily disclosed the accused instrumentality relating to the "graph style metadata." (D.N. 202.) Thus, WPL has been on notice over the disputed claim elements and the fact that SAS supplemented its charts with SGRENDER has not caused any prejudice to WPL. WPL seem to argue prejudice is presumed if infringement theories are new. This is an impermissible attempt to sidestep the good cause standard. *See Intellectual Ventures II, LLC v. Fedex Corp*. 2:16-cv-00980-JRG, at 8 n.2 (Oct. 25, 2017) (D.N. 142) (J. Gilstrap) ("To the extent Defendants urge the Court to deny Plaintiff's Motion simply because it advances new theories, … these arguments are unpersuasive. Defendants do not identify any authority for the proposition that an amendment to the plaintiff's infringement contentions cannot include new theories and the Court is aware of no case holding such.")

## V. CONCLUSION

Rather than litigate the '519 patent on the merits at trial, under its shotgun approach to keep this patent out of the case, WPL has proffered a novel idea—that SAS never asserted infringement against WPS's "SG" graphing procedures. WPL mistakenly believes that it can make a carbon copy of the SAS System's graphing capabilities, copying its default style sheets that are at the center of the parties' dispute, and kick the can down the road, even though the case is teed up and ready for trial. All of WPS's graphing capabilities have been at issue in this litigation, including its "SG" graphing procedures, and the parties are ready for trial. WPL's motion should be denied.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

| | |
|---|---|
| Date: May 6, 2020 | Respectfully submitted, |

   /s/  *Christian E. Mammen*
Pressly M. Millen (admitted pro hac vice)
Raymond M. Bennett (admitted pro hac vice)
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-2135
Press.Millen@wbd-us.com
Telephone: 919.755.2158
Ray.Bennett@wbd-us.com

Christian E. Mammen (admitted pro hac vice)
Carrie J. Richey
WOMBLE BOND DICKINSON (US) LLP
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (408) 341-3067
Chris.Mammen@wbd-us.com
Telephone: (408) 341-3060
Carrie.Richey@wbd-us.com

Samuel B. Hartzell (admitted pro hac vice)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
919-755-2112
Fax: 919-755-6772
Sam.Hartzell@wbd-us.com

Michael C. Smith
Texas Bar No. 18650410
Siebman, Forrest, Burg & Smith, LLP
113 E. Austin Street
Marshall, Texas 75670
Tel: (903) 938-8900
michaelsmith@siebman.com

***Attorneys for SAS Institute Inc.***

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record on this 6th   day of May 2020, via electronic mail.

*/s/ Christian E Mammen*

17