## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| SAS INSTITUTE INC., | |
| Plaintiff, | |
| vs. | Case 2:18-cv-00295-JRG |
| WORLD PROGRAMMING LIMITED *et al.*, | |
| Defendants. | |

## JOINT FINAL PRE-TRIAL ORDER

This cause came before the court at a pre-trial management conference held on August 25, 2020, pursuant to the Court's Seventh Amended Docket Control Order, Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

## A.    COUNSEL FOR THE PARTIES

### 1.    Attorneys for Plaintiff:

Pressly M. Millen
Telephone: 919-755-2135
Press.Millen@wbd-us.com

Raymond M. Bennett
Telephone: 919.755.2158
Ray.Bennett@wbd-us.com

Samuel B. Hartzell
Telephone: 919-755-2112
Sam.Hartzell@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601

Christian E. Mammen
Telephone: (408) 341-3067
Chris.Mammen@wbd-us.com

Carrie Richey
Telephone: (408) 341-3060
Carrie.Richey@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304

Michael C. Smith
Texas Bar No. 18650410
Siebman, Forrest, Burg & Smith, LLP
113 E. Austin Street
Marshall, Texas 75670
Tel: (903) 938-8900
michaelsmith@siebman.com

2.      **Attorneys for Defendant(s):**

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
CALDWELL CASSADY CURRY
P.C.
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
T. John "Johnny" Ward Jr.
Texas Bar No. 00794818
jw@wsfirm.com
Claire Henry
Texas Bar No. 24053063
claire@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 1231
Longview, TX 75606
903-757-6400
903-757-2323 (Facsimile)

## B.      STATEMENT OF JURISDICTION

Jurisdiction in this case is based on federal question jurisdiction under Title 28 U.S.C. §§ 1331, 1338(a) in that it is a case under the copyright and patent laws.

Jurisdiction is not disputed.

This Court has subject matter jurisdiction over the counterclaims asserted by WPL pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202.

Jurisdiction and venue are not disputed.

## C.      NATURE OF ACTION

### 1.      SAS's Statement Regarding the Nature of the Action

This is a copyright and patent infringement action, relating to computer software for database management and data analysis.  Plaintiff SAS contends that WPL's product, WPS

2

(together with another WPL product, called The Hub), infringes SAS's copyrights and two of its

patents, U.S. Patent Nos. 7,170,519 ("the '519 patent") and 6,920,458 ("the '458 patent").

### 2.      World Programming's Statement Regarding Description of the Case

SAS Institute brought this patent and copyright infringement lawsuit in July 2018.  SAS

asserted U.S. Patent Nos. 7,170,519 (the '519 Patent); 7,477,686 (the '686 Patent); 8,498,996 (the

'996 Patent); and 6,920,458 (the '458 Patent) (patents-in-suit).  SAS has dropped two of those

patents, the '686 and '996 Patents.  SAS now contends that WPS version 4.0 and later infringes

the '519 Patent.  SAS contends that WPS and WPS Hub infringe the '458 Patent.  SAS contends

that it is owed money damages for WPL's alleged acts of infringement for the '519 Patent, and

that WPL is liable as a willful infringer of the '519 and '458 Patents.  WPL contends that it does

not infringe any asserted claims of the patents-in-suit, neither literally nor under the doctrine of

equivalents, and that the asserted claims are invalid in light of the prior art and/or under 35 U.S.C.

§ 101.  WPL denies SAS's claim for damages, WPL denies that any alleged patent infringement

was willful, and WPL further denies that enhanced damages would be appropriate.  WPL also

denies that SAS is entitled to injunctive relief, and/or any other relief of any kind.  WPL seeks

declaratory relief and recovery of its costs, expenses, and attorneys' fees under 35 U.S.C. §§ 285

and 288, as well as any other relief the Court deems appropriate.

SAS asserted over 2,000 copyrights in this case.  It has "narrowed" the case to over 500

copyrights, yet SAS has not identified which copyrights it will assert at trial.  Consistent with the

Court's model docket control order for patent cases, which requires a plaintiff to specify in the

Joint Pretrial Order which patent claims will be asserted at trial and demonstrate good cause to

amend its contentions, WPL asks that the Court require SAS to specify the alleged copyrights it

will assert at trial.  Presently, World Programming does not know which copyrights SAS now

asserts in this case, if less than the many hundreds of copyright registrations it has previously identified.  SAS contends that WPL is liable for money damages on account of its alleged copyright infringement.  WPL contends that SAS's asserted copyrights are not copyrightable subject matter under the Copyright Act.  WPL contends that it does not infringe any asserted copyright.  WPL denies SAS's claim for damages, and WPL denies that any alleged copyright infringement was in any way willful.  WPL further denies that SAS is entitled to injunctive relief, and/or any other relief of any kind.  WPL seeks declaratory relief and recovery of its costs, expenses, and attorneys' fees, as well as any other relief the Court deems appropriate.

WPL asserts counterclaims in this action.  WPL asserts that SAS has sought to harm WPL's business by anticompetitive means in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2.  WPL asserts that SAS has engaged in anticompetitive false advertising in violation of the Lanham Act, § 43, 15 U.S.C. § 1125.  WPL asserts that SAS has tortiously interfered with existing and prospective contractual relations.  WPL also asserts that SAS has engaged in unfair and deceptive trade practices in violation of the North Carolina Deceptive Trade Practices Act.  WPL seeks recovery of its damages stemming from the conduct alleged under the abovementioned counterclaims, and for SAS's violations of the Sherman Act, the Lanham Act, and the North Carolina Deceptive Trade Practices Act.  WPL further seeks an award of its costs, expenses, and attorneys' fees, as well as any other relief the Court deems appropriate.

## D.    CONTENTIONS OF THE PARTIES

### 1.    Plaintiff's Contentions:

Plaintiff SAS contends that WPL infringed SAS's copyrights to the SAS System computer program and the various SAS manuals and other publications relating to the SAS System because WPL copied or created derivative works based on the SAS System computer program and those

publications to create its own competing product. SAS claims that WPL copied various individual SAS System option names and syntax, the compilation of SAS System option names and syntax, SAS System output designs, and SAS System sequence, structure, and organization. SAS claims damages for copyright infringement.  SAS further claims entitlement to a permanent injunction based on such copyright infringement.

Plaintiff SAS further contends that WPL has infringed two United States patents owned by SAS.  Specifically, SAS contends that WPL infringes the following asserted claims of the following patents-in-suit, and that such infringement is and has been willful:

- '519 patent claims 1, 2, 21, 30, 34, and 56

- '458 patent claims 1, 3, 61, and 64

SAS contends that WPL should pay reasonable royalty damages to compensate SAS for WPL's infringement of the '519 patent.  SAS further claims entitlement to a permanent injunction based on infringement of the '519 patent and/or the '458 patent.

Plaintiff SAS further contends that WPL's counterclaims are not viable claims, that SAS is not liable under any of WPL's counterclaims, and that WPL is not entitled to any relief under any of its asserted counterclaims.  Additionally, SAS contends that WPL's counterclaims are not ready for trial, as the pleadings are not closed. *See* Dkt. No. 180.

Plaintiff SAS further contends that it is entitled to an award of attorneys' fees under 17 U.S.C. § 505; an exceptional case finding, including attorneys' fees, under 35 U.S.C. § 285; and/or attorneys' fees and other similar relief on WPL's counterclaims.

Plaintiff SAS further contends that numerous of WPL's contentions, below, were not previously disclosed, and are not appropriate to be raised at trial, including at least: thin copyright, deployment, configuration, use for patent infringement, limitations on the doctrine of equivalents,

5

and patentable subject matter.

Plaintiff SAS further contends that certain issues identified by WPL have already been decided by this Court and are therefore law of the case, including at least: (19) statute of limitations.

**2.      Defendant(s)'s Contentions:**

By providing this statement, World Programming does not concede that all of these issues are appropriate for trial.  World Programming also does not waive any of its pending or future filed motions, which, if granted, would render some or all of these issues moot.

World Programming's contentions in this case are detailed in part in its pleadings, discovery responses, the expert reports and World Programming's pending and anticipated motions, including its motions for summary judgment, which are all incorporated by reference herein.  In sum, World Programming contends the following:

***Copyright***

(1) World Programming contends that SAS Institute cannot meet its burden of proving that it owns the asserted works.

(2) World Programming contends that SAS Institute cannot meet its burden of proving that it owns valid copyrights in the asserted works.

(3) World Programming contends that SAS Institute cannot meet its burden of proving that the asserted works are copyrightable.

(4) World Programming contends that SAS Institute cannot meet its burden of proving that the SAS Language is copyrightable, fixed in a tangible medium of expression, or original to SAS Institute.

(5) World Programming contends that SAS Institute cannot meet its burden of proving that

World Programming actually used the asserted works to create its own works.

(6) World Programming contends that SAS Institute cannot meet its burden of proving that World Programming had access to the asserted works.

(7) World Programming contends that SAS Institute cannot meet its burden of proving that there is probative similarity between the asserted works and World Programming's works.

(8) World Programming contends that SAS Institute cannot meet its burden of proving that World Programming copied any protectable elements of the asserted works.

(9) World Programming contends that SAS Institute cannot meet its burden of proving that there is substantial similarity between any protectable elements of the asserted works and World Programming's works.

(10)    World Programming contends that SAS Institute cannot meet its burden of proving that the asserted works are original to SAS Institute.

(11)    World Programming contends that SAS Institute cannot meet its burden of proving that its asserted works are fixed in a tangible medium of expression.

(12)    World Programming contends that SAS Institute cannot meet its burden of providing a full *Altai/Gates Rubber* analysis (*i.e.*, abstraction-filtration-comparison test) to show that there are remaining protectable elements in SAS Institute's asserted works that render the asserted works substantially similar to World Programming's works.

(13)    World Programming contends that SAS Institute cannot meet its burden of proving that any protectable elements remain in its asserted works after filtering out unprotectable elements, including ideas, procedures, processes, systems, methods of

operation, concepts, principles, discoveries, facts, information in the public domain, scenes a faire material, merged material, fragmentary words or short phrases, utilitarian or functional purposes, material taken or copied from others, and user contributions

(14)    World Programming contends that SAS Institute cannot meet its burden of proving that the contribution of a user's SAS Language program's outputs is no more than marginal to the outputs generated SAS software executes users' SAS Language programs.

(15)    World Programming contends that SAS Institute cannot meet its burden of proving that its asserted works were subject to valid work for hire agreements assigning ownership to SAS Institute.

(16)    World Programming contends that SAS Institute cannot meet its burden of proving that alleged copying occurred within the United States.

(17)    World Programming contends that SAS Institute cannot meet its burden of proving that alleged copying occurred within the three-year statute of limitations under 17 U.S.C. § 507(b).

(18)    World Programming contends that SAS Institute cannot meet its burden of proving that World Programming has vicariously infringed any asserted works.

(19)    World Programming contends that SAS Institute cannot meet its burden of proving that World Programming has contributed to the infringement of any asserted works.

(20)    World Programming contends that SAS Institute cannot meet its burden of proving that it can rely on the effective registration doctrine.

(21)    To the extent an asserted work is a compilation work, World Programming contends that SAS Institute cannot meet its burden of proving that any such compilation

work is copyrightable.

(22)    To the extent an asserted work is a compilation work, World Programming contends that SAS Institute cannot meet its burden of proving that any such compilation work is fixed in a tangible medium of expression.

(23)    To the extent an asserted work is a compilation work, World Programming contends that SAS Institute cannot meet its burden of proving that the selection, coordination, and arrangement of preexisting materials or unprotectable elements renders them a work of authorship that is original to SAS Institute.

(24)    World Programming contends that SAS Institute cannot meet its burden of proving that any protectable elements remain in any asserted compilation works after filtering out unprotectable elements, including ideas, procedures, processes, systems, methods of operation, concepts, principles, discoveries, facts, information in the public domain, scenes a faire material, merged material, fragmentary words or short phrases, utilitarian or functional purposes, material taken or copied from others, and user contributions.

(25)    To the extent an asserted work is a compilation work and is found to have some level of copyrightability, World Programming contends that any such protection borders on the line of uncopyrightability, affords very thin protection, requires virtually identical copying to show copyright infringement, and that SAS Institute cannot meet its burden of proving by a preponderance of the evidence copyright infringement of such compilation works.

(26)    World Programming contends that SAS Institute cannot rely on the effective registration doctrine.

(27)    World Programming contends that it is entitled to a declaratory judgment that

9

World Programming is not infringing, and has not infringed, any asserted work.

(28)  World Programming contends that the asserted works are not copyrightable.

(29)  World Programming contends that SAS Institute's asserted works contain unprotectable elements, including ideas, procedures, processes, systems, methods of operation, concepts, principles, discoveries, facts, information in the public domain, scenes a faire material, merged material, fragmentary words or short phrases, utilitarian or functional purposes, material taken or copied from others, and user contributions.

(30)  World Programming contends that the asserted works are not original to SAS Institute.

(31)  World Programming contends that the asserted works are not fixed in a tangible medium of expression.

(32)  World Programming contends that it is entitled to a declaratory judgment that SAS Institute does not hold copyright in the SAS Language.

(33)  World Programming contends that it is entitled to a declaratory judgment that SAS Institute does not hold copyright in the functionality of the SAS System.

(34)  World Programming contends that SAS Institute's copyright claims are barred by the doctrine of res judicata, collateral estoppel, judicial estoppel, comity for foreign judgments, satisfaction, and/or prohibition against double recovery.

(35)  Regarding all alleged copyright infringement, World Programming contends that SAS Institute has not been damaged by World Programming's alleged conduct and is not entitled to damages (including any pre-judgment and/or post-judgment interest).

(36)  World Programming contends that SAS Institute cannot recover attorney's fees on its copyright claims from World Programming under 17 U.S.C. § 505.

(37)     World Programming contends that SAS Institute is not entitled to damages based on World Programming products or any feature of World Programming products that do not contain the alleged copy.

(38)     World Programming contends that SAS Institute is not entitled to any supplemental damages, any accounting for damages or attorneys' fees, expenses or costs.

(39)     World Programming contends that, even if infringement of the asserted copyrights is found, SAS Institute's proposed damages award is excessive and unsupportable.

(40)     World Programming contends that, even if infringement of the asserted copyrights is found, SAS Institute is not entitled to injunctive relief.

(41)     World Programming contends that SAS Institute cannot show that it would be irreparably harmed by World Programming's continued sale of the accused products.

(42)     World Programming contends that SAS Institute cannot show that there is no remedy at law that would be adequate to compensate it for World Programming's continued sale of the accused products.

(43)     World Programming contends that SAS Institute cannot show that the balance of equities indicates that an equitable remedy is warranted.

(44)     World Programming contends that SAS Institute cannot show that the public interest would be served by a permanent injunction.

(45)     World Programming contends that SAS Institute cannot obtain statutory damages for copyright infringement alongside actual damages and profits under 17 U.S.C. § 504(c)(1).

(46)     World Programming contends that SAS Institute cannot recover enhanced damages for willful copyright infringement because any alleged infringement by World

Programming was not willful under 17 U.S.C. § 504(c)(2).

(47)   World Programming contends that this is an exceptional case entitling World Programming to an award of its attorneys' fees incurred in connection with this action.

(48)   World Programming contends that SAS Institute's copyright claims are barred by the doctrine of copyright misuse.

(49)   World Programming contends that SAS Institute's copyright claims are barred by the doctrine of fair use.

(50)   World Programming contends that SAS Institute's copyright claims are barred by the first sale doctrine.

(51)   World Programming contends that SAS Institute's copyright claims are barred by the de minimis use doctrine.

(52)   World Programming does not infringe, and has not infringed, the copyrights asserted in this action.

***Patent***

(53)   World Programming does not infringe, and has not infringed, the asserted claims of the '519 Patent.

(54)   World Programming does not infringe, and has not infringed, the asserted claims of the '686 Patent.

(55)   World Programming does not infringe, and has not infringed, the asserted claims of the '996 Patent.

(56)   World Programming does not infringe, and has not infringed, the asserted claims of the '458 Patent.

(57)   World Programming contends that SAS Institute cannot meet its burden of proving

12

by a preponderance of the evidence direct infringement by World Programming of any asserted claim.

(58)    World Programming contends that SAS Institute cannot meet its burden of proving by a preponderance of the evidence direct infringement by any third party of any asserted claim.

(59)    World Programming contends that it has not induced infringement of any asserted claim, and that SAS Institute cannot meet its burden of proving that World Programming induced infringement of any asserted claim.

(60)    World Programming contends that it has not contributed to infringement of any asserted claim, and that SAS Institute cannot meet its burden of proving that World Programming contributed to infringement of any asserted claim.

(61)    World Programming is entitled to a declaratory judgment that World Programming is not infringing, and has not infringed, any asserted claim of the patents-in-suit.

(62)    World Programming contends that the accused functionalities in World Programming's accused products have substantial non-infringing uses, and that none constitutes a material part of the invention of the patents-in-suit or are especially made or especially adapted for use in or infringement of any claim of the patents-in-suit.

(63)    World Programming contends that SAS Institute cannot meet its burden of proving that accused World Programming products have been deployed, configured, and used in the manner that SAS Institute alleges to infringe.

(64)    World Programming contends that SAS Institute cannot meet its burden of proving by a preponderance of the evidence that World Programming had the knowledge of infringement, the specific intent to cause direct infringement, and/or the willful

13

blindness required for indirect infringement.

(65)    World Programming contends that SAS Institute is barred from asserting its proposed application of the doctrine of equivalents at least because of the Court's claim constructions, the disclosure-dedication rule, prior art, prosecution history estoppel, and/or the claim vitiation rule.

(66)    World Programming contends that the asserted claims of the patents-in-suit are invalid because they are anticipated under 35 U.S.C. § 102 for the reasons stated in World Programming's Invalidity Contentions and the expert report of Dr. Mark Jones.

(67)    World Programming contends that the asserted claims of the patents-in-suit are invalid because they are obvious under 35 U.S.C. § 103 for the reasons stated in World Programming's Invalidity Contentions and the expert report of Dr. Mark Jones.

(68)    World Programming contends that SAS Institute is not entitled to a date of invention earlier than the effective filing dates of each of the patents-in-suit.

(69)    World Programming contends that the asserted claims of the patents-in-suit are unpatentable subject matter under 35 U.S.C. § 101.  World Programming contends that the '519 Patent is directed to the abstract idea of presenting graphical representations of data on a computer, and that the '458 Patent is directed to the abstract idea of indexing information in a central storage location for others to search for and retrieve.

(70)    World Programming contends that the asserted claims of the patents-in-suit merely recite well-understood, routine, and conventional elements and do not form an inventive concept.

(71)    World Programming is entitled to a declaratory judgment that the asserted claims of the patents-in-suit are invalid under one or more sections of 35 U.S.C. § 101, 102,

and 103.

(72)    Regarding SAS Institute's allegations of willfulness, World Programming contends

that the alleged patent infringement was not willful.

(73)    World Programming contends that SAS Institute cannot meet its burden of proving

that World Programming willfully infringed any asserted claims of the patents-in-suit

and that SAS Institute is not entitled to enhancement of damages under 35 U.S.C. §

284.

(74)    Regarding all alleged infringement, World Programming contends that SAS

Institute has not been damaged by World Programming's alleged conduct and is not

entitled to damages (including any pre-judgment and/or post-judgment interest).

(75)    World Programming contends that SAS Institute is not entitled to damages based

on the entire market value of World Programming's accused products (or SAS

Institute's products).

(76)    World Programming contends that SAS Institute's claimed damages, if any, are

limited by 35 U.S.C. §§ 286, 287, and 288.

(77)    World Programming contends that SAS Institute is not entitled to damages based

on World Programming products or any feature of World Programming products that

do not contain the accused functionalities, and/or that have not been proven to have

been actually deployed, configured, and used in the manner that SAS Institute alleges

to infringe.

(78)    World Programming contends that SAS Institute is not entitled to any supplemental

damages, any accounting for damages or attorneys' fees, expenses or costs.

(79)    World Programming contends that, even if infringement of the asserted claims of

the patents-in-suit is found, SAS Institute's proposed damages award is excessive and unsupportable.

(80)    World Programming contends that, even if infringement of the asserted claims of the patents-in-suit is found, SAS Institute is not entitled to injunctive relief.

(81)    World Programming contends that any denial of injunctive relief should not be conditioned on payment of reasonable royalties for future infringement.

(82)    World Programming contends that SAS Institute cannot show that it would be irreparably harmed by World Programming's continued sale of the accused products.

(83)    World Programming contends that SAS Institute cannot show that there is no remedy at law that would be adequate to compensate it for World Programming's continued sale of the accused products.

(84)    World Programming contends that SAS Institute cannot show that the balance of equities indicates that an equitable remedy is warranted.

(85)    World Programming contends that SAS Institute cannot show that the public interest would be served by a permanent injunction.

(86)    World Programming contends that in the event a jury awards a lump sum royalty to SAS Institute covering the life of the patents-in-suit, SAS Institute would be precluded from obtaining ongoing royalties and a permanent injunction.

(87)    World Programming contends that this is an exceptional case entitling World Programming to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### *Counterclaims*

(88)    World Programming contends that SAS Institute engaged in an unreasonable

restraint of trade, violating Section 1 of the Sherman Act.

(89)   World Programming contends that SAS Institute has attempted to monopolize, or has in fact monopolized, a relevant antitrust market.

(90)   World Programming contends that SAS Institute has engaged in false advertising.

(91)   World Programming contends that SAS Institute has tortiously interfered with World Programming's contractual relationship with Angoss Software.

(92)   World Programming contends that SAS Institute has engaged in unfair practices under the North Carolina Deceptive Trade Practices Act.

(93)   World Programming contends that SAS Institute's activity is not protected petitioning activity under *Noerr Pennington*.

(94)   World Programming contends that it has been harmed by the conduct described in paragraphs above.

(95)   SAS previously asserted copyright infringement over its SAS System in the United Kingdom.   The U.K. Court held that "neither the functionality of a computer program, nor the programming language and the format of the data files used in a computer program in order to exploit certain of its functions . . . are . . . protected by copyright in computer programs[.]"

(96)   SAS previously asserted copyright infringement over its SAS System in the Eastern District of North Carolina.   The district court granted summary judgment of no copyright infringement, finding that SAS "seeks to copyright the idea of a program which interprets and compiles the SAS Language – a language anyone may use without a license."

- WPL's Objections to SAS's Statement of Its Contentions

WPL objects to SAS's contention which states:

"Plaintiff SAS contends that WPL infringed SAS's copyrights to the SAS System computer program and the various SAS manuals and other publications relating to the SAS System because WPL copied or created derivative works based on the SAS System computer program and those publications to create its own competing product. SAS claims that WPL copied various individual SAS System option names and syntax, the compilation of SAS System option names and syntax, SAS System output designs, and SAS System sequence, structure, and organization. SAS claims damages for copyright infringement.  SAS further claims entitlement to a permanent injunction based on such copyright infringement."

SAS has never identified what it is that it contends is the protectable expression in its "copyrights to the SAS System," or what it is that allegedly infringes any such protectable expression in the "SAS System."  SAS has never identified what it is within the "various SAS manuals and other publications relating to the SAS System" that it contends is the protectable expression and, if any, what it is that allegedly infringes any such protectable expression in such "manuals and other publications."  SAS has never identified the "SAS System option names and syntax" or "the compilation of SAS System option names and syntax" that it contends constitutes a protectable expression, the copyright registration(s) covering such "SAS System option names and syntax" and/or the compilation of the same, and what it is that allegedly infringes any such protectable expression contained within this category of alleged copyrighted works.  Further, SAS has not identified what it contends is the protectable expression in the alleged "SAS System output designs."  SAS has not identified the what it contends is the "SAS System sequence, structure, and organization," or what it is that allegedly infringes that "SAS System sequence, structure, and organization." WPL objects to these contentions as not previously disclosed to WPL through fact and expert discovery.  And WPL objects to these contentions to the extent they rely on theories not properly disclosed in this case.

WPL further objects to SAS's contentions concerning patent infringement of the '519 Patent and '458 Patent as not properly disclosed pursuant to the District's Patent Local Rules,

this Court's discovery rules, and/or other orders of the Court in this case.

E.     **STIPULATIONS AND UNCONTESTED FACTS**

1.     In this action, SAS asserts claims for copyright infringement and patent infringement.

2.     SAS Institute Inc ("SAS") is a North Carolina corporation with its principal place of business at 100 SAS Campus Drive, Cary, North Carolina.

3.     SAS offers business intelligence software and services, including software products that SAS refers to as the "SAS System."

4.     Numerous programs are available for sale or license that handle statistical analysis, data access, data management, data analysis, and data presentation, and the outputs of those programs may look different from one another.

5.     WPL is a private limited company under the laws of England and Wales, with a registered office in Romsey, England.

6.     This Court has subject matter jurisdiction over this dispute.

7.     This Court has personal jurisdiction over WPL and SAS.

8.     WPL is a foreign corporation not resident in the United States, and venue is proper in this Court for this action.

9.     In the past, WPL acquired multiple copies of SAS Learning Edition software.

10.    U.S. Patent No. 7,170,519 indicates on its face that it is titled "Computer-Implemented System and Method for Generating Data Graphical Displays," that it issued on January 30, 2007 based on a provisional application filed March 29, 2002, and that it is assigned to SAS.

11.    U.S. Patent No. 6,920,458 indicates on its face that it is titled, "Model Repository,"

that it issued on July 19, 2005 based on an application filed on September 22, 2000, and that it is assigned to SAS.

## F.      CONTESTED ISSUES OF FACT AND LAW

### SAS's List of Contested Issues

1.      Whether WPL has infringed SAS's copyrights in the SAS System computer program and the various SAS manuals and other publications relating to the SAS System or created derivative works based on the SAS System computer program.

2.      If liability is found for copyright infringement, the amount of money that is to be awarded to SAS for WPL's copyright infringement, including the actual damages SAS suffered as a result of the infringement and any profits of WPL that are attributable to the infringement and not taken into account in computing actual damages.

3.      Whether WPL has directly infringed the asserted claims of the patents- in-suit, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, using, and/or importing into the U.S. any of the accused products, and whether such infringement is or has been willful.

4.      Whether WPL has indirectly infringed the asserted claims of the patents- in-suit, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, using, and/or importing into the U.S. any of the accused products, and whether such infringement is or has been willful.

5.      Whether WPL has proven by clear and convincing evidence that any of the asserted claims of the patents-in-suit are invalid as anticipated or obvious.

6.      If liability is found for patent infringement, the amount of damages to which SAS

is entitled as a reasonable royalty, including any post-trial damages, as well as costs, pre-judgment interest, and post-judgment interest.

7.    Whether SAS is entitled to injunctive relief based on WPL's copyright infringement and/or patent infringement.

8.    Whether WPL's counterclaims state any triable issues, and if so, whether WPL has proven liability under any of the counterclaims, and if so, whether WPL is entitled to any relief.

9.    Whether SAS is entitled to an award of attorneys' fees under 17 U.S.C. § 505; an exceptional case finding, including attorneys' fees, under 35 U.S.C. § 285; and/or attorneys' fees and other similar relief on WPL's counterclaims.

10.    Whether numerous of WPL's contentions, above, were not previously disclosed, and are not appropriate to be raised at trial, including at least: thin copyright, deployment, configuration, use for patent infringement, limitations on the doctrine of equivalents, and patentable subject matter.

11.    Whether certain contentions, above, identified by WPL have already been decided by this Court and are therefore law of the case, including at least: (19) statute of limitations.

### World Programming's Statement of Contested Issues of Fact

By providing this statement, World Programming does not concede that all of these issues are appropriate for trial.  World Programming also does not waive any of its pending or future filed motions, which, if granted, would render some or all of these issues moot.

***Copyrights***

(1)     Whether SAS Institute has proven by a preponderance of the evidence that World Programming actually used the asserted works to create its own works.

(2)     Whether SAS Institute has proven by a preponderance of the evidence that World Programming had access to the asserted works.

(3)     Whether SAS Institute has proven by a preponderance of the evidence that there is probative similarity between the asserted works and World Programming's works.

(4)     Whether SAS Institute has proven by a preponderance of the evidence that World Programming copied protectable elements of the asserted works.

(5)     Whether SAS Institute has proven by a preponderance of the evidence that there is substantial similarity between protectable elements of the asserted works and World Programming's works.

(6)     Whether SAS Institute has proven by a preponderance of the evidence that World Programming's products infringe any asserted copyrights.

(7)     Whether SAS Institute has proven by a preponderance of the evidence that World Programming vicariously infringed any asserted works.

(8)     Whether SAS Institute has proven by a preponderance of the evidence that World Programming contributed to the infringement of any asserted works.

(9)     Whether SAS Institute's copyright infringement claims are barred by the fair use doctrine.

(10)    Whether, regarding all alleged copyright infringement, SAS Institute has proven by a preponderance of the evidence that SAS Institute has damaged by World Programming's alleged conduct and is entitled to damages (including any pre-judgment and/or post-judgment interest).

*Patents*

(11)    Whether SAS Institute has proven by a preponderance of the evidence that World
         Programming's products directly and/or indirectly infringe the asserted claims of
         the '519 Patent.

(12)    Whether SAS Institute has proven by a preponderance of the evidence that World
         Programming's products directly and/or indirectly infringe the asserted claims of
         the '458 Patent.

(13)    What the level of ordinary skill in the art at the time of the invention of each patents-
         in-suit was.

(14)    Whether, to the extent any infringement of any asserted claim of a patent-in-suit is
         found, SAS Institute proves by a preponderance of the evidence that World
         Programming's infringement of a valid and enforceable claim of a patent-in-suit
         was willful.

(15)    Whether World Programming has proven by clear and convincing evidence that the
         asserted claims of the '519 Patent and the '458 Patent are invalid because they are
         anticipated by World Programming's prior art references under 35 U.S.C. § 102.

(16)    Whether World Programming has proven by clear and convincing evidence that the
         asserted claims of the '519 Patent and the'458 Patent are invalid because they are
         obvious under 35 U.S.C. § 103 in view of World Programming's prior art
         references.

(17)   Whether the asserted claims of the '519 Patent and the'458 Patent merely recite well-understood, routine, and conventional elements and do not form an inventive concept.

(18)   Whether World Programming has proven by clear and convincing evidence that the asserted claims of the '519 Patent and the'458 Patent are invalid under 35 U.S.C. § 112.

(19)   Any issues of fact that are determined to constitute issues of law are hereby designated as such, and vice versa.  World Programming also incorporates by reference the contested issues raised in its pending motions.

### *Counterclaims*

(20)   Whether SAS Institute unreasonably restrained trade in a relevant antitrust market.

(21)   Whether SAS Institute engaged in monopolistic conduct or attempted to engage in monopolistic conduct in a relevant antitrust market.

(22)   Whether SAS Institute engaged in anticompetitive or exclusionary conduct.

(23)   Whether the market for SAS Language compilers or statistical analysis software capable of interpreting the SAS Language are relevant antitrust markets.

(24)   Whether SAS Institute made a false or misleading statement in commercial advertising or promotion.

(25)   Whether SAS Institute's conduct was reasonably and normally attendant upon effective litigation.

(26)   Whether SAS Institute engaged in sham litigation.

(27)   Whether SAS Institute engaged in tortious interference with World Programming's relationship with Angoss Software.

(28)   The existence and amount of damages to World Programming caused by SAS Institute's unlawful conduct.


**World Programming's Statement of Issues to be Decided by the Court**

(29)   Whether SAS Institute can meet its burden of proving by a preponderance of the evidence that SAS Institute owns the asserted works.

(30)   Whether SAS Institute can meet its burden of proving by a preponderance of the evidence that SAS Institute owns valid copyrights in the asserted works.

(31)   Whether SAS Institute can meet its burden of proving by a preponderance of the evidence that SAS Institute's asserted works are copyrightable.

(32)   Whether SAS Institute can meet its burden of proving by a preponderance of the evidence that SAS Institute's asserted works are fixed in a tangible medium of expression.

(33)   Whether SAS Institute can meet its burden of proving by a preponderance of the evidence that SAS Institute's asserted works are original to SAS.

(34)   To the extent the SAS Language is considered something different than the asserted works, whether SAS Institute can meet its burden of proving by a preponderance of the evidence that the SAS Language is copyrightable.

(35)   To the extent the SAS Language is considered something different than the asserted works, whether SAS Institute can meet its burden of proving by a preponderance of the evidence that the SAS Language is fixed in a tangible medium of expression.

(36)     To the extent the SAS Language is considered something different than the asserted works, whether SAS Institute can meet its burden of proving by a preponderance of the evidence that the SAS Language is original to SAS Institute.

(37)     Whether after conducting the *Altai/Gates Rubber* analysis (*i.e.*, abstraction-filtration-comparison test), there are any protectable elements remaining in SAS Institute's asserted works.

(38)     Whether SAS Institute can meet its burden of proving by a preponderance of the evidence that the contribution of user's SAS Language outputs is no more than marginal to the outputs generated SAS software executes users' SAS Language programs.

(39)     To the extent an asserted work is a compilation work, whether SAS Institute can meet its burden of proving that any such compilation work is copyrightable.

(40)     To the extent an asserted work is a compilation work, whether SAS Institute can meet its burden of proving that any such compilation work is fixed in a tangible medium of expression.

(41)     To the extent an asserted work is a compilation work, whether SAS Institute can meet its burden of proving that the selection, coordination, and arrangement of preexisting materials or unprotectable elements renders them a work of authorship that is original to SAS Institute.

(42)     Whether SAS Institute can meet its burden of proving that any protectable elements remain in any asserted compilation works after filtering out unprotectable elements, including ideas, procedures, processes, systems, methods of operation, concepts, principles, discoveries, facts, information in the public domain, scenes a faire

material, merged material, fragmentary words or short phrases, utilitarian or functional purposes, material taken or copied from others, and user contributions.

(43)   To the extent an asserted work is a compilation work and is found to have some level of copyrightability, whether any such protection borders on the line of uncopyrightability, affords very thin protection, requires virtually identical copying to show copyright infringement, and whether SAS Institute can meet its burden of proving by a preponderance of the evidence copyright infringement of such compilation works.

(44)   Whether SAS Institute cannot rely on the effective registration doctrine.

(45)   Whether SAS Institute's copyright claims are barred by the three-year statute of limitations under 17 U.S.C. § 507(b).

(46)   Whether SAS Institute's copyright claims are barred by the first sale doctrine.

(47)   Whether SAS Institute's copyright claims are barred by the doctrine of copyright misuse.

(48)   Whether SAS Institute's copyright claims are barred by the de minimis use doctrine.

(49)   Whether SAS Institute's copyright claims are barred because they rely on extraterritorial conduct outside of the United States.

(50)   Whether SAS Institute's copyright claims are barred by the doctrine of res judicata, collateral estoppel, judicial estoppel, comity for foreign judgments, satisfaction, and/or prohibition against double recovery.

(51)   Whether SAS Institute cannot recover attorney's fees on its copyright claims from World Programming under 17 U.S.C. § 505.

(52)     Whether SAS Institute is not entitled to damages based on World Programming products or any feature of World Programming products that do not contain the alleged copy.

(53)     Whether SAS Institute is not entitled to any supplemental damages, any accounting for damages or attorneys' fees, expenses or costs.

(54)     Whether, even if infringement of the asserted works is found, SAS Institute's proposed damages award is excessive and unsupportable.

(55)     Whether, even if infringement of the asserted works is found, SAS Institute is not entitled to injunctive relief.

(56)     Whether SAS Institute cannot show that it would be irreparably harmed by World Programming's continued sale of the accused products.

(57)     Whether SAS Institute cannot show that there is no remedy at law that would be adequate to compensate it for World Programming's continued sale of the accused products.

(58)     Whether SAS Institute cannot show that the balance of equities indicates that an equitable remedy is warranted.

(59)     Whether SAS Institute cannot show that the public interest would be served by a permanent injunction.

(60)     Whether SAS Institute cannot obtain statutory damages for copyright infringement alongside actual damages and profits under 17 U.S.C. § 504(c)(1).

(61)     Whether SAS Institute cannot recover enhanced damages for willful copyright infringement because any alleged infringement by World Programming was not willful under 17 U.S.C. § 504(c)(2).

(62)   Whether the asserted claims of the '519 Patent are directed to an abstract idea.

(63)   Whether the asserted claims of the '458 Patent are directed to an abstract idea.

(64)   Whether this is an exceptional case entitling World Programming to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

(65)   Whether, if infringement of a valid and enforceable patent claim is found, SAS Institute has proven that World Programming's behavior was sufficient to support a finding of willfulness.

(66)   Whether SAS Institute is entitled to costs, and, if so, the dollar amount of their costs.

(67)   Whether SAS Institute is entitled to prejudgment and post-judgment interest, and, if so, the dollar amount of prejudgment and post-judgment interest.

(68)   Whether, if infringement of a valid and enforceable patent claim is found, SAS Institute is entitled to an injunction against World Programming pursuant to 35 U.S.C. § 283, requiring World Programming to refrain from directly infringing, contributing to, or inducing the infringement of the patents-in-suit in the United States.

(69)   Whether any denial of an injunction should be condition on payment of reasonable royalties for future infringement, and if so, the royalty amount set for future infringement and a means or mechanism to account for future royalty payments, including during any stay of an injunction pending appeal.

(70)   Whether World Programming or SAS Institute is entitled to a finding that this case is exceptional and, if so, the proper amount of attorneys' fees and/or costs.

(71)     Whether North Carolina law applies to SAS Institute's conduct arising under World Programming's claims under the North Carolina Unfair Trade Practices Act

(72)     Whether SAS Institute's conduct was "unfair" under the North Carolina Unfair Trade Practices Act.

(73)     Whether SAS Institute's settlement agreement with Angoss Software is the type of restraint of trade that gives rise to *per se* liability under Section 1 of the Sherman Act.

## G.     LISTS OF WITNESSES

| Exhibit | Description |
|---------|-------------|
| A | SAS Witness List |
| B | WPL Witness List |

## H.     LISTS OF EXHIBITS AND DEPOSITION DESIGNATIONS

| Exhibit | Description |
|---------|-------------|
| C | SAS Exhibit List |
| D | WPL Exhibit List |
| E | SAS Objections to WPL Exhibit List |
| F | WPL Objections to SAS Exhibit List |
| G | WPL's General Objections to SAS Exhibit List and Deposition Designations |
| H | SAS Deposition Designations, WPL Objections and Counter-Designations |
| I | WPL Deposition Designations, SAS Objections and Counter-Designations |

## I.     LIST OF ANY PENDING MOTIONS

Docket No. 180     Plaintiff's Sealed Motion to Dismiss Amended Counterclaims

Docket No. 196  Plaintiff's Motion for Leave to Amend Infringement Contentions

Docket No. 210  Plaintiff's Sealed Motion for Leave to File Second Amended Complaint

Docket No. 219  Defendants' Sealed Renewed Motion to Compel Responses to Interrogatories No. 8 and 9

Docket No. 222  Plaintiff's Motion to Enforce Prior Order Concerning Production of Executables

Docket No. 234  Defendants' Objection to Claim Construction

Docket No. 251  Defendant World Programming Limited's Motion for Attorney Fees

Docket No. 259  Defendants' Sealed Motion to Strike Plaintiff's Untimely Fourth Infringement Contentions

Docket No. 263  Plaintiff's Sealed Motion for Partial Summary Judgment on Defendant World Programming Limited's Counterclaims

Docket No. 264  Plaintiff's Sealed Motion for Partial Summary Judgment on Its Copyright Infringement Claims

Docket No. 265  Plaintiff's Sealed Motion to Exclude Testimony of Non-Retained Expert Oliver Robinson

Docket No. 266  Plaintiff's Sealed Motion to Exclude Testimony Regarding Counting Lines of Code

Docket No. 267  Defendant World Programming Limited's Sealed Motion for Partial Summary Judgment of No Copyright Infringement Based on Preclusive Impact of North Carolina Judgment

Docket No. 268  Defendants' Sealed Motion to Strike Portions of the Opinion and Testimony of Dr. James Storer Concerning Patent Infringement

Docket No. 269  Defendants' Sealed Motion to Strike Portions of the Damages Opinions and Testimony of Dr. Vellturo

Docket No. 270  Defendant Luminex Software, Inc.'s Sealed Motion for Summary Judgment and Request for Attorney's Fees Based on SAS Institute

<table>
<tr><td></td><td>Inc.'s Baseless Litigation Pursued for an Improper Purpose</td></tr>
<tr><td>Docket No. 271</td><td>Defendants' Sealed Motion for Partial Summary Judgment Against Plaintiff's Copyright Infringement Claims [Actionable Copying]</td></tr>
<tr><td>Docket No. 272</td><td>Defendants' Sealed Motion for Partial Summary Judgment Against Plaintiff's Copyright Infringement Claims [Copyrightability]</td></tr>
<tr><td>Docket No. 273</td><td>Defendants' Sealed Motion to Strike SAS Institute Inc.'s Expert Dr. Storer for Violating Rule 26(a)(2)(B), Rule 37(a)(4), and Rule 37(b)</td></tr>
<tr><td>Docket No. 275</td><td>Defendants' Corrected Sealed Motion to Exclude Testimony of Dr. James Storer on Issues Related to Copyright Infringement</td></tr>
<tr><td>Docket No. 308</td><td>Defendants' Sealed Motion to Strike Portions of the Declaration of Keith Collins (Dkt. No. 264-1)</td></tr>
<tr><td>Docket No. 334</td><td>Defendants' Sealed Motion to Strike Portions of the Second Declaration of Keith Collins (Dkt. No. 296-3) and the Declaration of Dr. Luke Seed (Dkt. No. 297-3)</td></tr>
<tr><td>Docket No. 377</td><td>Plaintiff's Sealed Motions In Limine</td></tr>
<tr><td>Docket No. 378</td><td>Defendant World Programming Limited's Sealed Motions in Limine</td></tr>
<tr><td>Docket No. 388</td><td>Defendant World Programming Limited's Sealed Motion for Leave to Serve Supplemental Expert Reports of WPL's Damages Expert Mr. Green</td></tr>
<tr><td>Docket No. 395</td><td>Defendant Luminex Software, Inc.'s Motion to Dismiss in View of Settlement Agreement</td></tr>
</table>

## J. PROBABLE LENGTH OF TRIAL

### 1. Plaintiff's Proposal

SAS submits that the probable length of trial is 5 days in the event that summary judgment is granted with respect to WPLs counterclaims or 10 days in the event the counterclaims move forward to trial.  SAS opposes any bifurcation of the trial of this case.

## 2.      Defendant's Proposal

World Programming estimates and hereby requests 10 days for trial in light of the fact that SAS asserts both copyright and patent infringement, the sheer number of asserted copyrights, and World Programming's counterclaims.  World Programming requests that each side receives 45 minutes for voir dire, 90 minutes for opening statements, and 150 minutes for closing arguments.  The additional time is requested so that World Programming has sufficient time to inquire of the venire panel issues related to both copyright and patent infringement, provide a case overview in opening statement that opens on all issues, and summarize the evidence presented across the distinct legal principles the jury will be asked to evaluate.  For direct, cross, and rebuttal reexamination, World Programming requests 25 hours per side.  World Programming further requests that the Court bifurcate the triable issues into two phases, as follows:

Phase 1: SAS's claims of patent and copyright infringement; World Programming's defenses to patent and copyright infringement; and patent and copyright damages, if any.

Phase 2: SAS's claims of willful patent and copyright infringement (if liability is found during phase 1); World Programming's counterclaims; and counterclaim damages, if any.

## K.      MANAGEMENT CONFERENCE LIMITATIONS

Subject to any limitations set forth by the Court, the parties will be bound by their agreements concerning exchanges of demonstratives, exhibits, witness lists, and objections.

The parties propose the following procedures for trial management:

1.      The parties will exchange copies of all documentary, graphic, slide, animation, and any other form of Demonstratives they plan to use at trial for use during direct examination or opening—but not for cross-examination—by 7:00 p.m. the night before their intended use. In other words, if a demonstrative will be used on

a Wednesday, it must be exchanged or made available by 7:00 p.m. on the previous Tuesday. WPL proposes that the parties shall exchange objections to these demonstratives by 9:00 p.m. on the day the exhibits are received.  SAS proposes that the parties shall exchange objections to these demonstratives by 8:00 p.m. on the day the exhibits are received.  Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

    a.    "Demonstratives" are exhibits specifically created for the purpose of the trial and do not include (1) exhibits created in the courtroom during testimony or opening at trial, (2) the enlargement, highlighting, ballooning, etc. of trial exhibits or transcripts of testimony, or to composites of admitted exhibits and/or testimony, so long as the demonstrative only includes factual descriptions of the underlying exhibit or testimony, or (3) demonstratives previously displayed in the course of the trial. Reasonable nonsubstantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to use.

    b.    However, Demonstratives for direct examination and opening and trial exhibits must be cleared of outstanding objections before being shown to the jury. Additionally, any transcripts of testimony (excluding testimony given during this trial) must have been [SAS proposes: previously designated by the parties] and cleared of outstanding objections before being shown to the jury during

34

opening or on direct examination.  <u>WPL proposes</u> that, on cross-examination, transcripts of testimony may be used so long as it is not in violation of a motion in limine or other exclusionary order, regardless of whether it was previously designated by the parties. <u>SAS proposes</u> that the use of transcripts for cross examination be limited to that which is permissible under the Federal Rules of Evidence, and in particular objects to WPL's proposal to the extent it would permit the use of transcripts for purposes on cross examination other than impeachment.

2.    The parties will make available for inspection all non-documentary demonstratives or live product demonstrations, such as physical exhibits, physical prior art or physical products, they plan to use at trial for use during direct examination or opening—but not for cross-examination— by 7:00 p.m. two nights before their intended use. In other words, if a non-documentary demonstrative will be used on a Wednesday, it must be exchanged or made available by 7:00 p.m. on the previous Monday. The parties shall exchange objections to these non-documentary demonstratives or live product demonstrations by 7:00 p.m. the night before their intended use. Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

3.    The parties will exchange lists of exhibits they intend to use during direct examination with each witness by 7:00 p.m. the night before their intended use.

4.    The parties will identify witnesses to be called live (in the order of call) at 7:00

p.m., [SAS proposal: one day] [WPL proposal: two days] in advance of the day of trial during which the witnesses will testify. In other words, if a witness will testify on a Wednesday, the witness must be identified by 7:00 p.m. on the previous [SAS proposal: Tuesday] [WPL proposal: Monday].

5.    For video and other deposition witnesses, the parties will provide a list of any deposition designations to be played by 7:00 pm two days before the designation is to be played. Counters and objections to the 7:00 pm designations are due by 9:00 pm the same evening, and any unresolved objections will be raised with the Court the next morning.

6.    The parties agree that any exhibit listed on a party's own exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury by that party during opening statements if the exhibit will be the subject of testimony and explained to the jury by a witness at trial.

7.    The parties agree to exchange lists of "Admitted Exhibits" by 10:00 p.m. the night before the lists are to be submitted to the Court.

8.    [SAS proposal: The parties will meet and confer regarding demonstratives and exhibits, and deposition objections at 9:15pm the night before the objected materials are to be used in Court.  The parties will meet and confer regarding deposition designations at 9:15 pm the second night before the objected materials are to be used in Court.]  [WPL proposal: The parties will meet and confer regarding demonstratives, exhibits, and deposition objections at 9:15pm the night before the objected materials are to be used in Court.]

36

**L.     CERTIFICATIONS**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1)     Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)     Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)     Each exhibit in the List of Exhibits herein:

      a)      is in existence;

      b)      is numbered; and

      c)      has been disclosed and shown to opposing counsel.


APPROVED AS TO FORM AND SUBSTANCE:


*Attorneys for Plaintiff:*

          */s/Christian E. Mammen*
          **WOMBLE BOND DICKINSON (US) LLP**

          Pressly M. Millen (*admitted pro hac vice*)
          Raymond M. Bennett (*admitted pro hac vice*)
          WOMBLE BOND DICKINSON (US) LLP
          555 Fayetteville Street, Suite 1100
          Raleigh, NC 27601
          Telephone: 919-755-2135
          Press.Millen@wbd-us.com
          Telephone: 919.755.2158
          Ray.Bennett@wbd-us.com

          Christian E. Mammen (*admitted pro hac vice*)
          Carrie Richey
          WOMBLE BOND DICKINSON (US) LLP
          1841 Page Mill Road, Suite 200
          Palo Alto, CA 94304

Telephone: (408) 341-3067
Chris.Mammen@wbd-us.com
Telephone: (408) 341-3060
Carrie.Richey@wbd-us.com

Samuel B. Hartzell
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
919-755-2112
Fax: 919-755-6772
Sam.Hartzell@wbd-us.com

Michael C. Smith
Texas Bar No. 18650410
SIEBMAN, FORREST, BURG & SMITH, LLP
113 E. Austin Street
Marshall, Texas 75670
Tel: (903) 938-8900
michaelsmith@siebman.com

**Attorneys for Defendant(s):**

*/with permission /s/ Bradley W. Caldwell*
**CALDWELL CASSADY CURRY P.C**

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
CALDWELL CASSADY CURRY P.C.
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**Attorneys for Defendant World Programming**

38

Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
T. John "Johnny" Ward Jr.
Texas Bar No. 00794818
jw@wsfirm.com
Claire Henry
Texas Bar No. 24053063
claire@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 1231
Longview, TX 75606
903-757-6400
903-757-2323 (Facsimile)

*Attorneys for Defendant World Programming*

This **JOINT PRE-TRIAL ORDER** is hereby **APPROVED** this _____ day of _____, 2020.

_____
**UNITED STATES DISTRICT JUDGE**