FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SAS INSTITUTE INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-cv-295-JRG |
| | § | |
| WORLD PROGRAMMING LIMITED, | § | FILED UNDER SEAL |
| *et al*. | § | PUBLIC VERSION |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## WORLD PROGRAMMING'S RESPONSE TO SAS INSTITUTE INC.'S MOTIONS *IN LIMINE*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

I.      SAS MIL 1 ................................................................................................................ 1

II.     SAS MIL 2 ................................................................................................................ 2

III.    SAS MIL 3 ................................................................................................................ 2

IV.     SAS MIL 4 ................................................................................................................ 3

V.      SAS MIL 5 ................................................................................................................ 5

VI.     SAS MIL 6 ................................................................................................................ 6

VII.    SAS MIL 7 ................................................................................................................ 6

VIII.   SAS MIL 8 ................................................................................................................ 7

IX.     SAS MIL 9 ................................................................................................................ 8

X.      SAS MIL 10 ............................................................................................................ 10

XI.     SAS MIL 11 ............................................................................................................ 11

XII.    SAS MIL 12 ............................................................................................................ 11

XIII.   SAS MIL 13 ............................................................................................................ 12

XIV.    SAS MIL 14 ............................................................................................................ 12

XV.     SAS MIL 15 ............................................................................................................ 12

XVI.    SAS MIL 16 ............................................................................................................ 13

XVII.   SAS MIL 17 ............................................................................................................ 14

XVIII.     SAS MIL 18 ......................................................................................................... 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Cases**

*Alcatel USA, Inc. v. DGI Technologies, Inc.*
   166 F.3d 772 (5th Cir. 1999) ................................................... 6

*Apple Inc. v. Samsung Elecs. Co.*
   839 F.3d 1034 (Fed. Cir. 2016)................................................ 12

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*
   435 F.3d 1356 (Fed. Cir. 2006)................................................. 2

*Aro Mfg. Co. v. Convertible Top Replacement Co.*
   377 U.S. 476 (1964)................................................................ 9

*AstraZeneca AB v. Apotex Corp.*
   782 F.3d 1324 (Fed. Cir. 2015)................................................. 8

*Auenson v. Lewis*
   1996 WL 457258 (E.D. La. Aug. 12, 1996) ............................... 1

*Batlemento v. Dove Fountain, Inc.*
   593 So.2d 234 (Fla. 5th Dist.Ct.App. 1991) ............................... 3

*Brough v. Imperial Sterling Ltd.*
   297 F.3d 1172 (11th Cir. 2002) ................................................ 2

*Cliffstar Corp. v. Alpine Foods, LLC*
   09-CV-00690-JJM, 2016 WL 2640342 (W.D.N.Y. May 10, 2016)........................................ 5

*Commil USA, LLC v. Cisco Sys., Inc.*
   135 S.Ct. 1920 (2015)............................................................. 15

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*
   No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017)........................ 8

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*
   No. 2:15-cv-37-RWS-RSP (E.D. Tex. July 25, 2017)............................................. 13

*Ericsson, Inc. v. D-Link Sys., Inc.*
   773 F.3d 1201 (Fed. Cir. 2014)................................................. 9

*Ford Motor Co. v. Versata Software, Inc.*
   316 F. Supp. 3d 925 (N.D. Tex. 2017) ....................................... 4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Graham v. John Deere Co. of Kansas City*
  383 U.S. 1 (1966)...................................................................................... 12

*Graper v. Mid-Continent Cas. Co.*
  756 F.3d 388 (5th Cir. 2014) ..................................................................... 2

*Hellman-Blumberg v. University of the Pacific*
  2013 WL 3422699 (E. D. Cal. July 8, 2013) ............................................. 6

*Huawei Techs Co. Ltd. V. T-Mobile U.S., Inc.*
  Case No. 2:16-cv-00052-JRG-RSP, slip op. at 7 (E. D. Tex. Sept. 29, 2017) ........................ 13

*Kryptek Outdoor Group, LLC v. Salt Armour, Inc.*
  2016 WL 3460774 (E. D. Tex. Feb. 22, 2016) .......................................... 10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*
  694 F.3d 51 (Fed. Cir. 2012)................................................................... 3, 8

*Luce v. United States*
  469 U.S. 38 (1984)..................................................................................... 1

*McCann v. Midland Cty. Educ. Servs. Agency*
  No. 06-13150-BC, 2007 WL 4455099 (E.D. Mich. Dec. 14, 2007)........................ 14

*Nat'l Geographic Soc. v. Int'l Media Associates, Inc.*
  CIV. A. 89-1200, 1992 WL 233823 (D.D.C. Aug. 31, 1992) .................................. 5

*Prometheus Labs., Inc. v. Roxane Labs., Inc.*
  805 F.3d 1092 (Fed. Cir. 2015)................................................................. 12

*Regents of University of California v. Broad Institute, Inc.*
  903 F.3d 1286 (Fed. Cir. 2018)................................................................. 14

*SAS Inst., Inc. v. World Programming Ltd.*
  874 F.3d 370 (4th Cir. 2017) ..................................................................... 2

*The Richards Group, Inc. v. Brock*
  3:06-CV-0799-D, 2008 WL 2787899 (N.D. Tex. July 18, 2008) ........................... 5

*United States v. McRae*
  593 F.2d 700 (5th Cir. 1979) ..................................................................... 8

*United States v. Morris*
  79 F.3d 409 (5th Cir. 1996) ..................................................................... 11

*VirnetX, Inc. v. Cisco Sys., Inc.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

767 F.3d 1308 (Fed. Cir. 2014).................................................................................. 9

*Ziilabs Inc., Ltd. v. Samsung Elecs. Co*.
  No. 2:14-CV-203-JRG-RSP, 2015 WL 13617214 (E.D. Tex. Oct. 28, 2015) ........................ 13

**Statutes**

35 U.S.C. § 103 ......................................................................................................... 12

**Rules**

Fed. R. Evid. 403 ...................................................................................................... 13

Fed. R. Evid. 701 ...................................................................................................... 15

Fed. R. Evid. 702 ...................................................................................................... 15

Fed. R. Evid. 801 ...................................................................................................... 14

Fed. R. Evid. 801(d)(2) ............................................................................................... 7

Fed. R. Evid. 803 ........................................................................................................ 5

Fed. R. Evid. 804 ........................................................................................................ 5

Fed. R. Evid. 804(b)(1) ............................................................................................... 5

Fed. R. Evid. 807 ........................................................................................................ 5

Fed. R. Evid. 807(a) .................................................................................................... 5

Fed. R. Evid. 808 ...................................................................................................... 10

**Other Authorities**

W. E. Shipley, Annotation
  *Counsel's Appeal in Civil Case to Wealth or Poverty of Litigants as Ground
  for Mistrial, New Trial, or Reversal*, 32 A.L.R.2d 9, § 1 (1952).................................. 5

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Defendant World Programming Limited ("WPL") submits this Response in Opposition to Plaintiff SAS Institute Inc.'s ("SASI") Motion *in limine*, Dkt. 377 ("Motion").  The Motion spans a laundry list of issues—an eyewatering eighteen in total—despite this Court's order to restrict motions *in limine* to only those that "if improperly introduced at trial would be *so prejudicial* that the Court could not alleviate the prejudice by giving appropriate instructions to the jury."  Dkt. 258 (Sixth Amended Docket Control Order) (emphasis added).  SASI ignored this order, and it seeks the exclusion of evidence on grounds often having nothing to do with potential prejudice at all.  WPL asks that the Court deny SASI's Motion on the basis that the issues are improper in view of this Court's order.

A consequence of SASI's kitchen-sink approach is bare and conclusory treatment of the issues.  By asking to exclude so much evidence, SASI's arguments fail to establish sufficient justification for the exclusion of any evidence.  The Court should use its inherent authority to deny SASI's conclusory arguments. *See Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (use of motions *in limine* stems from district courts' inherent authority to manage trials). Although motions *in limine* can promote efficiency, SASI's approach does just the opposite. In these circumstances, the Court is in a better position to assess the value and utility of evidence during trial. Evidentiary rulings on motions *in limine* are disfavored unless the evidence is "clearly inadmissible on all potential grounds," *Auenson v. Lewis*, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996), and WPL respectfully requests that the Court deny SASI's Motions because they concern matters which easily can—and more properly should—be resolved at trial.

## I.      SAS MIL 1

SASI contends that WPL's alleged copyright infringement is willful.  The outcome of the U.K. litigation copyright case is highly relevant to WPL's state of mind.  The Fifth Circuit

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

considers the Copyright Act's "willful" provision to cover both reckless disregard and knowledge of copyright infringement. *See Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 394-95 (5th Cir. 2014). Because SASI's copyright infringement allegations in this case are virtually identical—if not literally identical—to those brought in the U.K. litigation, the U.K. court's finding that WPL did not infringe SAS System copyrights is highly relevant to, and an indispensable component of, WPL's defense to willful copyright infringement. WPL should be permitted to rebut charges of willfulness with evidence supporting its reasonable belief of no copyright violations. *See, e.g.*, *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1366 (Fed. Cir. 2006) (Prior litigation between parties was relevant to the jury's willfulness determination).

## II.     SAS MIL 2

The North Carolina finding of no copyright infringement is likewise relevant to willfulness. *See supra* MIL 1. The fact that the Fourth Circuit later vacated the district court's copyright findings does not mitigate the import of this evidence. Critically, the Fourth Circuit did not reverse the district court's finding of no copyrightability; the Fourth Circuit vacated the finding because it was <u>moot</u> in view of the remedies already awarded to SASI on its non-copyright legal claims. *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 390 (4th Cir. 2017) ("We thus vacate the district court's ruling on the now-moot copyright issue, with the result that the claim should be dismissed on remand.").

## III.    SAS MIL 3

SASI implies the existence of a categorical prohibition of evidence pertaining to a party's or witness's wealth in federal court trials. *See* Dkt. 377 at 3 (quoting *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002)). SASI is incorrect; *Brough* was brought under diversity and applied Florida law. (The "general rule" underlying SASI's motion derives from a

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Florida state appellate court which itself sourced the rule from a compilation of cases involving arguments "specifically appeal[ing] to bias for the poor or against the rich.").[1]

There is no "general" federal rule—nor binding precedent—forbidding reference to wealth; admissibility of such evidence instead hinges upon the proponent's reasoning and the evidence's relevance.  *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67–68 (Fed. Cir. 2012) (disclosure of total company revenues relating to infringing product impermissible when done to advance an "impermissible" use of the entire market value rule).  If relevant, such evidence can be admissible.  Here, SASI's corporate revenues are relevant. For instance, comparing SASI's worldwide revenues to the total market size will demonstrate the windfall to SASI should this litigation destroy its only market competitor, WPL.  This is relevant to show SASI's motivations, the veracity of its claims, and the potential bias of its employee-witnesses.  Likewise, with respect to SASI's CEO Mr. Goodnight, his wealth (in particular, his majority stake in SASI) is relevant to show his direct pecuniary interest in the outcome of this case. Such an interest would be a potential motive to give biased testimony, rendering the evidence admissible. *U.S. v. Thorn*, 917 F.2d 170, 176 (5th Cir. 1990) (noting that an exception to the prohibition against using extrinsic evidence to attack a witness's credibility exists where the evidence "tends to show bias or motive for the witness to testify untruthfully.").  SASI has also failed to show that this evidence is likely to result in irreparable prejudice to SASI.  *See* Dkt. 258.  Accordingly, SASI's MIL 3 should be denied.

## IV.    SAS MIL 4

SASI's argument assumes that SAS 76 and the current asserted versions of SAS software are so different that SAS 76 is irrelevant.  This is a false assumption.  As WPL's expert Dr. Jones

---

[1] *Id.* (citing *Batlemento v. Dove Fountain, Inc.*, 593 So.2d 234, 241 (Fla. 5th Dist.Ct.App. 1991));
W. E. Shipley, Annotation, *Counsel's Appeal in Civil Case to Wealth or Poverty of Litigants as Ground for Mistrial, New Trial, or Reversal*, 32 A.L.R.2d 9, § 1, at 1 (1952).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

has opined, the same programming language elements that SASI asserts as "input formats" in this case (e.g., PROCS, statements, attributes, options, etc.) were present in SAS 76 (a public domain work that SASI fails to account for in its infringement allegations). *See* Dkt. 272 at 9-10; Dkt. 307 at 12-13. Multiple PROCS are identically named between SAS 76 and the currently asserted SAS software. *See id.* That the ***source code implementation*** of these elements has changed does not bear on SASI's copyright claims in this case because SASI has already conceded that it is not asserting copying of source code. Moreover, SASI has no expert testimony analyzing or comparing the differences in "input formats" and "output designs"—the things SASI claims are infringed—as between SAS 76 and the asserted SAS software. Its attorney argument cannot carry the day to establish some alleged irrelevance.

SASI's citation to *Ford Motor Co. v. Versata Software, Inc.* is misleading. *See* 316 F. Supp. 3d 925, 930-31 (N.D. Tex. 2017).[2] The snippet quoted by SASI is actually just attorney argument restated in the opinion. *See id.* Moreover, the court in *Ford Motor* did not find that all deposition transcripts from prior litigations were irrelevant. *See id.* at 941-42. Rather, it modified a subpoena to include the production of older expert reports and deposition transcripts that had to do with topics relevant to the subject matter of the claims and defenses in that case. *See id.* Here, Mr. Barr's prior testimony relates to the SAS language and SAS 76, both highly relevant to WPL's copyright defenses. It is plainly not prejudicial for the jury to hear testimony about the development of the SAS Language from the person that conceived it.

The age of Mr. Barr's testimony is no reason to exclude it. If anything, Mr. Barr's sworn testimony from 1983 is more trustworthy in terms of closeness in time to the precipitating and

---

[2] For the Court's convenience, WPL notes that SASI cites "31**5** F. Supp. 3d 925." The correct citation to the *Ford Motor* case is "31**6** F. Supp. 3d 925."

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

relevant events surrounding the founding of SASI, the development of the SAS Language, and the development and operation of SAS 76.[3]  Additionally, Mr. Barr reaffirmed his 1983 deposition testimony in his 2014 affidavit.  *See* Dkt. No. 272-8 at ¶ 4.  Moreover, SASI attended Mr. Barr's deposition and had opportunity and motive to develop testimony at that deposition.  *See* Fed. R. Evid. 804(b)(1).  Both the *S&H* case and this case involved issues relating to the nature of the SAS Language and SAS 76.  Also, even if hearsay exceptions under FRE 803 or 804 did not apply, Mr. Barr's testimony would be admissible under FRE 807's residual hearsay exception.  In particular, Mr. Barr's testimony is supported by sufficient guarantees of trustworthiness at least because his testimony was taken under oath and was also reaffirmed in a 2014 affidavit.  *See* Fed. R. Evid. 807(a).  And Mr. Barr's testimony about the development of the SAS language and SAS 76 is more probative than other evidence that can be obtained through reasonable efforts because Mr. Barr conceived of the SAS language.  *See* Fed. R. Evid. 807(a).  Also, many other witnesses from the same time period, like SASI's CEO Dr. Goodnight, are interested parties.[4]

## V.     SAS MIL 5

SASI's fifth motion *in limine* requests that WPL "be barred from adducing *any* evidence of copyright misuse at trial."  Dkt. 377 at 5 (emphasis added).  SASI's motion reads like a motion

---

[3] *Cf., e.g.*, *The Richards Group, Inc. v. Brock*, 3:06-CV-0799-D, 2008 WL 2787899, at *5 (N.D. Tex. July 18, 2008) ("Although Brock testified at trial that he was mistaken in describing the BMI account as the only account that BMI owned as of January 2006, the court finds to be more credible his deposition testimony, which was given closer in time to the events in question and with less opportunity for revision as Brock became aware of the potential effect that his testimony might have on the merits of this lawsuit."); *Cliffstar Corp. v. Alpine Foods, LLC*, 09-CV-00690-JJM, 2016 WL 2640342, at *1 (W.D.N.Y. May 10, 2016) ("Although Mr. Jensen testified at trial that his deposition testimony was mistaken, I credit his deposition testimony, as it was closer in time to the event.") (internal citation omitted); *Nat'l Geographic Soc. v. Int'l Media Associates, Inc.*, CIV. A. 89-1200, 1992 WL 233823, at *3 (D.D.C. Aug. 31, 1992) (same).

[4] Also, by the time Mr. Barr's deposition was taken in 1983, the Copyright Act of 1976 had been law for the better part of a decade, and the CONTU report had already been available for half a decade. So, this point from SASI is uncompelling.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

to strike expert testimony. *Id.* (arguing supposed "untimeliness" of "only" discussing the issue of copyright misuse in an expert rebuttal report). The Court's deadline to file expert-related challenges was April 27, 2020. Dkt. 258. SASI did not raise this issue then, and it should not be permitted to strike relevant evidence through an improper *in limine* motion.[5]

That aside, SASI's arguments are misplaced. There is no requirement that a party support this defense with expert testimony at all, let alone through a *burden* expert report. *See, e.g.*, *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 793–94 (5th Cir. 1999) (terms of a licensing agreement alone were sufficient to support a reasonable jury's finding of copyright misuse). If the evidence to be presented refutes the subject matter of SASI's expert witness testimony, it is admissible, regardless if it *could* have been used to bolster the affirmative defense. *Hellman-Blumberg v. University of the Pacific*, 2013 WL 3422699, at *5 (E. D. Cal. July 8, 2013).

## VI.    SAS MIL 6

SASI seeks exclusion of all evidence supporting an essential element of WPL's antitrust counterclaim. This is a *Daubert* motion (or a summary judgment motion) masquerading as a motion *in limine*.[6] SASI does not even attempt to address how this evidence is unduly prejudicial, or if so, how such prejudice could not be cured by an instruction. This is an improper issue on which to grant *in limine* relief and MIL 6 should be denied.

## VII.    SAS MIL 7

SASI is trying to rewrite years of its own reference to the "SAS language." SASI wants to

---

[5] *See, e.g.*, Ex. F (*Fractus, S.A., v. AT&T Mobility LLC,* No. 2:18-CV-135-JRG (lead case), Hr'g Tr. (09/19/2019)) at 63:11-14 (Court explaining that it "has routinely pushed back against the use of limine practice as a backdoor means to raise what's proper as a motion to strike or a Daubert motion."); 79:15-22 (Court explaining that the it was "not going to grant any Daubert motions or motions to strike in the guise of a motion in limine that should have been raised with the Court and given full notice to the other party").

[6] *See supra* note 5.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

pretend that its "input formats" and "output designs" are something different.  They are not—this is just SASI's litigation-speak to avoid calling SAS a programming language.  T he testimony SASI seeks to exclude is relevant to at least the issues of copyrightability (this testimony demonstrates the functional nature of the SAS programming language and relates to the contributions of the SAS software as compared to the contributions of the users' programs written in the free-to-use SAS language), WPL's Sherman Act counterclaims, and WPL's Lanham Act counterclaim.  *See* Dkt. 168 at 63-76.  It also goes to SASI's credibility, as it demonstrates the shifting positions taken by SASI throughout the years.  Additionally, for the first time in this case, SASI contends that the SAS Language is not free to use.  *See* Dkt. 306 at 4-5.  This goes directly to the question of WPL's state of mind to rebut SASI's willfulness allegations.   WPL is entitled to present these inconsistencies to the jury to judge SASI's credibility, the genuineness of its positions, and to rebut charges of willfulness.  It would be prejudicial to permit SASI's litigation-inspired positions about the SAS Language to go unchallenged.  Finally, these types of statements made by SASI and its representatives are also admissible against SASI as a party admission. *See* FED. R. EVID. 801(d)(2).

## VIII.   SAS MIL 8

SASI's request to preclude WPL's use of "pejorative language" is an attempt to prohibit WPL from effectively presenting its defenses and counterclaims.  Many of the "pejoratives" SASI seeks to exclude are just descriptions of the behavior supporting WPL's case.  Further, terms such as "sow fear through litigation" are not pejoratives; they accurately reflect what the evidence in this case shows— ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████  Descriptions of SASI's litigation tactics are highly relevant to WPL's counterclaims,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

and SASI should not be able to sweep under the rug conduct that casts SASI in an unfavorable light when it is of such high probative value. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial, but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.") (emphasis added).

The cases cited by SASI are inapposite. In those cases, the plaintiffs sought to avoid being referred to as pejoratives such as "patent trolls." No analogous pejorative has been identified here. WPL should not be prohibited from presenting evidence to the jury that SASI uses litigation as a tactic against competitors, given that this is the subject of multiple counterclaims against SASI and WPL's affirmative defenses including copyright misuse and fair use.[7]

## IX.    SAS MIL 9

The Court should deny SASI's MIL No. 9, which seeks to prevent WPL's damages expert, Mr. Green, from relying on settlement agreements with Defendants from this litigation ████████ ████████████████████████████████████████████████ Despite SASI's reliance on *LaserDynamics* for the proposition that relying on settlement agreements is "questionable," "[t]here is no *per se* rule barring reference to settlements simply because they arise from litigation." Dkt. 377 at 8; *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1336 (Fed. Cir. 2015); *see also, e.g.*, *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618 at *16-*17 (E.D. Tex. June 20, 2017) (allowing expert to use settlement agreement for reasonable royalty analysis); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330-31 (Fed. Cir. 2014) (same). "[T]he fact that a license is not perfectly analogous

---

[7] In *Mobile Telecommunications*, which SASI cites for its exclusion of the terms "aggressive or abusive litigation," there were no counterclaims or defenses alleging anticompetitive behavior.

█████████████████████████████████████████████████

generally goes to the weight of the evidence, not its admissibility," and SASI does not even complain that Mr. Green failed to account for the differences between these agreements and the hypothetical negotiation. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

SASI does not explain how settlement agreements concerning the very copyrights and patents at issue here are not even *relevant*, other than claiming that parties enter into settlements for other reasons than value.  Dkt. 377 at 9.  But SASI is in full control of the discovery that would show the "other reasons" they have allegedly entered into these agreements and could have provided it if it existed.  Even SASI's own damages expert, Mr. Vellturo, considered the Angoss agreement which SASI now attempts to prevent Mr. Green from relying upon.[8]

Additionally, it is not unduly prejudicial to allow Mr. Green to rely on these licenses.  This does not invite a mini-trial on the differences between WPL and settled defendants, but merely requires the routine explanation of the differences between the agreements and the hypothetical negotiation to properly "allow[] the jury to fully evaluate the relevance of the licenses." *VirnetX*, 767 F.3d at 1330.  That the settled customer defendants received ███████████ in their agreements ████████████████████████ from the hypothetical negotiation does not contradict Mr. Green's conclusion that these agreements are inconsistent with SASI's "assertion that there is substantial value associated with its asserted copyrights or patents."  Dkt. 377 at 8-9.  It is not "unfair" that SASI chose to ███████████████████████████████

---

[8] Considering that Mr. Vellturo considered the Angoss agreement ████████████████ ████████████████████████████ it is curious that SASI claims these agreements are not "licenses."  Dkt. 377 at 9.  SASI has provided no caselaw suggesting that ████████████████ cannot bear on a reasonable royalty. *See, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) ("…it indeed seems unlikely that the amount paid for the release was less than would have been paid under a license.").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

███████████████████████████; it is merely a fact.[9]

## X.    SAS MIL 10

SASI's failure to take discovery on now-dismissed parties is relevant. SASI has accused WPL of indirect patent infringement, but lacks evidence showing the necessary underlying direct infringement. After failing to take discovery on the alleged direct infringers that it sued in this case, SASI should not be insulated from that decision if it is pursuing indirect infringement claims against WPL at trial.  In other words, the amount of discovery SASI conducted with settled parties is not "an entirely separate question," Dkt. 377 at 10, because SASI's decision not to elicit proof of direct infringement raises the question whether there is any direct infringement. *See Kryptek Outdoor Group, LLC v. Salt Armour, Inc.*, 2016 WL 3460774, at *2 (E. D. Tex. Feb. 22, 2016) ("failure to establish" infringement "fatal" to a claim of induced infringement).[10]

SASI's decision to ignore all co-defendants is also relevant to WPL's counterclaims alleging anticompetitive behavior. ██████████████████████████████████████
█████████████████████████████  *See, e.g.*, Dkt. 263-7 at 2.2; Dkt. 377-4 at 2.  Simply put, SASI filed lawsuits against many of WPL's customers and resellers, almost completely ignored them throughout the case, and dismissed them once they agreed to ████████
██████████████████████████  This evidence is significantly probative to WPL's

---

[9] By citing a case where the Court explicitly did not address whether Rule 408 bars admission of settlement agreements, SASI has presented no reason why these agreements should be excluded under Rule 408.  Dkt. 377 at 9.  These are *actual agreements*, not offers or negotiations of compromise.  Fed. R. Evid. 408; *see, e.g.*, *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) (approving the exclusion of "offers in compromise made in contemplation of infringement litigation").

[10] The agreements which SASI executed with the now-settled parties include provisions obligating the settled parties to provide SASI with litigation assistance (authentication of evidence, etc.) upon request. Dkt. 263-7 at 5.3; Dkt. 377-4 at 2. The same agreements preclude those parties from providing any such assistance to WPL. Dkt. 263-7 at 4.4; Dkt. 377-44 at 2. Given this asymmetry, SASI's failure to discover evidence also raises questions as to the veracity of its claims.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

anticompetition claims.  *See, e.g.*, *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) (exclusion of relevant evidence under Rule 403 "is an extraordinary measure that should be used sparingly.").

### XI.    SAS MIL 11

SASI offers no explanation why MIL 11 is a proper motion *in limine* and identifies no uncurable prejudice.  Insofar as this issue merits consideration at all, it could easily be addressed at the pretrial phase without wasting this Court's time through an improper motion *in limine.*

### XII.    SAS MIL 12

WPL agrees that it would be improper to raise arguments regarding either potential price increases or negative economic impacts that might result from a verdict in SASI's favor, and WPL will not make such arguments. However, other potential consequences of the litigation directly pertain to issues in controversy and should not be excluded.  WPL is SASI's only competitor in the market for SAS Language compiler software.  The potential for SASI's litigation campaign to put WPL out of business is relevant to WPL's counterclaims, its affirmative defense of copyright misuse, and whether SASI's claims themselves have merit (or are simply a means to cement an unlawful monopoly).  Additionally, WPL's ███████████████████████████████

███████████████████ *See* Ex. D at 45:1–10 (██████████████████

████████████████████████████████████████████████████

██████████████████████, 57:12–25, 58:1–16.  WPL has moved to exclude Mr. Vellturo's testimony.  Dkt. 269.  If that motion is denied, SASI's MIL 12 would be even more inappropriate because it would prohibit entry of evidence that SASI has itself put forward and would require WPL to approach before cross-examining Dr. Vellturo on his opinions.  For these reasons, the motion should be denied.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## XIII.   SAS MIL 13

When assessing "whether a patent claim is invalid as obvious under § 103," all four *Graham* factors—scope and content of the prior art; differences between the claimed invention and the prior art; level of skill in the art; and ***evidence of secondary considerations***—must be considered.  *Apple Inc. v. Samsung Elecs. Co*., 839 F.3d 1034, 1048 (Fed. Cir. 2016); *see also Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). "The party challenging the validity of a patent ***always*** has the burden of persuading the trial court of invalidity." *Prometheus Labs., Inc. v. Roxane Labs., Inc*., 805 F.3d 1092, 1101 (Fed. Cir. 2015) (emphasis added).

SASI cites no applicable case law supporting its MIL 13.  Because WPL bears the burden of proving invalidity, the Court should not limit its ability to present relevant invalidity evidence. All evidence against secondary considerations is highly relevant, aids the jury in deciding invalidity, and is necessary for WPL to meet its ultimate burden of persuasion.

## XIV.   SAS MIL 14

As a threshold matter, SAS's MIL 14 is too broad, unbounded, and could be cured by an appropriate judicial instruction to the jury if necessary.  Dkt. 258.  WPL does not intend to mix copyright and patent issues, but SASI's corporate representative testimony on copying is relevant and should not be shielded from the jury.  Moreover, SASI has in no way indicated how "testimony elicited from the inventors" or any of SASI's interrogatory responses relevant to copying is prejudicial to SASI if those same facts apply to WPL's copyright defenses, let alone how its probative value is substantially outweighed by undue prejudice (if any) and any purported jury confusion.

## XV.   SAS MIL 15

WPL understands that the Court wants to incentivize parties to streamline their case before

trial by excluding reference to dropped claims.[11]  But the policy behind this rationale is completely undermined where a plaintiff brings expansive yet objectively weak assertions, refuses to narrow its case, and forces the defendant to litigate all claims until the eve of trial.  SASI originally asserted over 2,000 copyrights.  When asked to narrow its assertions to something manageable—or else identify its theories as to each—SASI refused.  WPL was forced to file two motions to compel SASI's copyright allegations.  Similarly, SASI asserted hundreds of patent claims spanning four patents in this case.  WPL repeatedly offered mutual claim and prior art narrowing proposals, which SASI rejected.  This required WPL to prepare witnesses, take discovery and depositions, and submit expert opinions on a labyrinth of patent assertions throughout the case, even after SASI was informed and had internally determined that certain of its patent assertions were baseless.  *See* Ex. E (McCarty Ltr to Millen regarding '996 Patent).  WPL's counterclaims allege that SASI is pursuing this litigation for improper, anticompetitive purposes. The fact that SASI insisted on maintaining its expansive case—despite knowing of its objective weaknesses—is integral to WPL's counterclaims, and SASI's litigation tactics concerning those assertions are highly relevant.

### XVI.   SAS MIL 16

Evidence that WPL began developing the allegedly infringing features before the patents-

---

[11] While this Court routinely limits evidence of a party's case-narrowing, such orders are often not absolute. *See Huawei Techs Co. Ltd. V. T-Mobile U.S., Inc.*, Case No. 2:16-cv-00052-JRG-RSP, slip op. at 7 (E. D. Tex. Sept. 29, 2017) ("The motion is otherwise denied. . . . [W]hile reference to a party's decision to narrow its case is typically precluded under Rule 403, the patents dropped in this action are integral to T-Mobile and Intervenors' response . . . ."); *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 2:14-CV-203-JRG-RSP, 2015 WL 13617214, at *1 (E.D. Tex. Oct. 28, 2015) ("This order does not preclude Samsung from using prior claims for a purpose other than to show that ZiiLabs has dismissed, abandoned, or dropped previously asserted claims."). *See also Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-37-RWS-RSP, ECF. 450 at 2 (E.D. Tex. July 25, 2017) (Granting MIL as to "evidence or argument that the *fact* that a claim or cause of action has been dropped or dismissed suggests that a product is not covered by the claims or that a third party does not infringe[.]) (emphasis in original).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

in-suit were issued remains relevant even if WPL does not contend that WPS itself is prior art, as it serves as "evidence of the level of skill in the art" and "constitutes objective evidence that persons of ordinary skill in the art understood the problem and a solution to that problem." *Regents of University of California v. Broad Institute, Inc.*, 903 F.3d 1286, 1295–96 (Fed. Cir. 2018).  WPL agrees not to argue that its own products, which pre-dated the issuance of the patents-in-suit, equates to non-infringement or invalidity, but the factual details and testimony concerning when and how it developed its software is critical to explain WPL's software development process. At a minimum, SASI's MIL 16 should be denied because SASI has not shown how such speculative prejudice could not be cured by a simple instruction.

### XVII.  SAS MIL 17

MIL 17 should be denied.  First, it is too broad. It asks the Court to exclude evidence of SASI's own interrogatory responses.  Interrogatory responses are admissions of a party-opponent and admissible. FRE 801; *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1098 (5th Cir. 1997).  Second, the "sufficiency" of SASI's copyright discovery responses is highly relevant and admissible.  Through numerous interrogatories, SASI refused to disclose its copyright allegations to WPL in this case.  If SASI's copyright claims survive summary judgment, WPL and the Court will learn what copyrights are being asserted, and SASI's theories of infringement, for the first time during trial.  SASI's refusal to disclose this fundamentally relevant information during discovery is directly relevant to SASI's veracity.  *McCann v. Midland Cty. Educ. Servs. Agency*, No. 06-13150-BC, 2007 WL 4455099, at *1 (E.D. Mich. Dec. 14, 2007) (Denying similar MIL, finding delay in producing discovery relevant to the Plaintiff's veracity).  SASI's interrogatory responses are also key to testing its copyright infringement theories.

Concerning Dr. Jones's analysis of SASI's patent infringement contentions, this testimony

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

is highly relevant to indirect infringement.  It is well-established that to indirectly infringe a patent, an accused infringer must have knowledge of the patent and knowledge of the alleged infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015).  Through three rounds of infringement contentions in this case, SASI accused one set of features of infringing the '519 Patent.  Then, for the first time in its expert report, it accused an entirely different feature set of infringing the '519 Patent (and withdrew its contentions of infringement as to the earlier identified feature set).  Because SASI did not disclose to WPL—and actually misled WPL about— the alleged infringement, indirect infringement liability requiring knowledge of the alleged infringement begins on the date SASI's expert report was served.  Dr. Jones's opinions concerning this change of infringement theories are highly relevant to indirect infringement of the '519 Patent.

## XVIII. SAS MIL 18

SASI's motion *in limine* should be denied for the same reasons its motion to exclude Mr. Robinson's testimony should be denied.  Further, its motion was premised on Rule 702, but its motion *in limine* is more expansive in that it would cover testimony governed by Rule 701.  SASI has presented no argument (in either motion) as to why the Court should exclude any aspect of Mr. Robinson's testimony under Rule 701.  The closest SASI has come was its (mistaken) argument that Rule 702 applies to every aspect of Mr. Robinson's disclosures, rather than Rule 701.  And not only has SASI failed to provide any reason why Mr. Robinson's testimony somehow violates Rule 701, it has presented no argument why those aspects of Mr. Robinson's disclosures are unduly prejudicial and necessitate a ruling *in limine*.  Even if the Court did not deny SASI's motion *in limine* entirely (which it should), the Court should, at a minimum, deny SASI's motion with respect to Mr. Robinson's Rule 701 testimony.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated: June 29, 2020.                    Respectfully submitted,

                                         *Bradley W. Caldwell*
                                         Bradley W. Caldwell
                                         Texas Bar No. 24040630
                                         Email: bcaldwell@caldwellcc.com
                                         John Austin Curry
                                         Texas Bar No. 24059636
                                         Email: acurry@caldwellcc.com
                                         John F. Summers
                                         Texas State Bar No. 24079417
                                         Email: jsummers@caldwellcc.com
                                         Warren J. McCarty, III
                                         Texas State Bar No. 24107857
                                         Email: wmccarty@caldwellcc.com
                                         Caldwell Cassady Curry P.C.
                                         2121 N. Pearl St., Suite 1200
                                         Dallas, Texas 75201
                                         Telephone: (214) 888-4848
                                         Facsimile: (214) 888-4849

                                         ATTORNEYS FOR DEFENDANTS
                                         WORLD PROGRAMMING LIMITED,
                                         LUMINEX SOFTWARE, INC., YUM!
                                         BRANDS, INC., PIZZA HUT, INC.
                                         AND SHAW INDUSTRIES GROUP,
                                         INC.


                                         Charles Everingham IV
                                         State Bar No. 00787447
                                         ce@wsfirm.com
                                         T. John "Johnny" Ward Jr.
                                         Texas Bar No. 00794818
                                         jw@wsfirm.com
                                         Claire Henry
                                         Texas Bar No. 24053063
                                         claire@wsfirm.com
                                         Andrea L. Fair
                                         Texas Bar No. 24078488
                                         andrea@wsfirm.com
                                         **WARD, SMITH & HILL, PLLC**
                                         P.O. Box 1231
                                         Longview, TX 75606
                                         903-757-6400
                                         903-757-2323 (Facsimile)

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

ATTORNEYS FOR DEFENDANTS
WORLD PROGRAMMING LIMITED

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on counsel of record via email on June 29, 2020.

/s/ *Bradley W. Caldwell*
Bradley W. Caldwell

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order in this case.

/s/ *Bradley W. Caldwell*
Bradley W. Caldwell