REDACTED AND PUBLICLY FILED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SAS INSTITUTE INC., <br><br> Plaintiff, <br><br> vs. <br><br> WORLD PROGRAMMING LIMITED *et al.*, <br><br> Defendants. | Case 2:18-cv-00295-JRG |

## SAS INSTITUTE INC.'S RESPONSE IN OPPOSITION TO WORLD PROGRAMMING LIMITED'S MOTIONS IN LIMINE

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

I.   Evidence Concerning the Previous Judgment Against WPL Should Not Be Excluded. ..... 2

    A.   WPL's Actions Relating to Evasion of the Previous Judgment Necessitated this Action. ......................................................................................................................... 2

    B.   The Implications of WPL's Fair Use Defense. ........................................................... 5

    C.   The Implications of WPL's Counterclaims. ............................................................... 7

II.  Theories of Patent Infringement Not Disclosed in SAS's Operative Infringement Contentions. ......................................................................................................................... 9

III. Evidence that WPL Copied the SAS System and Distributed that Copy in the United States is Relevant and Admissible. ................................................................................................ 11

IV.  References to Enforcement Proceedings Against WPL Should Not Be Excluded. ........... 13

V.   Reference to Inter Partes Review Petitions and Proceedings. ........................................... 13

VI.  Lack of Consequences from a Patent Infringement Filing ................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Elekta Inc. v. Varian Med. Sys., Inc.*,
  No. IPR 2015-01401, 2015 WL 9898990 (PTAB Dec. 31, 2015) ......................................... 13

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
  850 F.3d 785 (5th Cir. 2017) ............................................................................................. 11

*Glob. Sessions LP v. Travelocity.com LP*,
  No. 6:10-cv-671, 2012 WL 1903903 (E.D. Tex. May 25, 2012) ......................................... 10

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ....................................................................................................... 6, 7

*Litecubes, LLC v. N. Light Prod., Inc.*,
  523 F.3d 1353 (Fed. Cir. 2008) ......................................................................................... 11

*Nunez v Caribbean Int'l News Corp.*,
  235 F.3d 18 (1st Cir. 2000) ................................................................................................. 7

*Peteski Productions, Inc. v. Rothman*,
  264 F. Supp. 3d 731 (E.D. Tex. 2017) ................................................................................. 6

*SAS Inst. Inc. v. World Programing Ltd.*,
  952 F.3d 513 (4th Cir. 2020) ............................................................................... 3, 4, 5, 13

*SAS Inst. Inc. v. World Programming Ltd.*,
  64 F. Supp. 3d 755 (E.D.N.C. 2014), *aff'd in pertinent part*, 874 F.3d 370 (4th Cir. 2017) ..... 7

*SAS Inst. Inc. v. World Programming Ltd.*,
  874 F.3d 370 (4th Cir. 2017) ..................................................................................... passim

*SAS Inst., Inc. v. World Programming Ltd.*,
  No. 5:10-cv-00025-FL, 2016 WL 3435196 (E.D.N.C. June 17, 2016) .................................. 6

**Statutes**

35 U.S.C. § 284 ........................................................................................................................ 15

Plaintiff SAS Institute Inc. ("SAS") respectfully submits the following Opposition to the motions *in limine* of defendant World Programming Ltd. ("WPL") (ECF No. 378, the "Mots.").

As discussed below, WPL's Motions (at 1-2) give a remarkably incomplete and therefore misleading account of the previous litigation between WPL and SAS.  In addition, WPL's account in its Motions *in limine* fails to even mention the fact that it has asserted an affirmative defense to copyright infringement – fair use – which necessarily implicates issues concerning the previous litigation, and that it has filed a series of Counterclaims which do the same.

In describing the previous litigation, WPL characterizes this action as the "third consecutive lawsuit" between the two companies (Mots. at 1), in an effort to portray SAS, as alleged in WPL's Counterclaims, as engaging in "extreme litigiousness to oppress World Programming."  (ECF No. 134 (Countercls.) at ¶ 192.)  So long as WPL persists with those allegations, there is simply no basis for excluding, as WPL seeks in its Motions *in limine*, "any reference to the previous North Carolina litigation and appeals concerning those claims [and] the verdict, and the injunction" against WPL.  (Mots. at 2.)  A complete account of the previous litigation demonstrates the relevance of that evidence in this case.

WPL refers to an action filed by SAS in 2009 in the U.K. as "asserting the same claims of copyright infringement that [SAS] asserts here" (Mots. at 1), a contention, as shown below, which was categorically rejected by the Fourth Circuit when previously advanced by WPL because of differences between U.S. and U.K. law.  WPL then claims with respect the parties' earlier action in North Carolina federal court that "WPL won the copyright case, again" (*id.*), even though, as discussed below, the Fourth Circuit vacated WPL's "victory."  WPL concedes that a "trial was held in 2015" on SAS's other claims (*id.*), but neglects to report the results of that trial – a $79 million fraud and unfair trade practices judgment against WPL – other than to say that "[s]ince

that time, much has been litigated concerning the judgment, the damages verdict, and [SAS's] requested injunction." (*Id.*) WPL then goes on to contend that it has "successfully defended itself against [SAS's] repeat claim" (*id.*), and that "evidence of [SAS's] prior litigation victories" – nowhere described by WPL – is "irrelevant" and "prejudicial" (*Id.* at 2.)

In essence, WPL wants the jury to hear about a foreign court's ruling on copyright, but not the Fourth Circuit's rejection of that foreign ruling as irrelevant under U.S. law. WPL wants the jury to hear about a district court's copyright ruling, but not the fact that the ruling was vacated. WPL wants the jury to hear about fair use, which presupposes good faith and fair dealing, but not the fact that WPL committed fraud in obtaining the works it copied. And WPL wants malign SAS's litigation strategy in front of the jury while blocking the jury from learning about the complete picture of WPL's disrespect for U.S. law and its evasion of the prior judgment.

I. **Evidence Concerning the Previous Judgment Against WPL Should Not Be Excluded.**

   A. **WPL's Actions Relating to Evasion of the Previous Judgment Necessitated this Action.**

The true procedural history of the parties' dispute is far different than represented by WPL. The following statement is entirely based on the opinions of the Fourth Circuit in WPL's unsuccessful appeals to that court.

In "September 2009 and January 2010, respectively, SAS filed lawsuits against WPL in the U.K. and in the Eastern District of North Carolina." *SAS Inst. Inc. v. World Programming Ltd.*, 874 F.3d 370, 376 (4th Cir. 2017) ("*SAS I*"). This occurred after "[s]everal former SAS customers . . . replaced their SAS System software with WPS." *Id.* In "the U.K. litigation, SAS asserted claims for copyright infringement and breach of the Learning Edition license agreement," *id.*, which was "a lower-cost version of the SAS System marketed as an educational tool to enable students to learn the SAS language." *Id.* at 375-76. The U.S. action also maintained those claims,

2

"but additionally asserted claims for fraudulent inducement… and violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA)." *Id*. at 376.

SAS was largely unsuccessful in the U.K. litigation because the "U.K. High Court concluded that the case turned on interpretation of several provisions of E.U. law, including Council Directive 91/250/EEC and Directive 2001/29/EC (collectively 'E.U. Software Directive'), both relating to the legal protection of computer programs." *SAS I*, 874 F.3d at 376.  The U.K. courts ultimately rejected SAS's claims because WPL "reproduced only aspects of the [SAS System] that are not protected by *U.K. copyright law*." *SAS I*, 874 F.3d at 377 (emphasis added). That decision rested on "several provisions" of the E.U. Software Directive and no U.K. court purported to decide whether WPL violated U.S. copyright law. *See id*. at 376.

The U.S. action proceeded with summary judgment granted to SAS "on the question of liability for breach of the license agreement" of the SAS Learning Edition software. *SAS Inst. I*, 874 F.3d at 379.  The court ultimately found that "[d]evelopers at WPL ran SAS programs through both the Learning Edition and WPS, and then modified WPS's code to make the two achieve more similar outputs." *Id*. at 376.  As the Fourth Circuit put it most recently, "[w]hen WPL decided to offer a competing product, it took a short cut." *SAS Inst. Inc. v. World Programing Ltd.*, 952 F.3d 513, 530 (4th Cir. 2020) ("*SAS II*").  WPL, "[i]n violation of a license agreement," "reverse engineered a SAS product to speed development of its own product." *Id*.  As the court held, "[t]his is not the sort of 'innovation' or 'competition' encouraged by U.S. law." *Id*.

Prior to trial (and indeed prior even to expert testimony), the North Carolina district court had "granted summary judgment to WPL on SAS's claims for copyright infringement of the SAS System." *SAS I*, 874 F.3d at 377.  The Court of Appeals, however, later determined that the district

3

court's copyright ruling was moot and therefore determined "to vacate the moot aspects of the lower court's judgment." *Id*. at 390.

The Court of Appeals also rejected WPL's assertion of any preclusive effect of the U.K. copyright ruling, holding that the "U.S. suit alleged violations of U.S. copyright, which WPL has not established could have been litigated in U.K. courts." *SAS I*, 874 F.3d at 379. "Similarly," the "U.S. suit focused only on sales of WPS within the United States, and WPL has not established that SAS could have recovered for these sales in the U.K." *Id*. Therefore, "[t]he copyright claims" which "were based on the copyright laws of different countries and on different sets of sales transactions, were not barred by res judicata." *Id*. In the words of the Fourth Circuit, "the United States has taken an approach that is more protective of intellectual property" than the U.K. *Id*.

Ultimately, "[a] federal jury found WPL liable for this behavior in federal district court and set damages based solely on the breach's impact in the U.S." *SAS II*, 952 F.3d at 531. The North Carolina jury "found WPL guilty of both fraudulent inducement and violating the UDTPA" and "awarded SAS compensatory damages of $26.4 million, which were trebled under the UDTPA, resulting in total damages of $79.1 million." *Id*. at 518-19.

Since that U.S. judgment was rendered, WPL, "a foreign company doing business in the United States," *SAS II*, 952 F.3d at 521, "has tried to evade, in every way and at every turn, using any revenues for satisfaction of the U.S. judgment." *Id*. In fact, WPL has made no voluntary payments on the judgment, and, "[i]nstead of making a good-faith effort to pay up, WPL has repeatedly engaged in collateral attacks on the district court's judgment by calling upon the U.K. court system. . . . [and t]o date, WPL has only paid a small fraction of the judgment, and it is attempting to undo even that much." *Id*.

4

Those "actions by WPL" and its "attempts to frustrate the court's judgment" *SAS II*, 952 F.3d at 525-26, have "shown a lack of respect for American courts and American law." *Id.* at 525. As the Court of Appeals stated:

> a party who when faced with a lawful judgment under North Carolina law rendered in the Eastern District of North Carolina addressing the wrongful actions of WPL in North Carolina, and more broadly the United States, determined to dig in and use every possible means to avoid paying the judgment.

*Id.* at 528. The Court of Appeals also stated that "WPL could have proceeded differently at many points," for example, by developing "its product without violating SAS's license agreement" or "declin[ing] to enter the U.S. market." *Id.* at 531. What WPL could not do, however was "participate in the U.S. market, violate U.S. law, and expect to avoid the consequences of its conduct." *Id.* Thus, the Court of Appeals affirmed an injunction against WPL forbidding it from licensing its software "to any new customer for use within the United States." *See id.* at 531.

This action – which WPL characterizes in its Counterclaims as "extreme litigiousness" on the part of SAS (ECF No. 134 (Countercls.) at ¶ 192) – seeks to vindicate SAS's intellectual property rights in the face of WPL's efforts to frustrate justice in the U.S. Despite WPL's contention that efforts to paint it as "disrespecting United States law" could not be "further from the truth" (Mots. at 2), that is precisely what the Fourth Circuit found. 952 F.3d at 525 ("actions by WPL have shown a lack of respect for American courts and American law"). As a result, SAS was required to bring this third action against WPL and those facts are therefore relevant.

### B. The Implications of WPL's Fair Use Defense.

In its Amended Answer, WPL states as its Seventeenth Defense that "SAS Institute's copyright claims are barred by the doctrine of fair use." (ECF No. 134 ("Am. Answer"), at ¶ 343.) That assertion of a fair use defense puts WPL's prior conduct squarely at issue. As the Supreme Court has held, "[f]air use presupposes good faith and fair dealing." *Harper & Row Publishers,*

5

*Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (internal quotation omitted). While not "dispositive of fair use," bad faith does have "relevance" and an "appropriate weight" must be given to it in considering the availability of a fair use defense. *See Peteski Productions, Inc. v. Rothman*, 264 F. Supp. 3d 731, 735-36 (E.D. Tex. 2017). As this Court recognized in *Rothman*, under the first fair-use factor – "the purpose and character of the use," *id*. at 734 – "courts often consider the culpability of a defendant's conduct in acquiring a work." *Id*. at 736.

Here, as found by the North Carolina district court following a three-week jury trial, WPL "misrepresented its intent" and "used underhanded and fraudulent methods to acquire" numerous copies of the SAS System software from SAS which WPL then used to produce by reverse engineering its own WPS copycat product – a product that, the district court found, could not have been created "but for" WPL's fraud and breach of contract. *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-cv-00025-FL, 2016 WL 3435196, at *3-4, *6 (E.D.N.C. June 17, 2016) (rejecting WPL's request to overturn the jury verdict for fraud and finding that SAS "presented *considerable evidence*" that WPL "misrepresented its intent," "took affirmative steps to hide its true intent from SAS representatives," and that WPL "used underhanded and fraudulent methods to acquire Learning Edition licenses and to gain access to SAS software" (emphasis added)). Those facts have been conclusively established against WPL.

By asserting a fair use defense, WPL necessarily puts at issue "conduct by a defendant [that] might weaken a claim to fair use." *Rothman*, 264 F. Supp. 3d at 736. And, as this Court recognized, following *Harper & Row*, that includes distinguishing, on the one hand, between a "true scholar," and, on the other hand, "a chiseler who infringes a work for personal profit." *Id*.

(quoting *Harper & Row*, 471 U.S. at 563).[1] Thus, "[s]everal other courts have acknowledged that a breach of confidence or deception in acquiring the underlying work should weigh against a finding of fair use." *Id.* (internal quotation omitted). Therefore, the fraud explicitly found in the earlier litigation is clearly relevant to the fair use defense. *See id.* (citing *Nunez v Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) ("An unlawful acquisition of the copyrighted work generally weighs against a finding of fair use ….").)

    C.    **The Implications of WPL's Counterclaims.**

WPL's Counterclaims also necessarily implicate the relevance of the earlier North Carolina litigation and its results. WPL's Counterclaims include claims for violation of the antitrust laws, false advertising laws, and unfair and deceptive trade practices. (*See* Countercls. at ¶¶ 55-165, 182-194.) With respect to its antitrust claim, for example, WPL alleges that an agreement between SAS and former defendant Angoss Software "caused an injury that the antitrust laws were designed to prevent" (*id.* at ¶ 61), "because Angoss agreed with SAS Institute to no longer produce a product competing in that relevant market." (*Id.* at ¶ 71.) That allegation, however, would require a jury to determine which portion of the losses resulting from the prohibition on WPL's competing product, if any, resulted from an allegedly anticompetitive agreement with Angoss and which arises from the operation of the North Carolina court's injunction against WPL "from licensing WPS to any new customer for use within the United States." *SAS II*, 952 F.3d at 531.

WPL's own allegations in its false advertising claim *directly* raise the issue of the North Carolina injunction which it now seeks to exclude *in limine*. For example, WPL alleged that

---

[1] "Chiseler" is defined by Merriam-Webster's online thesaurus as "a dishonest person who uses clever means to cheat others out of something of value." https://www.merriam-webster.com/thesaurus/chiseler. That definition, in turn, is a near-textbook definition of fraud under North Carolina law. *See SAS Inst. Inc. v. World Programming Ltd.*, 64 F. Supp. 3d 755, 780 (E.D.N.C. 2014), *aff'd in pertinent part*, 874 F.3d 370 (4th Cir. 2017).

> an in-house attorney for SAS Institute contacted KeyCorp and informed KeyCorp that World Programming may be enjoined from selling the World Programming System entirely, despite the fact that SAS Institute's North Carolina injunction request concerning breach of contract or copyright infringement had been rejected and a later injunction (now stayed) would have precluded only new customers within the United States.

(Countercls. ¶ 122.)  Again, those allegations, which WPL contends form the basis of its false advertising counterclaim, will necessarily require a jury to consider the nature and results of the prior litigation leading up to the injunction which WPL alleges SAS has mischaracterized.  Indeed, WPL's own allegations regarding "other misleading advertising" (*Id.* at ¶ 129), refers explicitly to the injunction which WPL at the same time seeks to exclude from consideration by the jury. (*Id.* at ¶¶ 130 & 131 ("SAS Institute's subpoenas to a significant number of World Programming customers included reference to a 'WPS Injunction'" and "referenced this 'WPS Injunction' without describing the details of that injunction.")  WPL's own claim necessarily requires examination of the "details of th[e] injunction" and WPL's contention that evidence of "the injunction should be precluded" (Mots. at 2), is self-defeating and ultimately nonsensical.

Similarly, with regard to WPL's unfair trade practices counterclaim, WPL alleges that:

> SAS Institute is using its market position, its superior capitalization, and its extreme litigiousness to oppress World Programming and World Programming's customers, immersing World Programming in endless litigation regardless of the merits and regardless of past decisions on identical or nearly identical issues. SAS Institute uses this litigation as an advertising selling point and the fear of litigation as a means to monopolize the market ….

(Countercls. ¶ 192.)  That allegation makes relevant all of WPL's actions in seeking to avoid the prior U.S. judgment against it and the need for SAS to move forward with this patent and copyright case.  If SAS is going to be charged with "extreme litigiousness" and engaging in "endless litigation regardless of the merits," then WPL has itself put the prior litigation and its merits, as well as WPL's own behavior, directly at issue.  WPL's motion *in limine* therefore must be denied.

That fact is starkly illustrated by WPL's *own designation of deposition testimony* in which it has designated the testimony of SAS witnesses concerning both the prior judgment and the injunction. (*See, e.g.*, Goodnight Dep. at 111:25-112:14 (designating questions and answers about the $79 million North Carolina judgment); Boswell Dep. at 99:16-20 (referencing the finding in the NC judgment that WPL fraudulently licensed the SAS software); 102:8-11 (referencing the injunction from further licensing).)[2]

In other words, WPL, at the same time it is seeking to exclude *in limine* evidence concerning the prior litigation and its outcome, has designated testimony about those issues in support of its Counterclaims. That contradiction – namely that WPL is designating for use as evidence the very evidence it is seeking to exclude – in and of itself, mandates denial of its motion. And, if the Court dismisses WPL's Counterclaims, the evidence is still relevant at least for the purposes of determining the availability of WPL's fair use defense.

## II.  Theories of Patent Infringement Not Disclosed in SAS's Operative Infringement Contentions.

WPL has also moved *in limine* to limit SAS's infringement case to the theories of infringement disclosed in its operative infringement contentions. SAS does not dispute this general principle. Rather, this motion *in limine* is disputed because the parties do not agree on two issues: (1) what constitutes disclosure of a "theory" of infringement, and (2) which infringement contentions are "operative."

As this Court has repeatedly made clear, infringement contentions are intended to place the opposing party on notice, and need not include citations to every scrap of supporting evidence. *Glob. Sessions LP v. Travelocity.com LP*, No. 6:10-cv-671, 2012 WL 1903903, at *1 (E.D. Tex.

---

[2] Referenced documents are attached as exhibits to the Declaration of Pressly M. Millen, filed with this Opposition.

May 25, 2012). Thus, while SAS will properly limit its proofs at trial to the "theories" disclosed in its operative infringement contentions, it should be permitted to proffer additional, consistent evidence cited in the expert reports of its technical expert, Professor Storer.

Second, the parties continue to dispute which amended and/or supplemental infringement contentions are "operative," and what "theories" were disclosed in the operative contentions. For the '519 patent, these disputes are subject to a number of pending motions including: SAS's motion for leave to amend its third contentions (ECF No. 196); WPL's motion to strike SAS's incorporation of an additional graphing procedure released on March 30, 2020 (ECF No. 259), and WPL's motion to strike SAS's expert's patent infringement report (ECF No. 268). Because the Court's rulings on these pending motions will govern the operative theories in the case, WPL's motion *in limine* is an attempt to end-run the outcome of the pending motions and should be denied.

For the '458 patent, WPL's motion surreptitiously only mentions the infringement contentions SAS served in October 2019 and completely ignores SAS's supplemental contentions served on March 5, 2020. The March 2020 supplementation was permissible, without leave of court, in response to the Court's February 5, 2020 claim construction order. Additionally, because WPL did not make available for inspection functioning software for the accused WPS Hub until February 11, 2020, it was entirely proper for SAS's expert to additionally rely on screenshots of the accused product in the exhibits to his March 2, 2020 expert report which were separately re-served on WPL on March 5, 2020 pursuant to P.R. 3-1 and P.R. 3-6. WPL has never challenged the timing or propriety of the March 2020 contentions for the '458 patent. (*See* ECF No. 259 at 1 n. 2 (WPL acknowledging SAS supplemented its infringement contentions for the '458 patent "in response to the Court's claim construction order" and that "WPL is not challenging it here.").)

Because the operative contentions for the '458 patent include those served on March 5, 2020, WPL's motion should be denied.[3]

### III. Evidence that WPL Copied the SAS System and Distributed that Copy in the United States is Relevant and Admissible.

WPL is a U.K. company with a physical presence only in the United Kingdom. It copied SAS's software in the United Kingdom and then marketed and distributed that copied software in the United States. This distribution subjects WPL to U.S. copyright law. Indeed, the only case WPL cites in this section of its motion *rejected* an extraterritoriality objection because "the act of importation occurred in the United States and is actionable under the Copyright Act." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 797 (5th Cir. 2017); *see also Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1372 (Fed. Cir. 2008) (rejecting argument that plaintiff "failed to establish that any of the allegedly infringing acts took place within United States borders" because, "by selling to customers in the United States, [defendant's] distribution of the accused products has taken place, at least in part, in the United States"). Yet WPL argues that SAS must "approach before offering evidence or testimony of extraterritorial conduct." (Mots. at 8.) WPL maintains that SAS must "establish" during these bench conferences "a domestic connection before offering evidence or testimony concerning foreign customers and conduct." (*Id.* at 9.) The Court should reject this cumbersome procedure for three reasons.

*First*, the domestic connection here is straightforward and undisputed: WPL distributes its software in the United States. As WPL concedes, that domestic distribution means that "extraterritorial acts may have some relevance to this litigation." (Mots. at 8.) Examples of relevant conduct include "a foreign act linked to a work reproduced domestically or imported into

---

[3] Finally, as set forth in the Proposed Pretrial Order, SAS is not pursuing the '686 patent at trial. Because SAS will not be offering infringement evidence regarding the '686 patent, this portion of WPL's motion is moot.

11

the United States from abroad." *Id*. WPL's example of relevant evidence describes everything SAS would seek to introduce. WPL's software is the "work . . . imported into the United States from abroad," and all of WPL's conduct is "linked to [that] work." (*Id*.) There is no evidence that WPL made two separate versions of its software, one for distribution in the United States and the other abroad. WPL made one copy of SAS's software and distributed that clone worldwide.

The only potential testimony that WPL identifies as irrelevant reveals the flaw in WPL's argument. WPL objects that SAS asked a WPL witness "questions about help tickets from WPL's Zendesk database" even though those tickets were not from U.S. customers. (Mots. at 8.) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ This evidence about WPL adding SAS PROCs to software distributed in the United States is relevant to SAS's claim that WPL infringed SAS's copyrights in the SAS PROCs.

*Second*, the approach-the-bench procedure WPL advocates would be disruptive and prejudicial. All of WPL's conduct is "exterritorial" in the sense that WPL maintains a physical presence only in the United Kingdom. SAS should not have to engage in the time-consuming process of approaching every time it wants to introduce evidence about WPL's conduct related to the software it unquestionably distributes in the United States.

*Third*, WPL's motion *in limine* is a stalking horse for its rejected *res judicata* argument. WPL seeks to exclude evidence of its infringement because WPL "received final adjudication in the United Kingdom – applying, in part, the law of the European Union – that WPS does *not* infringe any copyrights in that jurisdiction." (Mots. at 8.) WPL litigated this same defense in North Carolina and lost on the merits. The Fourth Circuit held that SAS's copyright claims, "which

were based on the copyright laws of different countries and on different sets of sales transactions, were not barred by *res judicata*." *SAS I*, 874 F.3d at 379. That holding precludes WPL from continuing to rely on U.K. rulings under U.K. law as a defense to these U.S. copyright claims.

IV. **References to Enforcement Proceedings Against WPL Should Not Be Excluded.**

WPL seeks to exclude references to SAS's enforcement proceedings with regard to its earlier judgment against WPL, as well as references to WPL's evasion of that judgment and lack of respect for U.S. laws. (Mots. at 9-10.) Again, as discussed above in section I., *supra*, so long as WPL seeks in its Counterclaims to portray SAS as engaging in "extreme litigiousness" by virtue of engaging in multiple actions against WPL, then the reasons why SAS has been forced to pursue WPL, and, in particular, WPL's "attempts to frustrate the [previous] court's judgment," *SAS II*, 952 F.3d at 525-26, and the fact that WPL has "shown a lack of respect for American courts and American law," *id*. at 525, are necessarily relevant.

V. **Reference to *Inter Partes* Review Petitions and Proceedings.**

WPL has moved to preclude any reference to its filing of IPRs on the patents-in-suit, or to its subsequent withdrawal of those IPRs. WPL withdrew the IPRs after SAS filed oppositions challenging its Real Party-In-Interest ("RPI") status, arguing that D2SL should be added to the IPRs as an RPI. Generally, the USPTO has discretion to permit a petitioner to correct its RPI designation unless there is an indication that a party has engaged in litigation gamesmanship, acted in bad faith, or caused serious prejudice to the patent owner. *See Elekta Inc. v. Varian Med. Sys., Inc.*, No. IPR 2015-01401, 2015 WL 9898990, at *5–*6 (PTAB Dec. 31, 2015).

WPL chose not to face a possible adjudication of D2SL's RPI status and withdrew its petitions. This conduct is relevant to show WPL's conduct, knowledge of, and deceptive intent concerning, its use of the D2SL sham corporate entity (under common ownership with WPL), to circumvent the laws of the United States. In this regard, as found by the Fourth Circuit, WPL has

13

expended considerable efforts to evade enforcement of SAS's $79 million final judgement against WPL in the North Carolina action. *SAS Inst. I*, 952 F.3d at 525-26. ▇

▇

▇ Had WPL been forced to bring D2SL into the IPR as a RPI, WPL would have voluntarily subjected D2SL to U.S. jurisdiction and SAS's enforcement proceedings.

Here, SAS has moved to amend the complaint to add D2SL as a party. (ECF No. 210.) If that motion is granted, then WPL's conduct, knowledge and intent concerning D2SL is even more relevant, including its withdrawal of the IPRs or face D2SL being named an RPI. To prove D2SL's role as an alter ego of WPL as pled in the proposed Second Amended Complaint, the fact that WPL dropped all of its IPRs when faced with the possibility of having to add D2SL is a fact from which an inference can be drawn and with which WPL can be confronted. Moreover, WPL may seek to present evidence that WPL respects the laws of the U.S. and has believed from "day one" that it does not infringe any U.S. copyrights in the SAS system. (ECF No. 377-1 at 216:17–22.) WPL has indicated that it intends to testify that it has a policy of not stealing or infringing SAS's intellectual property because it has a "pretty stringent policy on use of software tools at work" and a "fairly rigorous authorization process." (*Id.* at 210:24–211:3, 212:13–17.) To rebut this evidence, SAS should be permitted to adduce evidence of WPL efforts to circumvent the laws of the U.S., including avoiding naming D2SL in the IPRs.

## VI. Lack of Consequences from a Patent Infringement Filing

WPL has moved to preclude SAS from suggesting that the minimal amount of, or lack of, damages for WPL's patent infringement would result in no consequence to WPL. During the parties' pre-motion meet and confer, SAS indicated it "would be willing to agree to refrain from

14

arguing that the amount of damages sought is a (further) reason that the jury should find infringement." SAS's offer fully addresses what WPL has stated as its rationale for this motion.

SAS rejected the broader wording of WPL's proposed motion, because it could impair SAS's ability to put on its damages case, at least not without cumbersome and distracting sidebars. Based on WPL's infringement, SAS will be entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty. 35 U.S.C. § 284. By their very nature, patent damages are a consequence of patent infringement. If the damages are "minimal" as WPL puts it, given the timing of the hypothetical negotiation (*i.e.*, March 2018) and the apportionment SAS's damages expert applied to the revenues, or that no sales have occurred (only offers) as related to the '458 patent, WPL's motion would apparently preclude SAS from putting on its damages evidence. In rebuttal to SAS's damages theory, WPL intends to argue ██████ ████████████████████████████████████ (*See* Rebuttal Expert Report of Philip Green Regarding Damages at 49-53.) Whether the characterization of damages is "minimal" or "overstated," there must be parity in how the parties are allowed to generally discuss what the damages are. Further, WPL's motion would prevent SAS from stating that it seeks "nominal" damages for infringement of the '458 patent, a type of legal remedy often discussed at trial in front of a jury. Thus, as drafted, SAS cannot agree to WPL's broad motion, but would agree if it were narrowly tailored as SAS has proposed.

Dated: June 29, 2020

Respectfully submitted,

/s/ Pressly M. Millen
Pressly M. Millen
*Pro Hac Vice*
Raymond M. Bennett
*Pro Hac Vice*
Samuel B. Hartzell
*Pro Hac Vice*
WOMBLE BOND DICKINSON (US) LLP

15

555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
(919) 755-2135
press.millen@wbd-us.com
ray.bennett@wbd-us.com
sam.hartzell@wbd-us.com

Christian E. Mammen
*Pro Hac Vice*
Carrie Richey
WOMBLE BOND DICKINSON (US) LLP
1841 Page Mill Road, Suite 200
Palo Alto, California 94304
(408) 341-3067
chris.mammen@wbd-us.com
carrie.richey@wbd-us.com

Michael C. Smith
State Bar No. 18650410
SIEBMAN, FORREST, BURG & SMITH, LLP
113 East Austin Street
Marshall, Texas 75671
(903) 938-8900
michaelsmith@siebman.com

***Attorneys for Plaintiff SAS Institute Inc.***

REDACTED AND PUBLICLY FILED

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on counsel for Defendants via the Court's CM/ECF system and by email on June 29, 2020.

      /s/ Pressly M. Millen
      Pressly M. Millen