**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SAS INSTITUTE INC., | Civil Action No. 2:18-CV-00295-JRG |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| WORLD PROGRAMMING LIMITED, LUMINEX SOFTWARE, INC., YUM! BRANDS, INC., PIZZA HUT, INC., SHAW INDUSTRIES GROUP, INC., | PUBLIC VERSION |
| Defendants. | |

<u>**WORLD PROGRAMMING LTD.'S SURREPLY BRIEF**</u>
<u>**FOR COPYRIGHTABILITY HEARING**</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     SASI IS ASSERTING ELEMENTS THAT IT HAS NOT COPYRIGHTED..................... 2

III.    SASI REFUSES TO DISCHARGE ITS FILTRATION BURDEN..................................... 4

IV.     SASI'S "COPYING" ARGUMENTS ARE BESIDE THE POINT..................................... 4

V.      EVEN IF THE "OUTPUT DESIGNS" WERE HELD TO BE ELEMENTS OF THE
        ASSERTED WORK, NO PROTECTABLE EXPRESSION REMAINS............................ 5

        A.    SASI's Alleged "Output Designs" Filtration Is Invalid. ................................................ 5

        B.    Users' contributions to output are substantial, indispensable, and must be filtered. ..... 6

        C.    SASI has not identified protectable elements (if any) *in the Asserted Works.*............... 7

        D.    Output Similarities Simply Reflect Correct Functionality. ............................................ 8

VI.     EVEN IF THE "INPUT FORMATS" WERE HELD TO BE ELEMENTS OF THE
        ASSERTED WORK, NO PROTECTABLE EXPRESSION REMAINS............................ 9

VII.    CONCLUSION.............................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*Apple Computer, Inc. v. Microsoft Corp.*
  799 F. Supp. 1006, (N.D. Cal. 1992), *aff'd*, 35 F.3d 1435 (9th Cir. 1994) ............................... 3

*Broderbund Software, Inc. v. Unison World, Inc.*
  648 F. Supp. 1127 (N.D. Cal. 1986) ..................................................................... 7

*Compulife Software Inc. v. Newman*
  959 F.3d 1288 (11th Cir. 2020) ..................................................................... 2, 4

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*
  982 F.2d 693 (2d Cir. 1992).......................................................................... passim

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*
  26 F.3d 1335 (5th Cir. 1994) ......................................................................... passim

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*
  9 F.3d 823 (10th Cir. 1993) ........................................................................... 2

*Gen. Universal Sys., Inc. v. Lee*
  379 F.3d 131 (5th Cir. 2004) ......................................................................... passim

*Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes, LLC*
  117 F. Supp. 3d 913 (S.D. Tex. 2015) ................................................................ 2, 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
  387 F.3d 522 (6th Cir. 2004) ......................................................................... 3

*Lotus Development Corp. v. Borland International, Inc.*
  49 F.3d 807 (1st Cir. 1995)........................................................................... 3

*Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*
  2013 WL 12140417 (S.D. Tex. Dec. 18, 2013) ........................................................ 4

*M-I L.L.C. v. Q'Max Sols., Inc.*
  2020 WL 4549210 (S.D. Tex. Aug. 6, 2020) .......................................................... 4

*MiTek Holdings, Inc. v. Arce Eng'g Co.*
  89 F.3d 1548 (11th Cir. 1996) ....................................................................... 3

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*
  783 F.3d 527 (5th Cir. 2015) ......................................................................... 1

*Oracle v. Google*
    750 F.3d 1339 (Fed. Cir. 2014) ........................................................................ 1, 3, 9

*Parker v. Outdoor Channel Holdings*
    No. 2-11-CV-00159-J, 2012 WL 6200177 (N.D. Tex. Dec. 12, 2012) .................................... 2

*Pepper v. Int'l Gaming Sys., LLC*
    312 F. Supp. 2d 853 (N.D. Miss. 2004) ........................................................................ 4

*R. Ready Prods., Inc. v. Cantrell*
    85 F. Supp. 2d 672 (S.D. Tex. 2000) ........................................................................ 2

*Real View, LLC v. 20-20 Techs., Inc.*
    683 F. Supp. 2d 147 (D. Mass. 2010) ........................................................................ 3

*SAS Inst. Inc. v. World Programming Ltd.*
    64 F. Supp. 3d 755 (E.D.N.C. 2014) ........................................................................ 8, 10

**Statutes**

17 U.S.C. § 102(b) ........................................................................ 6

## I.        **INTRODUCTION**

In Reply, SASI fights hard to place the "filtration" burden on the defendant, WPL.  And if this were a copyright case over "literal" elements, SASI's arguments might fare better.  But SASI elected to bring a case about only (purported) "non-literal" elements of software.  A tradeoff accompanies that decision: if one hopes to expand a copyright from specific, literal expression to amorphous, non-literal expression, the plaintiff bears the burden to come forth with a valid *Altai* analysis.  SASI has had ample opportunity to do so.  SASI has refused.

Instead of performing a valid *Altai* analysis to identify the "non-literal" expression it seeks to protect, SASI shirks the AFC test in favor of imagined theories of copyrightability.  For instance, *Altai* dictates that "the process begins with the code."  *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 707 (2d Cir. 1992).  Yet SASI claims that "the source code is beside the point."  Reply at n.4.  *Oracle v. Google* addresses the non-literal expression of a computer program as "the ***program's*** sequence, structure, and organization, as well as the ***program's*** user interface."  750 F.3d 1339, 1355–56 (Fed. Cir. 2014) (emphasis added).  Yet SASI ignores its ***program's*** SSO or interface, directing focus on the "structure" of SAS Language elements as they exist alphabetically in books.  And the Fifth Circuit explains that "anyone may copy uncopyrightable elements in a copyrighted work," *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1347 (5th Cir. 1994), so "the ***first*** step is to distinguish between protectable and unprotectable elements." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 550 (5th Cir. 2015) (emphasis added).  Yet SASI skips the first step; it desperately wants—needs—to skip this step.  So it instead rushes ahead to allegations of "meticulous copying"  as if the law were rewritten to say that "liability for copyright infringement ~~will only attach where *protected elements* of a copyrighted work are copied~~ [is presumed]."  *Gates Rubber*

1

*Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 833 (10th Cir. 1993) (emphasis in original; annotations added).

WPL arguments are not a "gotcha."  Rather, SASI made the tactical decision to frame its case as it did for a clear reason: a valid *Altai* analysis destroys its theories.  WPL explains how:

## II.        <u>SASI IS ASSERTING ELEMENTS THAT IT HAS NOT COPYRIGHTED.</u>

SASI not only presumes protectability over "non-literal" elements of its program ("input formats" and "output designs"), it goes further by asking the Court to assume that these elements exist within its program at all.  But SASI identifies no expression *in* its Asserted Works that is allegedly protectable; Dr. Storer *did not even review* the Asserted Works.  SASI instead points to proxies (*e.g.* outputs generated by third party programs, screenshots of books about the SAS Language that are not tied to any expression in the Asserted Works, and even *WPL*'s own Quick Reference guide).  But none of these are the Asserted Works.  The Court cannot decide whether some expression is copyrightable where SASI has not identified it.[1]  Indeed, SASI has never submitted an enumeration of the allegedly protectable expression for evaluation.  *See* Dkt. 436 (ordering briefing on all asserted works).  Courts evaluate copyrightability by studying the plaintiff's identified expression *in the asserted work*, something SASI chose not to do here.[2]

A proper abstraction illuminates this problem.  One must "dissect ***the program*** according

---

[1] This bears on SASI's *Compulife* burden position.  Assuming application of the *Compulife* literal infringement filtration burden to this "non-literal" case, SASI has still not provided evidence of the expression within the Asserted Work that it contends has been copied. No burden could be shifted to a defendant until that happens, lest the *defendant* be forced to "prove a negative."

[2] *See, e.g.*, Dkt. 451-12 (*Eng'g Dynamics* remand) at 10-14, 19-22, 25-28 (enumerating all asserted input formats/output reports for filtration); *Parker v. Outdoor Channel Holdings*, No. 2-11-CV-00159-J, 2012 WL 6200177, at *5 (N.D. Tex. Dec. 12, 2012) (listing out the constituent elements of the expression provided by plaintiff); *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 686 (S.D. Tex. 2000) (same); *Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 949-952 (S.D. Tex. 2015) (depicting the registered works).

to its varying levels of generality." *Eng'g Dynamics*, 26 F.3d at 1343 (emphasis added).  The

"program" in this case—the Asserted Work— ███████████████████████████████

████████  It is this program that is to be abstracted into "successive levels of generality."  *Id.*

Abstraction "dissect[s] the allegedly copied program's structure and isolate[s] each level of

abstraction ***contained within it***."  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir.

2004) (emphasis added).  To even begin evaluating whether the "structure" of "input formats" is

protectable, for example, SASI was required to show what the structure of these "formats" are as

expressed "within" the program.  *Id.*  SASI chose not to do that because it knows that its program

does not contain expression that resembles WPS.  *See* Resp. at 15-16; Jones Rpt. at § 8.3 and Ex.

E (analyzing and identifying significant differences in structures of SAS and WPS programs);

Ex. B, *SAS Inst. Inc. v. World Programming Ltd.*, Case No. HC09C03293, at ¶ 250.

The things SASI characterizes as "input formats" and "output designs" for this litigation

are nothing like non-literal expression in other software copyright cases.  In cases involving

"input formats," the formats are identifiable in the asserted program.[3]  The same is true for cases

involving "outputs" produced by a copyrighted program.[4]  SASI appropriates the terms "input

formats" and "output designs" to mimic these cases, but they are not the same.  What SASI

labels "input formats" are elements of the non-registered, uncopyrightable SAS programming

---

[3] *See Oracle*, 750 F.3d at 1349-50 (declaring source code in registered Java computer files);
*Lexmark Int'l, Inc. v. Static Control Components, Inc*., 387 F.3d 522, 541 (6th Cir. 2004) (Toner
Loading Program containing between 33 and 45 source code program instructions); *Eng'g
Dynamics*, 26 F.3d at 1352 (graphical input cards depicted in the asserted works).

[4] *See Lotus Development Corp. v. Borland International, Inc*., 49 F.3d 807 (1st Cir. 1995) (menu
layout presented to user when running the program); *Apple Computer, Inc. v. Microsoft Corp*., 799
F. Supp. 1006, 1017, (N.D. Cal. 1992), *aff'd*, 35 F.3d 1435 (9th Cir. 1994) (Macintosh and Lisa
operating system GUI); *MiTek Holdings, Inc. v. Arce Eng'g Co*., 89 F.3d 1548 (11th Cir. 1996)
(Menu and Submenu display of ACES program); *Real View, LLC v. 20-20 Techs., Inc.*, 683 F.
Supp. 2d 147, 155 (D. Mass. 2010) (screen displays and dialog boxes in GUI of 20-20 program).
*See also* Exhibit A (showing that "output designs" at issue in these cases is the program's GUI).

language, and what SASI calls "output designs" are user-designed output.  *See generally* Resp. at 16-24.  These elements are not fixed and expressed in the Asserted Works.

## III.     SASI REFUSES TO DISCHARGE ITS FILTRATION BURDEN.

SASI reiterates its reliance on *Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020), to shift the filtration burden to WPL.  But *Compulife* does not undo *Altai* or bail out SASI.  Again, *Compulife* is a "literal" copyright case.  "Sift[ing] out all non-protectable material" may "appl[y] more generally" in literal copyright cases, *Compulife,* 959 F.3d at 1304, in the 5th or 11th Circuits.[5]  But that does not end the inquiry in "non-literal" cases like this one, where the plaintiff has a very specific burden to carry under *Altai.  See Gen. Universal Sys.,* 379 F.3d at 144 (affirming grant of summary judgment where plaintiff did not "complete the *Altai* analysis necessary to evaluate claims that a program's nonliteral elements were copied."); *Macro Niche Software, Inc. v. 4 Imaging Sols*., L.L.C., 2013 WL 12140417, at *5 (S.D. Tex. Dec. 18, 2013); *Pepper v. Int'l Gaming Sys., LLC*, 312 F. Supp. 2d 853, 861 (N.D. Miss. 2004).

## IV.     SASI'S "COPYING" ARGUMENTS ARE BESIDE THE POINT.

SASI's Reply consists almost entirely of argument about alleged copying—not copyrightability.  *See* Reply at 3-7.  SASI must first show *copyrightability* by completing a valid *Altai* analysis before it can argue about comparison (assuming that, unlike in *Engineering Dynamics*, something protectable remains after filtration here).  In other words, SASI may not claim victory on the "C" as a substitute for completing the "A" and "F."[6]  Indeed, as the Court

---

[5] *See, e.g.*, *Lennar Homes*, 117 F. Supp. 3d at 949-52 ("[R]egardless of which party bears the burden, it would appear proper at the summary judgment stage for courts to determine . . . what aspects of a plaintiff's designs are protectable[.]").

[6] *See, e.g.*, *Eng'g Dynamics*, 26 F.3d at 1340-41 ("Not all copying, however, is copyright infringement."); *M-I L.L.C. v. Q'Max Sols., Inc*., 2020 WL 4549210, at *8 (S.D. Tex. Aug. 6, 2020) (because of filtration, finding no infringement despite the screens being "virtually identical").

noted, the express purpose of this process is to enable the Court to "decide the issue of

copyrightability." *See* Dkt. No. 436 at 3.  SASI's habit of skipping to "copying" accusations is a

fig leaf covering its failure to identify any expression within the Asserted Works.  And while

SASI charges WPL with allegedly failing to address "the real issue"—according to SASI,

accusations of copying concerning a WPL guide—its arguments make no sense.  *WPL's* guides

do not provide the required information here: what is the alleged structure and organization of

*SASI's* software?

## V.      EVEN IF THE "OUTPUT DESIGNS" WERE HELD TO BE ELEMENTS OF THE ASSERTED WORK, NO PROTECTABLE EXPRESSION REMAINS.

### A.  SASI's Alleged "Output Designs" Filtration Is Invalid.

SASI has the burden to filter, and a failure to do so means a complete loss for SASI on its

copyright claim.  *See Gen. Universal Sys.*, 379 F.3d at 143-44, 146, n.32.  SASI tries to avoid

this result by promoting Dr. Storer's "filtration analysis" (an analysis where Dr. Storer "filtered"

out the user's mouse and keyboard and the program's idea).  *See* Reply at 4.  But the record is

clear: Dr. Storer filtered *nothing* from the "collection of output designs."[7]  In a case involving

non-literal elements of computer programs, this is not a valid *Altai* analysis.  *See* Resp. at 7-11,

14-16.  As demonstrated by WPL and Dr. Jones, the unprotectable material that must be filtered

from the "output designs" is significant such that no meaningful protectable expression remains.

Rather than engage on filtration, SASI trumpets how the SAS Language allows for

concise instructions that replace "hundreds of thousands of lines of code in a low-level

programming language."  *See* Reply at 4.  But that is simply what higher-level programming

---

[7] *See* Storer Decl. at 12 (claiming that "the output designs were not subject to filtration"); Dkt. No. 451-9 ("Storer Dep. Tr.") at 159:6-8 (same).

languages do.[8]  And this functional and utilitarian aspect of languages, like the SAS Language, is

not a copyrightable one.  *See* 17 U.S.C. § 102(b); *see also Eng'g Dynamics*, 26 F.3d at 1348.

The closest SASI comes to *finally* conceding that something must be filtered from its

"outputs" is SASI's purporting to disclaim protection over mathematical and statistical variables

and constants, the idea of graphs, charts, tables, plots, or user data, and calculated values.  *See*

Reply at 4.  But this disclaimer is toothless.  Dr. Storer did not remove these (or other) things

from his analysis.  *See, e.g.*, Dkt. No. 444-7 ("Storer Rpt.") at Ex. 8 (comparing user-generated

outputs including elements SASI now apparently disclaimed).  And just one page prior in its

same brief, SASI argues that its "dozens of design elements"—whatever those are—include

"types of statistical and graphical output."[9]  These "types of statistical and graphical output" are

the things that SASI concedes are unprotectable one page later.  SASI's failure to conduct a valid

filtration results in an invitation to the jury to erroneously compare unprotectable elements, an

outcome that the Court has already explained would be a waste of time and resources.

**B.  Users' contributions to output are substantial, indispensable, and must be filtered.**

SASI's analysis also unravels because it failed to filter third-party contributions from any

identified output.[10]  Even its own expert was forced to admit that the outputs are "governed by

---

[8] *See* Jones Rpt. at § 5.2, § 6.2, § 8.2.2.2 (explaining SAS Language is an idea like other programming languages, cataloguing evidence about SAS being a programming language).

[9] SASI's "definition" of "output designs" is vague and circular. For example, SASI says that "output designs" include "other identification of output" or "output designs resulting from default parameters." *See* Reply at 3. That does not answer the question of what the "designs" are in the first place, and WPL and the Court are left guessing what SASI is actually asserting. It was incumbent upon SASI, as the copyright plaintiff, to identify what it was seeking to assert with a valid *Altai* analysis. *See Gen. Universal Sys.*, 379 F.3d at 143-44.

[10] SASI also argues that WPL has not contended users' contributions to the generation of output should be filtered. *See* Reply at 5.  Besides flipping the burden, this is false.  *See* Resp. at 13, 25 ("In sum, SASI has not shown that any copyright over its SAS system software extends to the outputs generated as a result of the execution of users' SAS Language program. Such outputs are neither original to SASI nor sufficiently fixed to be copyrightable. The elements described in this

the program that the user – ***the way the user chose to express themselves*** in the form of that program resulted in a certain output."  Storer Dep. Tr. at 282:16-22 (emphasis added).  Dr. Storer's concession is dispositive.  SASI is claiming ownership of *user* expression.

Dr. Storer's admission illuminates flaws in SASI's other arguments as well.  For instance, SASI cites the Copyright Office Compendium for the proposition that a "computer program and screen displays generated by ***that program*** are considered the same work."  *See* Reply at 3, n.2 (emphasis added).  The "screen display" of the SAS software that would likely be protectable by its registration in the Asserted Works is the SAS graphical user interface and text editor.  *See* Jones Rpt., Ex. F. at 1-6.  As described above, *see supra* n.4, "screen displays" and GUIs are not the same as the user-designed output that SASI asserts in this case.[11]  Unless and until a user writes their unique program—"to express themselves"—and causes that program to be executed, the Asserted Works could never generate the expression that SASI now claims as its own.[12]

**C.  SASI has not identified protectable elements (if any) *in the Asserted Works*.**

As discussed in Section II, SASI's identified copyrightable elements do not exist in the

---

section should all be filtered out in the filtration step described above."); Dkt. No. 272 at 11-12 (similar); Dkt. No. 342 at 4 (similar); *see also* Jones Rpt. at ¶ 134 (similar), ¶ 215 (similar).

[11] For example, in *Engineering Dynamics*, the Fifth Circuit extended its analysis to "output formats" and cited *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127 (N.D. Cal. 1986), as having an "output format" that might be protectable. *See* 26 F.3d at 1342. *Broderbund* was about the user interface of a program that let users create and print greeting cards, signs, banners, and posters. *See* 648 F. Supp. at 1130, 1132. The aspects of the user interface at issue were the menu screens and sequence of screens of the program—not the greeting cards themselves.

[12] *See* Dkt. No. 451-7 (Rubendall Depo. Tr.) at 221:1-20 ████████████████████████████ ████████████████████████████████████████████████████████████████████ Dkt. No. 451-15  (Whitcher  Dep.  Tr.)  at  223:5-224:23 ███████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████ Dkt. No. 451-2 (Goodnight Dep. Tr.) at 60:23-61:4 ██████████ █████████████████████████████ ████████████████████████████████ *see also* Jones Rpt. at § 8.2.3.

Asserted Works.  Indeed, SASI does not even address WPL's argument that SASI identified no purported "output designs" within the Asserted Works.  *See* Resp. at 13, 24.  Even for the few identified user reports—again, not contained in the Asserted Work—SASI does not articulate any coordination or arrangement of this "collection" of "designs," much less tether them to any expression fixed in the Asserted Works.  SASI instead alludes to its books about the SAS Language and WPL guides.  But these are not Asserted Works.  "What is present in any copyrighted user's manual is not the sequence and compilation as exists when the user interfaces with the product on a computer screen.  Rather, it is a written document with a sequence distinctly its own."  Resp., Ex. K (*Eng'g Dynamics* on remand) at 22; *see also* Ex. B at ¶ 250.

The very point of the Copyrightability Hearing is to identify "the *core protectable expression*, if any, covered *by each asserted work*" to facilitate a subsequent comparison (if anything remains).  *See* Dkt. No. 436 at 2 (some emphasis added).  SASI has not even identified the elements as they exist in any Asserted Work to allow for filtering, let alone comparison.  This is no technicality.  Fifth Circuit law requires a side-by-side comparison of only the ***protectable*** elements ***of the work***.[13]  SASI's strategic choice not to make even this basic predicate disclosure compels a finding of non-copyrightability of any relevant element of the Asserted Works.

### D.  Output Similarities Simply Reflect Correct Functionality.

Finally, SASI's fixation on output *similarities* is misguided.  As the North Carolina court recognized, "[i]nsofar as these outputs are similar, however, this only serves to establish that when defendant's software compiles and interprets SAS Language programs input by users, it does so properly."  *SAS Inst. Inc. v. World Programming Ltd.*, 64 F. Supp. 3d 755, 776 (E.D.N.C.

---

[13] *See Gen. Universal Sys.*, 379 F.3d at 142 ("If the plaintiff demonstrates factual copying, he must next demonstrate that the copying is legally actionable by showing that the allegedly infringing work is substantially similar to ***protectable elements of the infringed work***.") (emphasis added).

2014).  In any case, by never performing filtration, SASI oversells the similarities.  *See* Jones

Rpt. at § 8.3.2 (discussing "output comparisons").[14]

## VI.     EVEN IF THE "INPUT FORMATS" WERE HELD TO BE ELEMENTS OF THE ASSERTED WORK, NO PROTECTABLE EXPRESSION REMAINS.

As with "output designs," SASI still fails to filter its "input formats" as well.  Again, Dr.

Storer concedes as much.[15]  SASI therefore does not present any evidence of any core

protectable elements of the Asserted Works.  *See Gen. Universal Sys.*, 379 F.3d at 143-44.

Instead, SASI again falls back on its legally erroneous argument that filtration is not required.[16]

Beyond its "filtration is not required" argument, SASI makes a slippery slope argument

that WPL's copyrightability position would somehow allow copying akin to "knocking off

Dickens' *Tale of Two Cities*."  *See* Reply at 7.  This analogy does not work.[17]  First, the book

does not receive any user input, let alone user-written programs.  Second, the book's expression

(e.g., structure, sequence, or organization of its words) is self-evident within it.  SASI, however,

identifies no structure, sequence, or organization of language elements in the Asserted Works.[18]

---

[14] SASI also bizarrely claims that WPL "does not address a single graphical comparison." This is false. *See* Jones Rpt. at § 8.2.2.9 (conventional display elements in outputs), § 8.2.3 (prevalence of user contributions), § 8.3.2 (differences between outputs); Dkt. 271 at 5-12 (not comparing only protectable elements); Dkt. 272 at 11-14 (not filtering and prevalence of user contribution); Dkt. 451 at 14-15 (same) Dkt. 275 at 5-13 (failing to abide by Fifth Circuit law).

[15] Storer Decl. at 7, n.1 ("I did not filter out elements from [the input formats]"); Storer Dep. Tr. at 157:15-25 (same).

[16] SASI's argument about the DUNNETTU and SIDAK options is emblematic of the problems with SASI's case. *See* Reply at 6.  Had SASI previously raised this argument, WPL would have explained that "DUNNETTU" and "SIDAK" are the surnames of the statisticians who long ago developed these particular statistical analyses. *See* Jones Rpt., Ex. C at 9 (articles by Dunnett cited in SAS manuals), 13 (article by Šidák cited in SAS manuals).  SASI does not own these names just as it does not own the name "Pythagoras" to refer to the theorem $a^2 + b^2 = c^2$ for right triangles.

[17]*A Tale of Two Cities* was published in 1859, is public domain, and can be freely copied.

[18] This is also why *Oracle* (where the Dickens analogy originated) does not help SASI. *See* Reply at 7-8. There, the non-literal element was the sequence, structure, or organization of copyrighted API packages. *See* 750 F.3d at 1349-50.  Each package had two types of source code from which

Dr. Storer has never even reviewed the would-be "book" in this case (SAS code).[19]

SASI also seeks to mis-cast WPL's position as "circular[] and self-referential[]," warning that it would allow for any "copier to claim that [it] was simply implementing the idea of what the existing program does." *Id.* at 8. But WPL's point is not that software merges with itself, allowing any software to be copied. WPL's argument is that any alleged "expression" in the Asserted Works that simply processes the unprotectable SAS Language would merge with the underlying idea of the SAS Language. This is not WPL's "game"; it is why SASI lost twice on this exact issue. *See SAS Inst.*, 64 F. Supp. 3d at 775-76 ("[B]y asking the court to find that defendant's software infringes its copyright through its processing of elements the SAS Language, plaintiff seeks to copyright the idea of a program which interprets and compiles the SAS Language . . . . However, copyright law provides no protection to ideas."); Ex. B at ¶¶ 245-250 (similar).[20] And this result is further warranted given SASI's refusal to identify any structure, sequence, or organization in the actual Asserted Works.

## VII.     CONCLUSION.

For the reasons above and in WPL's Response brief, the Court should find that SASI has failed to meet its burden to show there is core protectable expression within the Asserted Works.

---

(like the Dickens book) a sequence, structure, and organization could be discerned. *See id.*

[19] *Cf.* Ex. B at ¶ 250 (noting that "it is remarkable that a claim for infringement of copyright can be advanced" where "the claimant does not consider it necessary for either its own expert witness or the court to see the copyright work")

[20] The meandering ways SASI characterizes the "input formats" further shows that SASI is seeking to extend its copyrights over the idea and use of a language. *See, e.g.*, Dkt. No. 441 at 12 (SAS Language elements in manual is "**structure** as input format **options**"), at 12-13 (SAS language in user's program are "input format **elements**"); Storer Decl. at 11 (same list from Dkt. 441 at 12 and 12-13 are now all "input format **options**"); Dkt. No. 264 (user's program is "**the** input format"); Storer Rpt. at 26 (Input formats "include the **collection** of PROCs, statements, options, formats, informats, global statements, access engines **and other elements**, **and the syntax** governing how those PROCs and elements may be combined by the user and how they relate to each other.").

Dated: October 2, 2020                          Respectfully submitted,

                                                *Bradley W. Caldwell*
                                                Bradley W. Caldwell
                                                Texas Bar No. 24040630
                                                Email: bcaldwell@caldwellcc.com
                                                John Austin Curry
                                                Texas Bar No. 24059636
                                                Email: acurry@caldwellcc.com
                                                John F. Summers
                                                Texas State Bar No. 24079417
                                                Email: jsummers@caldwellcc.com
                                                Warren J. McCarty, III
                                                Texas State Bar No. 24107857
                                                Email: wmccarty@caldwellcc.com
                                                Hamad M. Hamad
                                                Texas State Bar No. 24061268
                                                Email: hhamad@caldwellcc.com
                                                CALDWELL CASSADY CURRY P.C.
                                                2121 N. Pearl St., Suite 1200
                                                Dallas, Texas 75201
                                                Telephone: (214) 888-4848
                                                Facsimile: (214) 888-4849

                                                ATTORNEYS FOR DEFENDANTS
                                                WORLD PROGRAMMING LIMITED,


                                                Charles Everingham IV
                                                State Bar No. 00787447
                                                ce@wsfirm.com
                                                T. John "Johnny" Ward Jr.
                                                Texas Bar No. 00794818
                                                jw@wsfirm.com
                                                Claire Henry
                                                Texas Bar No. 24053063
                                                claire@wsfirm.com
                                                Andrea L. Fair
                                                Texas Bar No. 24078488
                                                andrea@wsfirm.com
                                                **WARD, SMITH & HILL, PLLC**
                                                P.O. Box 1231
                                                Longview, TX 75606
                                                903-757-6400
                                                903-757-2323 (Facsimile)

1

ATTORNEYS FOR DEFENDANTS
WORLD PROGRAMMING LIMITED

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 2nd day of October, 2020.  Local Rule CV-5(a)(3)(A).

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that this document is authorized to be filed under seal pursuant to this case's Protective Order.

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell